$\cancel{5}^{30}$

| | |
|---|---|
| 1 | PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY |
| 2 | Name Mullin Herbert W. M FILED |
| | (Last)         (First)         (Initial) |
| 3 | Prisoner Number # B-51410 — |
| | MAY 2 9 2008 |
| 4 | Institutional Address Mule Creek State Prison RICHARD W. WIEKING |
| 5 | CLERK, U.S. DISTRICT COURT |
| | NORTHERN DISTRICT OF CALIFORNIA |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 8 | Herbert William Mullin |
| | (Enter the full name of plaintiff in this action) |
| 9 | |
| 10 | vs. |
| | Warden Martel |
| 11 | Mule Creek State Prison |
| 12 | Ione, California |
| 13 | zip # 95640 — |
| 14 | (Enter the full name of respondent(s) or jailor in this action) |

Case No. _____
(To be provided by the clerk of court)

PETITION FOR A WRIT
OF HABEAS CORPUS

Cal. Sup. Ct. # S-149679
Cal. 6th App. # H-030786
Santa Cruz Co. # 50219

**CRB**

**(PR)**

Read Comments Carefully Before Filling In

When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A.) INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

    (a)   Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

SANTA CRUZ County Sup. Court      SANTA CRUZ, Calif

              Court                          Location

    (b)   Case number, if known  # 50219

    (c)   Date and terms of sentence  Summer of 1973  7 years to life

    (d)   Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)    Yes XX   No _____

        Where?

        Name of Institution: Mule Creek State Prison

        Address: IONE, Calif. zip # 95640

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

penal code calif P.C. # 187
2 counts in the 1st DEGREE
9 counts in the 2nd DEGREE

PET. FOR WRIT OF HAB. CORPUS    -2-

3.  Did you have any of the following?

Arraignment:                          Yes XX        No ____

Preliminary Hearing:                  Yes X X       No ____

Motion to Suppress:  *UNKnown*        Yes ____      No ____

4.  How did you plead?

Guilty ____    Not Guilty ____    Nolo Contendere ____

Any other plea (specify) *NOT Guilty By REASon of INSANity* "

5.  If you went to trial, what kind of trial did you have?

Jury XX      Judge alone ____    Judge alone on a transcript ____

6.  Did you testify at your trial?          Yes XX        No ____

7.  Did you have an attorney at the following proceedings:

(a)    Arraignment                   Yes XX        No ____

(b)    Preliminary hearing           Yes X X       No ____

(c)    Time of plea                  Yes X X       No ____

(d)    Trial                         Yes XX        No ____

(e)    Sentencing                    Yes XX        No ____

(f)    Appeal      ———————→          Yes ____      No XX X

(g)    Other post-conviction proceeding    Yes ____    No XXX

8.  Did you appeal your conviction?  ———→   Yes ____    No XX X

(a)    If you did, to what court(s) did you appeal?

Court of Appeal               Yes ____      No ____

Year: _____    Result: _____

Supreme Court of California   Yes ____      No ____

Year: _____    Result: _____

Any other court               Yes ____      No ____

Year: _____    Result: _____

(b)    If you appealed, were the grounds the same as those that you are raising in this

a. itemized pages #51 thru 63 ———.

b. Exhibit # CCC ———.

c. "Supporting Documents" ———.

d. _____

Result: _____ Date of Result: _____

III. Name of Court: PLEASE SEE PAGE #s 49 & 50

Type of Proceeding: OF "Supporting Documents"

Grounds raised (Be brief but specific):

a. itemized on pages #51 thru 63 —

b. Exhibit # CCC ———

c. "Supporting Documents" ———.

d. _____

Result: _____ Date of Result: _____

IV. Name of Court: PLEASE SEE PAGE #s 49 & 50

Type of Proceeding: OF "Supporting Documents"

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No XX

Name and location of court: _____

B.  GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to

support each claim.  For example, what legal right or privilege were you denied?  What happened?

Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    —5—

1   need more space.  Answer the same questions for each claim.

2   [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3   petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   (1) Claim One: INEFFECTIVE ASSISTANCE OF COUNSEL —
6   FAILURE OF COUNSEL TO PROVIDE ADEQUATE
    REPRESENTATION

7   Supporting Facts:
8   PLEASE SEE PAGES # 4 thru 21 —.
9   OF " SUPPORTING DOCUMENTS " —.
10  (OKA) EXHIBIT # CCC —

11  (2) Claim Two: PETITIONER DID NOT RECEIVE A
12  FAIR AND IMPARTIAL HEARING —

13  Supporting Facts:
14  PLEASE SEE PAGE #S 4 thru 46 ,
15  OF " SUPPORTING DOCUMENTS " —.
16  (OKA) EXHIBIT # CCC —

17  (3) Claim Three: A FEDERAL PUBLIC DEFENDER    /
18  SHOULD BE APPOINTED TO ASSIST ME !

19  Supporting Facts:
20  PLEASE SEE PAGE #S 1 thru 136
21  OF EXHIBIT # CCC —
22  (OKA) " SUPPORTING DOCUMENTS " —.

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:
25  CLAIM # (3) — A FEDERAL PUBLIC DEFENDER
26  CANNOT REPRESENT A STATE PRISONER
27  IN A COUNTY SUPERIOR COURT CASE, NOR
28  IN AN APPELLATE STATE DISTRICT COURT —.

# THE CONSTITUTION
## OF
# THE UNITED STATES OF AMERICA ———

## Amendment # XIV

Section #1.  All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside—. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws—.

This section #1 of Amendment # XIV of the Constitution of the United States of America authorizes your court, the U.S. District Court, Northern District of California, to grant in affirmation this petition for writ of Habeas Corpus, and also, to appoint a Federal public defender to assist petitioner in the next phases of appeal——.

(6A)

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases: UNITED STATES OF AMERICA CONSTITUTION — Amendment # 14 — petitioner's Right to Due process —.

The Constitution of the U.S.A.

Do you have an attorney for this petition?    Yes_____    No XXX

If you do, give the name and address of your attorney:

"Not Applicable" —

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2008 —                    H. W. Mullin —
                Date                         Signature of Petitioner

                                        HERBERT W. Mullin

(Rev. 6/02)

PET. FOR WRIT OF HAB. CORPUS        -7-

UNITED STATES DISTRICT Court
NORTHERN DISTRICT of CALIFORNIA

Herbert William Mullin

vs

WARDEN    MARTEl
Mule Creek STATE Prison
CAliFORNiA  95064

PETiTiON FOR WRiT of HABEAS Corpus
No. # _____
CALiF. Sup. Ct. #  S-149679
CAL. 6th App. Dist. # H-030786
Santa Cruz County Sup. Ct. #  50219

To THE Judges of the United States
    District Court, NoRTHern District
    of CALiFORNiA  _____

    This petition FOR WRiT of HABEAS Corpus
REQuests that you use your powers To
VACATe And REMEdy the CAliFORNiA
Supreme Court "DENiAl" order issued
on June 27th, 2007, By CHiEF Justice George,
pertaining to # S-149679 petition ———.

page # 1.

Page #2

Secondly, I Am Requesting that your Court use its powers to Direct the CDCR, Board of Parole Hearings, to initiate the Administration of A New, up-to-date, psychological Evaluation Report, And then Also, that A new Parole Concideration Hearing be convened As soon As possible —.

Thirdly, this petitioner, A.W. Mullin, believes that this petition was, And is, very clear And thourough — therefore I request that your Court review And inspect this entire petition, keeping in mind Calif. penal code #1258 of Title #9, RE: the petition FOR REVIEW, And/or HABEAS CORPUS, And/or MANdAmus, should be judged justly And logically without REGARD to technical ERRORS ——.

Fourthly, A Federal public Defender should be appointed to DEFEND this petitioner —. The CaliFornia Court system obviously is acting illegally in this CASE ——.

page # 3

It is Hoped that the United States District Court, Northern District of California, will thouroughly REVIEW & inspect this entire petition For WRIT of Habeas Corpus, And then make An efficient And effective Ruling in Favor of Relief ———— .

"When the verdict or finding is contrary to LAW or evidence, But if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but of A lesser degree thereof, or of A lesser crime included therein, the Court may modify the verdict, Finding, or judgement Accordingly, without granting or ordering A new trial, And this power shall extend to Any Court to which the cause may be Appealed." Calif. Penal Code # 1181, paragraph # 6 —— .

This concludes this petition For WRIT of Habeas Corpus ——. In closing, I want to express True sorrow And True remorse to the victims And their families And friends I honestly Am sorrowful & remorsefull ——.

Page #4

This petitioner believes He is sane
and Healthy, that He Has Been Rehab-
ilitated and Re-educated now for
many years, and that He is now
Ready and willing and deserving of
parole ——— .

Respectfully submitted on this Day
May 22, 2008 ——.

H. W. Mullin ——
HERBERT William Mullin ——

EXHIBIT # A A A

#1. Habeas Corpus Denial From the
CALiF. Supreme Court # S-149679
dated JUNE 27, 2007 —

#2. Habeas Corpus Denial From the
CALiF. Ct. of Appeal 6th App. Dist.
# H-030786
dated December 6, 2006 —

#3. Habeas Corpus Denial From the
Superior Court of SANTA CRuz County
RE! # S0219
dated September 29, 2006 —

S149679

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re HERBERT WILLIAM MULLIN on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT

FILED

JUN 27 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

 

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal - Sixth App. Dist.

F I L E D

DEC 6 - 2006

MICHAEL J. YERLY, Clerk

By _____
                    DEPUTY

| In re HERBERT WILLIAM MULLIN, | H030786 |
|---|---|
| on Habeas Corpus. | (Santa Cruz County Super. Ct. No. 50219) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Bamattre-Manoukian, Acting P.J., Mihara, J., and McAdams, J.,

participated in this decision.)

Dated    DEC 6 - 2006          BAMATTRE-MANOUKIAN, J.          Acting P.J.

RECEIVED

JAN 1 2 2007

CLERK SUPREME COURT

F I L E D

SEP 2 9 2006

ALEX CALVO, CLERK
BY
DEPUTY. SANTA CRUZ COUNTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CRUZ

In re the Matter of the Application of:                    NO. 50219

HERBERT WILLIAM MULLIN,                      ORDER DENYING PETITION FOR
                                             WRIT OF HABEAS CORPUS
          Petitioner,

For Writ of Habeas Corpus.
_____/

    A petition for writ of habeas corpus has been filed in this matter on September 25, 2006. Petitioner asserts that the Board of Parole acted improperly by denying him parole at the most recent parole hearing and by not giving him a date for another parole hearing for five years.

    The petition is not very clear as to what evidence was available to the Board at the most recent hearing, but based on the petition alone, the Board had available to it information about the circumstances regarding the committing offenses (eleven homicides) and a "negative" psychological evaluation report from Dee Shaffer, Ph.D. The Board only needed some evidence to legally justify its decision. There is ample evidence for the Board to do what it did. Indeed, the Board has the discretion to base their decision on the circumstances of the committing offenses alone. *In re Dannenberg*, 34 Cal4th 1061.

/ / /

-1-

1

2    The petition is denied.

3

4

5    DATED:  _Sept. 29, 2006_

6    SAMUEL S. STEVENS
     Judge of the Superior Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT # BBB

#1.  SUPREME COURT OF CALIFORNIA
     Habeas Corpus # S149679
       Filed on JANUARY 23, 2007 —


#2.  Calif. Court of Appeal
       Six th Appellate District
        signed + mailed October 26, 2006 —
     Habeas Corpus # H - 030786

MC-275

Name HERBERT WILLIAM MULLIN
#B-51410 Rm # B-249

Address Mule Creek State Prison

P.o. Box # 409040

IONE, California 95640 —

CDC or ID Number CDCR # B-51410



JAN 2 3 2007

Frederick K. Ohlrich Clerk

_____
Deputy

Supreme Court

of California —
(Court)

Herbert William Mullin —
Petitioner

vs.

Calif. Court of Appeals
Sixth Appellate Dist.
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. S149079

(To be supplied by the Clerk of the Court)

[# H-030786 Cal. 6th App. Dist.]

[# 50219 Santa Cruz County Sup. Ct. #]

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.
- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

H. W. Mullin

1/21/2007

Legal
Solutions
& Plus

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

This petition concerns:

| | | | |
|---|---|---|---|
| ☐ A conviction | | ☒ Parole | |
| ☐ A sentence | | ☐ Credits | |
| ☐ Jail or prison conditions | | ☐ Prison discipline | |
| ☒ Other *(specify):* PETITION FOR REVIEW — | | | |

1. Your name: HERBERT William Mullin —

2. Where are you incarcerated? Mule CREEK STATE PRISon, IONE, CA. 95640

3. Why are you in custody?  ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      Murder 1st Degree — "2 - Counts"

      Murder 2nd Degree — "9 - Counts"

   b. Penal or other code sections: p.C. # 187

   c. Name and location of sentencing or committing court: Santa Cruz County Superior Ct.

      & Santa Clara County Superior Ct.

   d. Case number: Santa Cruz # 50219 — Santa Clara # 56702

   e. Date convicted or committed: Santa Cruz 1973 — Santa Clara 1973

   f. Date sentenced: Santa Cruz 1973 — Santa Clara 1973

   g. Length of sentence: Seven Years To Life // Min. Eligible parole @ 2/13/19.

   h. When do you expect to be released? As soon as is possible, I hope —.

   i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address:

      James Jackson, 202 Florence Drive, Aptos

      California 95003 —.

4. What was the LAST plea you entered? *(check one)*

   ☐ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☒ Other: "Not Guilty By Reason of Insanity"

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☒ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

   Santa Cruz # 50219 with Jury —.

   Santa Clara # 56702 without Jury; with Judge —.

6.  GROUNDS FOR RELIEF

**Ground 1:**    State briefly the ground on which you base your claim for relief.  For example, "the trial court imposed an illegal enhancement."  *(If you have additional grounds for relief, use a separate page for each ground.  State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)*

please see page #s 4 through 46 —.
(of separately bound "supporting Documents") —

a.  Supporting facts:

Tell your story briefly without citing cases or law.  If you are challenging the legality of your conviction, describe the facts upon which your conviction is based.  *If necessary, attach additional pages.*  CAUTION: You must state facts, not conclusions.  For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial.  Failure to allege sufficient facts will result in the denial of your petition.  (See *In re Swain* (1949) 34 Cal.2d 300, 304.)  A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.  *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

please see page #s 4 through 46 —.
(of separately bound "supporting Documents").

b.  Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim.  If necessary, attach an extra page.)*

please see page #s 4 through 46 —.
(of separately bound "supporting Documents") —,

7. Ground 2 or Ground _____ (if applicable):

Not Applicable —

a. Supporting facts:

Not Applicable —

b. Supporting cases, rules, or other authority:

Not Applicable —

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

      PLEASE SEE PAGE #S 49 & 50 —.

   b. Result: PAGE #S 49 thru 62 —.  c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) PAGE #S 49 & 50 —.

      (2) (of separately bound "Supporting Documents").

      (3) (PAGES # 49 thru 62 —.)

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☒ No.  If yes, state the attorney's name and address, if known:

      NoT Applicable —.

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☒ No.  If yes, give the following information:

   a. Result: NoT Applicable —.  b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) (PAGE #S 49 thru 62 —.)

      (2) (of separately bound "supporting Documents") —.

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

      NoT Applicable —.

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

      NoT Applicable —.

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.  NoT Applicable —.
      *Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. July 1, 2005]     **PETITION FOR WRIT OF HABEAS CORPUS**     Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☒ Yes. If yes, continue with number 13.  ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _please see page #s 49 & 50 — ._

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised:   (a) _(page #s 49 thru 67 — .)_

        (b) _(of separately bound "supporting documents")_,

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

   b. (1) Name of court: _please see page #s 49 & 50 — ._

    (2) Nature of proceeding: _____

    (3) Issues raised:   (a) _(pages #s 49 thru 67 — .)_

        (b) _(of separately bound "supporting documents")_,

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    _unKnown — ._

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

    _Not Applicable — ._

16. Are you presently represented by counsel?  ☐ Yes.  ☒ No.  If yes, state the attorney's name and address, if known:

    _No — ._

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☒ No.  If yes, explain:

    _No — ._

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    _Not Applicable — ._

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _1/21/2007_        _1/21/2002_    ▶ _H. W. Mullin_ _____

                                                (SIGNATURE OF PETITIONER)

MC-275 [Rev. July 1, 2005]        **PETITION FOR WRIT OF HABEAS CORPUS**        Page six of six

SUPREME COURT OF CALIFORNIA

HERBERT WILLIAM MULLIN

vs

CALIFORNIA COURT OF APPEALS          PETITION FOR WRIT OF HABEAS CORPUS

SIXTH APPELLATE DISTRICT

.................................    No. ...S-149679........

cal. sixth app. dist.# H-030786

santa cruz county superior court # 50219

.............................................................

.............................................................

To the Judges of the California Supreme Court

Your Honors

     This petition for Review, and/or Petion for Writ of Habeas

Corpus, and/or Petion for Writ of Mandamus, requests that you use your powers

to vacate and remedy the "Order Denying Petition for Writ of Habeas Corpus"

issued on December 6, 2006, by the Sixth Appellate District Court of Appeal of

California Judges Barrattre-Manoukian; J. Mihara; J. McAdams. (See said Denial

Order, included).

     Secondly, I am requesting that your Court use its powers

to direct the CDCR, Board of Parole Hearings, to initiate the administration

of a new, up-to-date, Psychological Evaluation Report, and also then, that a

new Parole Concideration Hearing be convened as soon as is possible.

Thirdly, this petitioner, H. W. Mullin, believes that this petition was, and is, very clear and thourough; therefore I request that your Court review and inspect this entire petition, keeping in mind Calif. Penal Code # 1258 of Title # 9, re: the petition for review, and/or habeas corpus, and/or mandamus, should be judged justly and logically without regard to technical errors.

Both the Sixth Appellate District Court of Appeals for California, and the Santa Cruz County Superior Court, were probably in error when they refused to concider the implications of page #s 49 through 63. The two outstanding charges referred to were also spoken about at the Parole Concideration Hearings of March 22, 2006, and the previous Parole Concideration Hearings of December 2001 and August 1996. The District Attorney's Office of Santa Cruz County has had a Deputy Assistant District Attorney present at all three of the above mentioned Parole Concideration Hearings.

A question now for the California Supreme Court is: Why has not the District Attorney's Office of Santa Cruz County filled on, or dismissed, those two outstanding charges ?    Why did not the Sixth Appellate District Court nor the Santa Cruz County Superior Court draw attention to such an important matter that was clearly placed before them ?

This petioner, H. W. Mullin, presented seven (7) Grounds, with supporting facts, and supporting cases, rules, and other authorities !

Ground # 1.)  Denial Language - Continued Use of Crime ; (page #s 4 & 5).

Ground # 2.)  Petitioner's Right to Not Discus Elements of the Crime ; (page #s 6 & 7).

Ground # 3.)  Failure of Counsel to Provide Adequate Representation; Ineffective Assistance of Counsel ; (pages #s 8,9,10,& 11).

Ground # 4.)  Inappropriate Use of Five (5) Year Old Psychological Evaluation in the Finding of Unsuitability for Parole ; (page #s 12, 13, 14).

Ground # 5.)  Failure of Parole Hearing Panel to Adequately Adhere to the
            Suitability Guidelines; (pages # 15, 16, & 17).

Ground # 6.)  Petitioner Did Not Receive A Fair and Impartial Hearing;
            (page #s 18, 19, 20, & 21).

Ground # 7.)  Rebuttal ; (page #s 22 through 46).


This petitioner, H. W. Mullin, hopes that the California Supreme Court will thouroughly review and inspect this entire petition, and then make a ruling in favor of relief.

It is hoped that the Calif. Penal Code # 1181, paragraph # 6, will be taken into account -  "When the verdict or finding is contrary to Law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but of a lesser degree thereof, or of a lessercrime included therein, the Court may modify the verdict, finding, or judgement accordingly, without granting or ordering a new trial, and this power shall extend to any Court to which the cause may be appealed. (page # 41).

This concludes this petition for Review, Habeas Corpus, Mandamus. In closing this petitioner, Herbert William Mullin, expresses remorse and sorrow to the victims and the families of the victims.  The crime spree in question took place between Oct. 13, 1972, and Feb. 13, 1973, approx. 34 years ago.  This petitioner believes he is sane and healthy, that he has been rehabilitated and re-educated now for many years, and that he is ready and willing and deserving of parole.

*H W. Mullin*

-------------------------------------------------

HERBERT WILLIAM MULLIN

H. W. Mullin
#B-51410; Rm.# 8-249 up
Mule Creek State Prison
Ione, California    95640

*1/21/2007*

MC-275

Name _HERBERT William Mullin—_

Address _Mule Creek State Prison_

_P.O. Box # 409040_

_IONE, CALIF. 95640_

CDC or ID Number _CDCR # B-51410_

**COPY**

_CALIF. COURT OF APPEAL_
_Sixth Appellate District_
(Court)

---

_HERBERT William Mullin_
Petitioner

vs.

_SANTA CRUZ COUNTY_
_SUPERIOR COURT_
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _H - 030786_

_(To be supplied by the Clerk of the Court)_

_SANTA CRUZ COUNTY SUPERIOR COURT_
_# 50217_

### INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 at seq.,
Cal. Rules of Court, rule 60(a)

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

pleAse See pAge #s 4 threough 46 ———.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

pleAse See pAge #s 4 threough 46 ———.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

pleAse See pAge #s 4 threough 46

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _please see page #s 49 & #50_

   b. Result _(pages 49 thru 67)_     c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _please see page #s 49 & page 50_

   (2) _____

   (3) _(pages # 49 thru 67)_

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

   _Not Applicable —_

9. Did you seek review in the California Supreme Court?  ☐ Yes  ☒ No.  If yes, give the following information:

   a. Result _Not Applicable —_     b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _(pages # 49 thru 67)_

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal: _Not Applicable —_

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    _Not Applicable —_

    b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☒ No.  _Not Applicable —_
    *Attach documents that show you have exhausted your administrative remedies.*

MC-275 (Rev. July 1, 2005)            **PETITION FOR WRIT OF HABEAS CORPUS**            Page five of six

COURT OF APPEAL OF THE STATE OF CALIFORNIA

in and for the

SIXTH APPELATE DISTRICT


HERBERT WILLIAM MULLIN

PETITIONER

VERSUS

SANTA CRUZ COUNTY

SUPERIOR COURT

CASE# _H - 030786_

SUPERIOR COURT #  50219


TO THE JUDGES OF THE COURT

THIS Petition for Writ of Habeas Corpus, and/or Mandamus, requests that you use your powers

to overturn, and/or vacate, the Order Denying Petition for Habeas Corpus, issued on September 29,

2006, by S. S. Stevens, Santa Cruz County Superior Court Judge.  (See said Order, included).

Secondly, I am requesting that you order Judge Stevens to direct the California Department

of Corrections and Rehabilitation, Board of Parole Hearings, at Mule Creek State Prison, in Ione,

California, Amador County, zip # 95640, to require a new, up-to-date, psychology evaluation to be

administered, and also then, that a new Parole Concideration Hearing Hearing be convened as soon

as is possible.

The so-called negative psychological evaluation report referred to in Judge Stevens September

29, 2006, DENIAL, was made by a Contract Psychologist, Dee Shaffer, Ph. D., which was written on

July 26, 2001, more than five (5) years ago.  (See Ground # 4; pages 12, 13, 14.)

This petitioner, H. W. Mullin, believes that his petition was, and is, very clear nad thourough.

I request that your court, the 6th Appealate District Court of California, based in Santa Clara County,

review and inspect this entire petition.

Judge Stevens was probably in error when he refused to concider the implications of pages 49 through 63. The two outstanding charges referred to were also spoken about at the Parole Concideration Hearing of March 22, 2006, and the previous Parole Concideration Hearing of December of 2001, and in the previous Parole Concideration Hearing of August of 1996.

Why has not the District Attorney's Office of Santa Cruz County filed on, or dismissed, those charges ?   Why did Judge Stevens not draw attention to such an important matter that was clearly placed before him ?

This Petitioner, Herbert William Mullin, presented seven (7) Grounds, with supporting facts, and supporting cases, rules, and other authorities! These Grounds pertained to:

Ground # 1)   Denial Language - Continued Use of Crime   (pages # 4 & 5)

Ground # 2)   Petitioner's Right to Not Discuss Elements of Crime   (pages # 6 & 7)

Ground # 3)   Failure of Counsel to Provide Adequate Representation'; Ineffective Assistance of Counsel.   (pages # 8, 9, 10, & 11).

Ground # 4)   Inappropriate Use of Five (5) Year Old Psychological Evaluation in the Finding of Unsuitability for Parole.   (pages # 12, 13, & 14).

Ground # 5)   Failure of the Board of Parole Hearings Panel to Adequately Adhere to the Suitability Guidelines   (pages # 15, 16, & 17).

Ground # 6)   Petitioner Did Not Receive A Fair and Impartial Hearing   (pages # 18, 19, 20, & 21).

Ground # 7)   REBUTTAL   (pages # 22 thru 46).


This petitioner, H.W. Mullin, hopes that your Court, the 6th Appealate District Court of California, will thouroughly inspect and review this entire petition, and then make a ruling in favor of relief. (Penal Code # 1181, paragraph # 6: "When the verdict or finding is contrary to Law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but of a lesser degree therof, or of a lesser crime included therin, the Court may modify the verdict, finding, or judgment accordingly, without granting or ordering a new trial, and this power shall extend to any Court to which the cause may be appealed. (See page # 41).

Petitioner requests that Penal Code # 1258 of Title # 9 be taken into concideration in that

this Petition for Writ of Habeas Corpus, and/or Mandamus, should be judged justly and logicaly without regard to technical errors.

This concludes this Petition for Writ of Habeas Corpus, and/or Mandamus, from the Petitioner Herbert William Mullin, to the 6th Appealate District Court of California, based in Santa Clara County, which Petition is seeking relief from a ' Five (5) Year Denial of Parole' from the California Depatment of Corrections and Rehabilitation, Board of Parole Hearings, issued on March 22, 2006, at Mule Creek State Prison, which 'Five Year Denial' became finalized on July 20, 2006.

Respectfully submitted,

H. W. Mullin ——

Herbert William Mullin

10/17/2006
(dated)

Herbert William Mullin
Mule Creek State Prison
4001 Highway # 104
CDCR # B-51410
Room # 8- 249 up
IONE, California  95640

EXHIBIT # C C C

"Supporting Documents"

MC-275

Name    HERBERT WILLIAM MULLIN

        Mule Creek State Prison

Address    P.O. Box # 409040

        IONE, CALIFORNIA  95640


CDC or ID Number    CDCR - # B-51410


                Santa Cruz County, California

                Superior Court
                _____
                        (Court)

| | |
|---|---|
| Herbert William Mullin | PETITION FOR WRIT OF HABEAS CORPUS |
| Petitioner | |
| vs. | No. _____ |
| | *(To be supplied by the Clerk of the Court)* |
| CDCR Board of Parole Hearings | |
| Respondent | |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

*H.W. Mullin —— 8/30/2006*

Legal
Solutions™
& Plus

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

1.

This is a petition for Writ of Habeas Corpus, +/or, a petition for Writ of Mandamus, requesting that the Court overturn, +/or, vacate, the "5-year denial" of parole issued by the CDCR Board of Parole Hearings on March 22nd, 2006, at Mule Creek State Prison, in Ione, California, Amador County — which 5-year denial became final and binding on July 20th, 2006 —.

Furthermore, I am requesting that a new, up-to-date, psychological evaluation be administered, and then a new parole consideration hearing convened.

8/30/2006
DATED

H. W. Mullin
HERBERT W. Mullin

RE: Herbert William Mullin —
# B-51410  Rm. # 8-249
Mule Creek State Prison
4001 Highway # 104
Ione, California  95640 —

**This petition concerns:**

- [ ] A conviction
- [X] Parole
- [ ] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [ ] Other *(specify):* _____

1. Your name: Herbert William Mullin

2. Where are you incarcerated? Mule Creek State Prison, IONE, California 95640

3. Why are you in custody? [X] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reasons for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
      Murder 1st degree" 2 counts" & Murder 2nd degree "3 counts", all SC.
      Murder 2nd degree " one count ", CS WPT.

   b. Penal or other code sections: Penal Code # 187.

   c. Name and location of sentencing or committing court: Santa Cruz County Superior Court, &
      Santa Clara County Superior Court.

   d. Case number: Santa Cruz # 50219 ;   Santa Clara # 56702

   e. Date convicted or committed: Santa Cruz 1973 ;   Santa Clara X 1973

   f. Date sentenced: Santa Cruz September 1973 ;   Santa Clara December 1973.

   g. Length of sentence: Seven Years to Life; Min. Eligible Parole Date = 2/13/1980

   h. When do you expect to be released? As soon as is possible, I hope.

   i. Were you represented by counsel in the trial court? [X] Yes.   [ ] No.   If yes, state the attorney's name and address:
      James Jackson, at 202 Florence Drive , Aptos, Calif. 95003 zip.

   _____

4. What was the LAST plea you entered? *(check one)*
   [ ] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [X] Other: 'Not Guilty By Reason of Insanity'

5. If you pleaded not guilty, what kind of trial did you have?
   [X] Jury   [X] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial
   Santa Cruz # 50219 with a Jury
   Santa Clara # 56702 without a Jury, with a Judge.

6.  GROUNDS FOR RELIEF

    **Ground 1:**  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

    <u>DENIAL LANGUAGE - CONTINUED USE OF THE CRIME.</u>

a.  Supporting facts:

    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

    Subsequent to the CDCR Board of Parole Hearings, Parole Consideration Hearing, of March 22, 2006, Wednesday, at Mule Creek State Prison in Ione, California, zip # 95640, in Amador County, re: Herbert William Mullin, CDCR # B-51410, the panel found this petitioner 'unsuitable' for parole, and furthermore issued a '5-year denial' until the next opportunity for said petitioner to request again a parole from the California Department of Corrections and Rehabilitation.

    One of the main reasons cited was the severity or nature of the crime. See Exhibit # A, re: page # 32, lines 15, 16, 17; i.e., Commissioner Biggers speaking, " The first one being that the offense was carried out in an especially cruel and callous manner."

    Another instance of the 'Denial Language - Continued Use of the Crime' ground can be found also in Exhibit # A, re: page # 32, lines

b.  Supporting cases, rules, or other authority (optional):

    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

1.  Penal Code Section # 3041

2.  In re Rosenkrantz , 24 C 4th 616.  Weight of suitability evidence outweighs the unsuitability factors.

3.  In re Shaputis , 135 Ca 4th 217 :  Parole Board's continued reliance on the crime as a determining factor for unsuitability.

**4.**

Ground 1 Supporting facts (cont.):

lines 23, 24, 25, 26; i.e., Commissioner Biggers speaking, " You-- in one incident the offense was carried out in a calculated manner such as an execution style murder ..."; and re: page # 30, lines 2, 3, 4; i.e., Commissioner Biggers speaking, " The offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering."

Another instance of the 'Denial Language - Continued Use of Crime' Ground can be found within Exhibit # A, re: page # 33, lines 10, 11, 12, 13, 14, 15, 16; i.e., Commissioner Biggers speaking, " In a seperate decision the panel finds it is not reasonable to expect that parole will be granted at a hearing in the next five years. And the reason that we did that was the fact that you murdered eleven (11) people and the fact that you admitted to murdering other individuals."


Supporting cases, rules, or other authority:    (continued)

4.    In re Scott , 119 Ca 4th at p. 899 :  The prisoner committed his
        crime as a result of significant stress in his life.

5.    Biggs v. Terhune (9th Cir 2003) 334 Fed 910 :  Continued reliance
        on the commitment offense equates to a due process violation.

6.    Janosek v. Oregon Board of Parole (9th Cir 1987) 833 Fed 1389

7.    Irons v. Warden of California State Prison Solano (E.D. Cal. 2005)
        358 F. Supp. 2nd 936.

8.    McQuillon v. Duncan  00-55132 ( 9th Circuit, 2002 )

9.    The State Of California Constitution ;  Right to Due Process.

10.   The Constitution of the United States of America ; Amendment # 14,
        Petitioner's Right to Due Process.

7. Ground 2 or Ground _____ (if applicable):

PETITIONER'S RIGHT TO NOT DISCUSS ELEMENTS OF CRIME.

a. Supporting facts:

See Exhibit # B, re; page # 12, lines 24, 25; i.e., Commission-er Biggers speaking, " You're not required to admit your offenses or discuss your offenses."

See Exhibit # B, re: page # 13, lines 3, 4, 5; i.e., Commission-er Biggers speaking, " You're not required to admit your offense or discuss your offenses."

See Exhibit # B, re: page # 19, lines 26, 27; i.e., Commissioner Biggers speaking, " Thank You. Will the inmate be speaking to the Panel ?" ; and page # 20, lines 1, 2, 3; i.e., Public Defender Attor-ney Chladek speaking, " He will be talking about everything except for the crime. He does not wish to talk about that at this time."

See Exhibit # B, re: pages 25 through 32. All of the questions asked during this period of the hearing pertaining to 'motivation', were asked & answered in the 1996 and in the 2001 Parole Concideration Hearings of the Board of Prison Terms; furthermore, they were all dis-cribed and explained in the 602 Appeals of the 1996 and the 2001 Par-ole Concideration Hearings.

Both of the panel members at this March 22, 2006, Parole Concid-eration Hearing stated that they had read the Central File, and the previous Parole Concideration Transcripts, and the 602 Appeals to the Previous Parole Denials.

b. Supporting cases, rules, or other authority:

1. Penal Code Section # 5011. The prisoner may refuse to discuss the facts of the crime.

2. Miranda rights can be extrapolated to this issue subsequent to petitioner stating that he would not be discussing the crime.

3. Title 15, Division 2, Section # 2236. "... The board shall

6.

Ground **2** Supporting facts (cont.):

Their lines of questioning indicate that they were intentionally pretending to 'not understand' my point of view. My 'point of view' was itemized quite clearly in the '602 Appeals' to the previous Parole Consideration Hearing denials.

That behavior on the panel members part should be considered as II 'illogical' and prejudicial misconduct. It should be considered as Grounds for 'overturning the March 22, 2006, denial', and for issuing a Court Order (vis a vis, Writ of Mandamus) entitling the CDCR - Board of Parole Hearings to immediately schedule a 'New Parole Consideration Hearing', subsequent to a new Psychological Evaluation.


Supporting cases, rules, or other authority:   (continued)

3.  (continued)   not require an admission of guilt to any crime for which the prisoner was committed. A prisoner may refuse to discuss the facts of the crime in which instance a decision shall be made based on the other information available and the refusal shall not be held against the prisoner.

4.  The State of California ;   Right to Due Process.

5.  The Constitution of The United States of America, Amendment # 14, Petitioner's Right to Due Process.

7. Ground 3

FAILURE OF COUNSEL TO PROVIDE ADEQUATE REPRESENTATION.
INEFFECTIVE ASSISTANCE OF COUNSEL.

a. Supporting facts:

This petitioner's first meeting with Public Defender Larry Chladek was on March 7th, 2006, in the Mule Creek State Prison Visiting Room.

Attorney Chladek refused to look at or discuss the 'two folders' of matterial that I brought for our meeting. He said that without a current, up-to-date, Psychological Evaluation Report that recommended RUAPP = Release Upon Approval of Parole Plans, Parole, be believed I did not have a chance of getting a 'suitability for parole' decision.

I asked Attorney Chladek if he would write a letter immediately to the CDCR Board of Parole Hearings requesting a 'continuance', re: Title 15, Division 2., Chapter 3., # 2253., concerning my right to request a 'continuance'. I showed him the above mantioned # 2253. He refused, saying that what I was showing him was not pertinent. He was adament in expressing his belief that because of the 'negative psych. report' of July 26, 2001. by Dr. Dee Shafer, Ph.D., I had no chance of getting found 'suitable'. His insistent recommendation was that I 'stipulate' to a 3 or 4 year 'unsuitability' denial. (See Exhibit # J).

I had explained to Attorney Chladek at the March 7, 2006, meeting, the importance of his requesting a 'continuance' for me, because of the

Supporting cases, rules, or other authority:

1. People v. Pope     23 CAl. 3rd
2. People v. Fosselman  33 C 3d 572
3. The State of California Constitution ;  Right to Due Process.
4. The Constitution of the United States of America, Amendment # 14,
   Petitioner's Right to Due Process.

**PETITION FOR WRIT OF HABEAS CORPUS**

R

Ground 3 Supporting facts (cont.):

fact that the Board of Parole Hearings did not have a current, up-to-date Psychological Evaluation. He refused to do his job. At both the March 7th, 2005, and at the March 22, 2005, meetings with Attorney Chladek, he refused to either write to the Board of Parole Hearings, or to discuss with the Parole Consideration Hearing Panel, the option issuing a current 'continuance' until an up-to-date Psychological Evaluation could be held and completed. In refusing to request a 'continuance', Attorney Chladek was contradicting his own logic by indicating repeatedly that he believed I would never be found 'Suitable for Parole' with a five (5) year old Psychological Evaluation that was as negative as was the one in question.

At the March 22, 2005, meeting with Attorney Chladek, approx. one hour before the begining of the meeting with the Parole Consideration Panel, I again asked Attorney Chladek to review the aforementioned 'two folders' of informative matterial that I wanted him to present to the panel. Without reading the contents of the 'two folders', Attorney Chladek went into the Hearing Room and gave the two folders to the panel. When Attorney Chladek came back and spoke to me, he indicated that the members of the panel and he had collectively decided that I should 'stipulate to a three (3) or four (4) year denial' of suitability. I refused. I told him that I would not stipulate to unsuitability because I knew that that was a lie. XXXX " I am suitable ! ", I told him. I expressed my heartfelt belief XXXX right there and then, that I knew I was suitable for parole, and that I should receive a ' RUAPP = Release Upon Approval of Parole Plans. I told him that I wanted to have my 'Hearing', and he left the room to convey that message to the panel. (See Exhibit # 2)

9

Ground 3 Supporting facts (cont.):

See Exhibit # 3, page 19, lines 24, 25, of the March 22, 2006, Board of Parole hearing Transcripts. Attorney Chladek made 'no preliminary objections'. He could have and he should have brought up the subject of the five (5) year old negative Psychological Evaluation, and the need for a justified 'continuance' so that a current, up-to-date, Psychological Evaluation could take place prior to a Parole Consideration Hearing.

See Exhibit # 3, pages 25 through 32. Attorney Chladek failed to object to the line of questioning that did not pertain exclusively to 'suitability for parole'.

See Exhibit # 3, page 73, lines 13, 14. Attorney Chladek had no questions or objections. After the Santa Cruz and Santa Clara County District Attorney's Representatives ha d finished their questioning, my Defense Attorney Chladek was given the opportunity to question me. The The District Attorney's line of questioning was basicly 'character ass- assination' in nature; it was also irrellavant to the suitability for parole factor. My Defense Attorney Chladek could have at that point begun questioning me in an effort to refute the validity of the District Attorneys questioning, and to repair the damage done. In so doing, Att- orney Chladek would have made my 'Request for Parole', i.e., RUAPP = Release Upon Approval of Parole Plans, appear to be a very good and wor- thwhile proposition, one that the panel would logically agree to. That was his job. Defense Attorney Chladek failed to do his job.

Furthermore, at that time (See Exhibit # 3, page 73, lines 13, 14.) Defense Attorney Chladek could have asked questions to the two Parole Consideration Hearing panel members, and to the Santa Cruz County Dist- rict Attorney's Representative, pertinent to the 'two uncharged murders; re; P.C. # 187' that were refered to during the hearing. I had asked

10.

**Ground 3** Supporting facts (cont.):

Defense Attorney Chladek to make these inquiries for me at our March 7th, 2006, meeting, and again at the meeting I had with him approx. one (1) hour before the begining of the March 22, 2006, Parole Consideration hearing.  These are important questions with reference to Parole, and Parole Plans, and Determination of Suitability.  There is no doubt that the California Department of Corrections and Rehabilitation, Board of Parole Hearings, considers these 'circumstances' when making their determinations as to suitability.  Defense Attorney Chladek did not ask these pertinent questions that I asked him to ask.  He was not doing his job as a defense attorney.  He was 'ineffective'.

(See Exhibit # A, page # 82, line 22;  and page 83, lines 15, 16.).

(See Exhibit # B, page # 25, lines 5, 6, 7.).

(See Exhibit # B, page # 11, lines 24, 25, 26, 27.).

7. Ground 4

INAPPROPRIATE USE OF FIVE( 5) YEAR OLD PSYCHOLOGICAL

EVALUATION IN THE FINDING OF UNSUITABILITY FOR PAROLE.

a. Supporting facts:

The Psychological Evaluation in question was dated July 25, 2001,

and signed by Dr. Dee Shafer, Ph.D., Contract Psychologist # 7540, (See

Exhibit # D.). The Psychological Evaluation carried with it a very neg-

ative summation and a negative recommendation for parole. (See Exhibit # D.)

On May 17, 2006, some 55 days after the March 22, 2006, 'denial',

I wrote a letter to the Board of Parole Hearings in Sacramento. With

that letter I included other letters (and writtings) that are pertinent

to this discussion concerning Ground # 4. (See Exhibit # D.).

On February 2, 2005, I wrote a letter to Dr. Vance Jorun, M.D., the

Chief Psychiatrist of Mule Creek State Prison at that time, requesting a

'one-on-one' Psychological Evaluation in preparation for my Parole Consid-

eration Hearing. (See Exhibit # D.). That was some 13 months before the

March 22, 2006, Parole Consideration Hearing took place.

On January 9, 2006, I wrote a letter to Dr. R. Lipon, M.D., the Chief

Psychiatrist of Mule Creek State Prison at that time, requesting a 'one-

on-one' Psychological Evaluation in preparation for my Parole Consideration

Hearing. (See Exhibit # D.). That was two months and two weeks before

the March 22, 2006, Parole Consideration Hearing.

Supporting cases, rules, or other authority:

1.  State o California Constitution, Right to Due Process.

2.  The U.S.A. Constitution, Amendment # 14, Right to Due Process.

3.  In re Stoneroad (1998), Cal. Jrd. 176. - Right to a Fair and Impar-

      tial Hearing.

**PETITION FOR WRIT OF HABEAS CORPUS**

12 .

Ground 4 Supporting facts (cont.):

On February 9, 2006, I wrote a letter to the Board of Parole Hearings in Sacramento upon the advise of my Counselor, Ms. E. Hyland, CCI., and the MCSP Board of Parole Hearings Desk Secretary & Records Officer, Ms. D. Chavier. (See Exhibit # D.). This was almost six (6) weeks before the March 22, 2006, Parole Consideration Hearing. It also explained that a new, up-to-date, Psychological Evaluation was needed.

NONE OF THE ABOVE LETTERS OF MINE RECEIVED ANY RESPONSE !

The reasons for a new, up-to-date, Psychological Evaluation are clearly clearly evident for the following reasons:

1. The evaluation used in the March 22, 2006, Parole Consideration Hearing was/is extremely negative (unjustly so), and it is approximately five (5) years old.

2. Petitioner feels that many psychological revelations have come about concerning his past and present mental health. Petitioner feels that due to his present state of 'GOOD MENTAL HEALTH', a new and updated Psychological Evaluation would yield a much more favorable series of conclusions by the Psychological Evaluator tending to recommend Parole Suitability at this time.

3. The Five (5) Year Old Psychological Evaluation was a 'Center Point' during the March 22, 2006, Parole Consideration Hearing, and in the March 22, 2006, 'Five (5) Year Denial'. (See Exhibits # A & # B.).

4. Public Defender Chladek was insistent and adament in his professtations that this Petitioner could not receive a 'Parole Date', nor a 'Possitive Outcome' at the March 22, 2006, Parole Consideration Hearing because the five (5) year old Psychological Evaluation was/is so 'negative' and adverse to the finding of suitability for parole.

13

Ground 4 Supporting facts (cont.):

Concerning the Five (5) Year Old Psychological Evaluation Report as being a 'CENTERPOINT' in the Denial Decision, and in the Hearing itself,

See Exhibit A, page 35, lines 3 -24, and page 36, line 1.

See Exhibit A, page 39, line 25, and page 40, lines 1 -7.

See Exhibit B, page 12, lines 21 - 26.

See Exhibit B, page 48 & 49 & 50, lines 1 - 15.

14.

7. Ground 5

FAILURE OF THE BOARD OF PAROLE HEARINGS PANEL TO ADEQUATELY
ADHERE TO THE SUITABILITY GUIDELINES

a. Supporting facts:

On page # 18, lines 8 - 11, Commissioner Biggers stated that, " We're
not retrying your case at all, but there are certain parameters that we
have that we have to work off of that have been spelled out in Title 15."
(See Exhibit # 3, page 18, lines 8 - 11).

At the end of the hearing petitioner was found to be unsuitable for
parole.  The panel failed to properly address important areas of suitabil-
ity as outlined in Title 15, Division 2, Section # 2281, (d) #s (1), (3),
(4), (6), (7), (8).  These pertain to "Circumstances Tending to Show Suit-
ability".

1.  No Juvenile Record -   The prisoner does not have a record of assault-
ing others as a juvenile, or of committing crimes with a potential of per-
sonal harm to victims.

2.  Signs of Remorse - Petitioner submitted several papers for the panel
members to review.  In those papers petitioner stated several times his
personal feelings of remorse.  The panel members failed to read &/or men-
tion these written sentiments of remorse.  During the hearing petitioner
apologized for commiting the crimes and said that if he could change the
past he would go back there and make sure that nobody got hurt.

(See Exhibit 3, page 30)
(lines 21 - 24)

Supporting cases, rules, or other authority:

Title 15, Division Two
Section (d), #s (1), (3), (4), (6), (7), (8).
re: Circumstances Tending to Show Suitability.

2.  State of California Constitution - Right to Due Process.

3.  U.S.A. Constitution, 14 th Amendment,- Right to Due Process.

**PETITION FOR WRIT OF HABEAS CORPUS**

15.

Ground 5 Supporting facts (cont.):

3.  Motivation for the Crime —  "The prisoner committed his crimes as the result of significant stress in his life ; especially because the stress had built over a long period of time." (See Title 15, Div. 2, # 2281, 4-4) Several times during the hearing it was noted that petitioner was diagnosed as being an 'Undifferentiated / Paranoid Schitzophrenic' before and during the commission of the crime spree. It was noted during the hearing that he had been suffering from severe emotional stress at the time of the crime spree. It was thouroughly discussed that this period of 'Undiffer-entiated / Paranoid Schitzophrenia' had been developing over several years with many mental health hospital in-patient & out-patient commitments.

4.  Lack of Criminal History —  During the denial phase of the hearing, Commissioner Biggers stated, " We took into consideration your history of criminality and that, you know, you were picked up on a marijuana poss-ession, you were resisting arrest, drunk in public, ....." (Exhibit # **A**, page 89, lines 1 - 4.) The inflection in Mr. Biggers voice brought with it a conclussion that those were actions of a common criminal. Whereas, each one was no more ~~XXX~~ than a misdemeanor. Petitioner did not have a 'criminal history', petitioner had a history of 'mental illness'.

5.  Age —  In the denial language nothing was spoken as to the advancing age of petitioner. Petitioner committed the crime at age 25. Petitioner is currently 35 years of age. Years of incarceration and advancing age reduces the probability of recidivism.

6.  Understanding and Plans for the Future —  The petitioner prepared and submitted a positive set of parole plans that addressed housing and employ-ment. (See Exhibit # B )

    Petitioner has certificates of completion in Vocational Bakery, in Vocational Landscape & Gardening, and in Vocational Mill & Cabinet making.

*16.*

Ground 5 Supporting facts (cont.):

Petitioner has developed marketable skills that can be put to use upon release from prison. It is not required for an individual to have a job or a place to live for a finding of suitability. In denying petitioner suitability, Commissioner Biggers failed to give the parole plans any credibility. (See Exhibit # A, page 76, lines 11 - 24.)

7. Institutional Behavior - Petitioner's institution work records, Alcoholic Anonymous attendance reports, Stay Out of Prison Program reports, and Arts In Corrections participation records, all indicate an enhanced ability to function normally and naturally, within the law, upon release.

None of the above mentioned areas of suitability were properly addressed during the suitability finding phase of the decision by Commissioner Biggers.

17.

7. Ground 6

PETITIONER DID NOT RECEIVE A FAIR AND IMPARTIAL HEARING

a. Supporting facts:

Petitioner did not receive a fair or impartial hearing for the following reasons :

1.   At the begining of the hearing petitioner was informed that he would not be required to discuss the case. Petitioner, as well as his defense attorney, indicated that petitioner would not be talking about the case. Throughout the hearing the panel continued to ask questions concerning the case, none of which had anything to do with the finding of suitability.

2.   The hearing panel stated that they had reviewed all pertinent documents, including the prisoner's C-File, the previous Parole Consideration hearing transcripts, the 602 Appeals to the previous parole denials, and especially the 2001 Parole Consideration hearing transcript. Petitioner had given his defense attorney Mr. Snider a set of documents (two folders) pertinent to suitability to be given to the panel members. During the actual hearing petitioner attempted to address the information contained in his two folders of submitted documents. Petitioner was cut off by the panel members.

     During the summation of Commissioner Fisher, as to the finding of suitability, he addressed the issue of remorse. Commissioner Biggers

Supporting cases, rules, or other authority:

1.   In re Rosenkrantz (2002), 29 Cal. 4th 176 : Right to Fair & Impartial hearing.

2.   The State of California Constitution ; Right to Due Process.

3.   The Constitution of the United States of America, Amendment V, 14; petitioner's Right to Due Process.

**PETITION FOR WRIT OF HABEAS CORPUS**

*18.*

Ground 6 Supporting facts (cont.):

stated that petitioner had not adequately shown remorse for the victim's
families, to his satisfaction. Not only had petitioner talked of remorse
during the hearing, but had also specifically mentioned the victim's fam-
ilies during the 2001 Parole Consideration Hearing. (See Exhibit # F )
Further, petitioner spoke about his sorrow and remorse in several of the
documents within the two folders that had been submitted for review.

Had Commissioner Biggers and Deputy Commissioner Blonien truely
reviewed the C-File, the previous Parole Consideration transcripts, the
602 Appeals to the previous parole denials, and the two folders of sub-
mitted writtings, they would have discovered the many times that sorrow
and remorse had been expressed and documented.

3. Parole Plans were sabotaged by the representative from the District
Attorney's Office of Santa Cruz County. As part of his parole plans,
this petitioner submitted documentation of correspondence with the New
Life Community Services organization in Santa Cruz. (See Exhibit # G)
On pages 73, lines 24 - 27, and page 74, lines 1 , 2, 3, the District
Attorney representative Symons stated that she was on the Board of Dir-
ectors of the New Life Community Services organization, and that their
organization would never allow petitioner to become a member. (See Exhi-
bit # G, pages 73, 74.) In making this statement she effectively des-
troyed this petitioner's parole plans in the eyes of the Parole Consider-
ation Panel Members.

4. The Panel relied heavily on a negative five year old Psychological
Evaluation. (See Exhibit # D.) Commissioner Biggers even read excerpts
verbatim, and then refused to re-paraphrase the report, in the deci-
sion finding of unsuitability. (See Exhibit # A, page 75, lines 3 - 27,
& page 76, lines 1.)

19.

Ground 6 Supporting facts (cont.):

This petitioner made three separate attempts to get a new, up-to-date, Psychological Evaluation prior to the Parole Consideration hearing. (See Exhibit ; E; Feb. 2, 2005 letter, & Mar. 3, 2005 letter, & Feb. 2, 2005 Letter.)

Petitioner believes that through the five (5) intervening years soince his last Psychological Evaluation, he has come to a better understanding of himself. He believes that he would receive a much more positive Psychological Evaluation at this time, one that would (and would have) influence the Parole Consideration panel in a way that would cause them to recommend parole suitability at this time.

Deputy Commissioner Blonien read extensively from the 2001 Psychological Evaluation report by Dr. Dee Shafer, Ph.D. (See Exhibit ; C, page 49, lines 24 - 27; & page 49, lines 1 - 27; & page 50, line 1 - 6.). It was very apparent from her voice inflection and mannerisms, that she accepted it in it's full face value.

5. Petitioner did not have effective legal representation for the hearing. Defense Attorney Chladek failed, or refused, to act as the advocate for this petitioner. Mr. Chladek refused to request a 'continuance'; he refused to review pertinent documents submitted to him by petitioner; he failed to properly object to the panel's continued questioning concerning the crime; he failed to ask petitioner appropriate questions when it came his turn to question this petitioner (See Exhibit ; D, page 73, lines 13, 14.); he failed to object to the Deputy District Attorney's efforts at sabotaging this petitioner's parole plans. Furthermore, Defense Attorney Chladek attempted to coerce this petitioner into stipulating, to a three (3) year, or four (4) year, multi-year denial, rather than appear before the Board of Parole Hearings Parole Consideration Hearing panel.

20.

Ground 6 Supporting facts (cont.):

Supporting cases, rules, or other authority:  (con't)

4.   McQuillon v. Duncan, 00-55182 (9th Circuit, 2002)

5.   In re Caswell, 92 Cal. App. 4th.

21.

GROUND # 7

REBUTTAL —

Following in Rebuttal Formatt, with some evidentiary material, is my personal viewpoint concerning why the Court System should VACATE the "5 YEAR DENIAL OF PAROLE" And MANDATE THAT A NEW PAROLE CONCIDERATION HEARING TAKE PLACE SUBSEQUENT TO A NEW, up-to-date, psychological EVALUATION —.

22

PETITION FOR WRIT OF HABEAS CORPUS &/or MANDAMUS
RE: HERBERT WILLIAM MULLIN versus CDCR- Board of Parole Hearings, et al
Date of Parole Concideration Hearing: March, 22nd, 2006
Place of Hearing: Mule Creek State Prison, IONE, CALIFORNIA 95640 zip

ACTION REQUESTED: Petitioner Herbert William Mullin is asking the Court
to over-turn &/or vacate the 'FIVE-Year DENIAL' issued by the CDCR Board
of Prison Hearings against Herbert William Mullin on 3/22/2006.
        Once the Board of Parole Hearings Decision has been vacated, Petition-
er requests that a new Parole Concideration Hearing be scheduled for as
soon as is possible. Petitioner believes that the Court has the legal
power to vacate the five year denial decision and to mandate that the
CDCR Board of Parole Hearings convene a new Parole Concideration Hearing.

Petitioner's Statement:

        If the Court wants to appoint a Public Defender to assist this
Petitioner in presenting his various insundry points of conflict to the
Court, then Petitioner is willing to work with that appointed Public Def-
ender in an effort to bring the whole truth & nothing but the truth to
the attention of the Court for it's review & judgement.

        In the meantime this Petitioner would like to point out some obvious
discrepancies in the ~~XXXXXXXX~~ 'decision' of the Board of Parole Hearings.

    #1.  The Board of Parole Hearings refused to read &/or discuss the
following written statements presented to them prior to, and at, the
actual Parole Concideration Hearing on March 22nd, 2006.

a)  " CONCERNING DR. GORDON HAIBERG'S AND DR. MORTON FELIX'S REMARKS IN
PREPARATION FOR THE 1976 AUGUST ADULT AUTHORITY PAROLE CONCIDERATION
HEARING.
        Both Dr. Haiberg and Dr. Felix told me that my parents had
deliberately refused to teach me how to become a self-confident and com-
petant, mature young man.
        Both of them agreed with me that my family and friends had
been practicing some form of kill-joy sadistic witchcraft on me, and that
they are the people responsible for causing me to committ the crime-spree.
        Dr. Haiberg and Dr. Felix agreed that my family and friends
knew when each crime happened, and that they did nothing to stop me from
committing the next ones; nor did they attempt to notify the police auth-
orities. (RE: October 13th, 1972, through February 13th, 1973).
        My meetings with Dr. Haiberg and Dr. Felix took place from
October of 1975 until approx. Thanksgiving of 1976."

    ( This document was signed & dated by me on January 9th, 2006.)

b)  " CONCERNING CCI CATHY BETHEL'S REMARKS IN PREPARATION FOR THE
        1991 BOARD OF PRISON TERMS PAROLE CONCIDERATION HEARING."

                Ms. Bethel told me that because of the fact that I grew
up in Boulder Creek, Santa Cruz County, near Big Basin Redwood State Park,
and graduated from San Lorenzo Valley High School in June of 1965, that
the CDC Psychology Departments and the various Parole Boards at that time,
would never openly admit that they believe my discription and explanation
of what actually happened, and why !!
                I asked her right then if that wasn't a form of social,
economic, and political sabbotage.
                She looked at me, waited a few seconds, then nodded "YES."
        I then asked her if she would be willing to put this all into

PAGE # ONE — HWM — 6/9/2006 —

page # 2 of 'PETITION FOR WRIT OF HABEAS CORPUS &/or MANDAMUS
RE:  HERBERT WILLIAM MULLIN  versus  CDCR-Board of Parole Hearings, et all
Date of Parole Consideration Hearing:    March 22nd, 2006

writting.  She looked at me for a second or two, then said "NO."

 (this document was signed and dated January 9th, 2006.)
 (It also was given to the Board of ~~PEARINGXX~~ Parole Hearings on
  March 22nd, 2006, before & during the actual hearing, yet they
  did not acknowledge it ~~BEING~~ being there.)
 (Incidently, both Dr. Gordon Waiberg and Dr. Morton Felix also were
asked to put their confirmations into writing, yet they both refused
to do so, in similar fasion to me. Cathy Bethel, re: 1976 & 1991.)

c) "CONCERNING EMPHASIS"

  Both the Psychological Evaluations and the Counsellor evaluations
always emphasize the negative aspects of the previous psychological and
counsellor evaluations that they found in my Central File.
  It is my belief that the positive aspects, and/or the Mitigating
Circumstances, of my Central File, and my person to person interviews,
should have been emphasized.
  Emphasis is important.
 I should be given good Psychological Evaluation Reports, tending to
recommend RUAPP= Release Upon Approval of Parole Plans.
 I should be given good Counsellor Evaluations Reports, recommending
release from prison as soon as is possible.
  Emphasis is important.

 (this document was signed & dated on January 9th, 2006.)

d)  MITIGATING CIRCUMSTANCES
   Title 15  -  # 2202 - (a), (2), (3).
  #1) The inmate paticipated in the crime under partially
    excusable circumstances which do not amount to a legal
    defense.
  #2) The inmate had no apparent predisposition to commit the
    crime but was induced by others to participate in its
    commission.
  #3) The inmate has a minimal history of criminal behavior.
  #4) The crime was committed during an unusual situation that
    is unlikely to recur.
  #5) The crime was committed during a brief period of extreme
    mental &/or emotional stress and trauma.

     I believe that these 'Mitigating Circumstances'
   pertain to my case.  I believe I deserve a parole.

 ( this document was signed and dated by me on October 17th, 2005.)
 ( It also was given to the Board of Parole Hearings before & during
  the actual Parole Consideration Hearing but was not read nor dis-
  cussed by the Commissioner or the Deputy Commissioner.)

e)  DETERMINATION OF SUITABILITY
   TITLE 15  -  Article 5
   # 2281  -  Determination of Suitability
    (d)  -  Circumstances Tending to Show Suitability

  1) No Juvenile Record - The prisoner does not have a record of

PAge # 2 — HWM — 6/9/2006 —

2 of 3 |24.

Page # 3 of 'PETITION FOR WRIT OF HABEAS CORPUS b/or MANDAMUS
RE: HERBERT WILLIAM MULLIN versus CDCR- BOARD OF PAROLE HEARINGS, et al
Date of Parole Consideration Hearing:   March 22nd, 2006

　　　　assaulting others as a juvenile, or of committing crimes with a
　　　　potential of personal harm to victims.
3 #)　Signs of Remorse -  In my prayers every day, several times each
　　　　day, I show signs of true & honest sorrow and remorse.
4 5)　Motivation for the Crime *-  The prisoner committed his crimes as
　　　　the result of significant stress in his life ; especially because
　　　　the stress had built over a long period of time.
　　 6)　Age  -  The prisoner's present age reduces the probability of
　　　　recidivism.  25 years old at the time of the crime, yet now the
　　　　prisoner is 59 years old.
　 7)　Understanding & Plans for the Future -
　　　　The Prisoner has made realistic plans for release.
　　　　I have developed marketable skills that can be put to use
　　　　upon release from prison.
　 8)　Institutional Behavior -
　　　　My work records, Alcoholic Anonymous attendance reports,
　　　　STOP - Stay Out of Prison Program Reports, and Arts in Corrections
　　　　Participation Records, all indicated an enhanced ability to function
　　　　normally and naturaly within the Law upon release from prison.

　　　　　For the past 32½ years I have worked with the California
　　　　Department of Corrections (& Rehabilitation) to rehabilitate and
　　　　to re-educate myself socially, psychologically, and culturally.
　　　　I know beyond a shaddow of a doubt that I am OK.

　　　　I trully deserve a PAROLE/RUAPP, Release Upon Approval Of Parole
　　　　Plans.

　　　　　(this document was signed & dated by me on October 17th, 2005.)
　　　　( It also was given to the Board of Parole Hearings before and
　　　　during the actual Parole Consideration Hearing, yet it was
　　　　not read nor discussed by the Commissioner or Deputy Commiss-
　　　　ioner.)


　　　　In closing this part of the petition I want to indicate that I
believe I have proved that the Board of Parole Hearings on March 22nd,
2006, was illegally unfair & biased towards & against this petitioner.
During the actual suitability hearing & in the decision language itself,
the Court can find illogical & un-factual statements being made by the
Commissioner &/or Deputy-Commissioner.  They seemingly agreed with the
maliciously prosecutorial verbage of the attending XXXXXXXX district
attorneys, and erroniously overlooked actually written documents that
had been submitted to them prior to & at the actual Parole Consideration
Hearing.  MITIGATING CIRCUMSTANCES, TITLE 15 - # 2202 - (a), (2), (3),
and DETERMINATION OF SUITABILITY, TITLE 15 - Article 5 - # 2281 - (d).,
should not have been ignored in such a pernicious verbal fashion.

6/9/2006 ————
(dated)

H. W. Mullin ————
Herbert William Mullin


PAGE # 3

3 of 3 /25

PETITION FOR WRIT OF HABEAS CORPUS &/or MANDAMUS
RE: HERBERT WILLIAM MULLIN versus CDCR- Board of Parole Hearings, et al
Date of Parole Consideration Hearing: March, 22nd, 2006
Place of Hearing: Mule Creek State Prison, IONE, CALIFORNIA 95640 zip

REBUTAL concerning the 'Parole Denial Decision', pages 33 & 34 of the
Parole Consideration Hearing Transcripts, by Ruby M. Dougherty, the
transcriber, for 'Peters Sgorthand Reporting'company of Sacramento,
dated April 11th, 2006, at Sacramento, California, and delivered to
H. W. Mullin, CDCR # B-51410, on April 28th, 2006, by Counsellor Hyland.

REBUTAL:

On pages # 33 & 34 the Board of Parole Hearings spokesman
indicates that I did not give a reason for why I committed the crime
spree. The spokesman further indicates that the reasons I did give
were trivial. The spokesman further indicates that I did not give any
statements that indicate that I have insight into the motivation for
the crime spree's occurance.

During the Parole Consideration Hearing I told the Board
Of Parole Hearings that I felt that my mental illness, Paranoid Schitz-
ophrenia &/or Undifferentiated Schitzophrenia, Chronic, was the reason
for the commission of the crime spree. I indicated that in that state
of 'non-thinking' &/or 'only reacting to outside stimuli' was the reason
for the commission of the crime spree.
I even gave reasons why I thought I had developed the mental
illness to begin with; vis-a-vis, extreme immaturity, extreme naievity,
extreme gullibility, et cetera.

During the Parole Consideration Hearing the spokesman and
the deputy both indicated that they had thouroughly reviewed my 'Central
File'. In the 'Denial Decision' the spokesman noted that he had even
reviewed my previous 'Parole Consideration Hearing'transcripts from the
2001 Parole Consideration Hearing.
In 'REBUTAL' I must point out that in my 'Central File' and
in the 2001 Parole Consideration Hearing transcripts, there are numerous
references &/or written documents from me & others that indicate that
I was 'Paranoid Schitzophrenic & Undifferentiated Schitzophrenic, Chronic,
at the time of the commission of the crimes, and that I was 'unable to
differentiate between right & wrong' at the time of the commission of the
crimes. That is not trivial.
Furthermore, there were letters in my Central File, and
there were documents placed before the Board of Parole Hearings on
March 22nd, 2006, that refered to the motivation &/or reasons for the
commission of the crime spree. The Board of Parole Hearings on March
22nd, 2006, refused to take note of, to read, or to discuss said matt-
erial. That makes the 'Parole Denial Decision' statements on pages
# 33 & 34 very illogical and inappropriate.

I believe the Judges of the Courts involved to 'vacate' the 5-year "should"
Parole Denial Decision of March 22nd, 2006. I believe a new Parole
Consideration Hearing should be 'mandated' by the Honorable Judge of
the Honorable Court.

6/12/2006                              H. W. Mullin
(dated)                                Herbert William Mullin

26

PETITION FOR WRIT OF HABEAS CORPUS &/or MANDAMUS
RE: HERBERT WILLIAM MULLIN versus CDCR-Board of Parole Hearings, et al
Date of Parole Consideration Hearing: March 22nd, 2006
Place of Hearing: Mule Creek State Prison, IONE, CALIFORNIA 95640 zip

REBUTAL concerning the 'Parole Denial Decision', page # 83, lines 5 - 13;
and page # 84, lines 6 & 7, with regard to "expressing sorrow & remorse",
and "accepting responsibility".

REBUTAL:
   Near the begining of the Parole Consideration Hearing I
swore & affirmed that I would tell the whole truth and nothing but the
truth. I accepted responsibility for the commission of the crime spree
on page # 25, lines 9 - 19. On that same page on lines 20 - 22, I again
accepted responsibility for the crime spree. The language of the Parole
Denial Decision concerning me not accepting responsibility for the crime
spree is illogical and inappropriate. I believe the Parole Denial Deci-
sion should be overturned and a 'new' panel convened and a 'new' Parole
Consideration Hearing scheduled.
   Concerning my "expressions of true sorrow & true remorse".
On page # 59 & 60 of the Parole Hearing transcripts I spoke to the Parole
Consideration Panel as follows: "Okay, in the files that I gave you, there
are several pages of handwritten journal notes. In those journal
notes I expressed on seven or eight different occasions what I actually
think about & pray about every day. And that is that I am extremely re-
morseful and sorrowful for my part in committing the crime spree. That I
pray that the God of America will guide and protect and bless the souls
of the victims. And that God can forgive me and that society can
forgive me. And that I can be given a second chance. Sorrow & Remorse
are really part of my everyday life. It is not just when I wake up in
the morning, or when I go to sleep at night. It is at those times, but
it is also happening all through the days. Whenever I get a chance, I
express true sorrow & true remorse for committing the crime spree. I pray
that the victims are receiving God's Blessings. I honestly do."
   The Journal notes expressing sorrow & remorse were put there
for the Parole Consideration Panel to review, yet they did not acknowledge
their existence. That is irresponsible behavior on their part.
   The dates of the Journal Sorrow & Remorse entree's are as follows
Thursday Sept. 9th, 2004 (120 words) ; Sept. 13, 2004, Monday (44 words) ;
Tuesday Sept. 21, 2004 (38 words) ; Monday Nov. 22, 2004 (120 words) ;
Monday Dec. 13, 2004 (32 words ) ; Monday Dec. 20, 2004 (52 words) ;
Monday March 23, 2005 (53 words) ; March 29, 2005 (28 words) ; March 30th,
2005 (13 words) ;Tuesday April 5, 2005 (76 words) ; Monday April 11, 2005
(52 words) ; Tuesday June 21, 2005 (109 words) ; Friday August 26, 2005
(53 words) ; Tuesday August 30, 2005 (39 words) ; Monday January 23, 2006
(111 words). A total of fifteen entrees, comprising some one thousand
one-hundred and eleven words of 'true sorrow & true remorse'.
   This proves that the 'Denial Decision' page # 83, lines 5 - 13,
were inaccurate & inappropriate & irresponsible.
   This petitioner deserves to have a 'new' Parole Consideration Hearing
set for as soon as is possible.

_6/14/2006_
 (dated)

*H. W. Mullin*
Herbert William Mullin

27.

PETITION FOR WRIT OF HABEAS CORPUS &/or MANDAMUS
RE: HERBERT WILLIAM MULLIN versus CDCR- Board of Parole Hearings, et al
Date of Parole Hearing: March 22, 2006
Place of Parole Consideration Hearing: Mule Creek State Prison, IONE, Ca.

REBUTTAL: Enclosed with this rebuttal are two type written pages. One
is dated January 2nd, 2002, and the other is dated January 9th, 2002.
Both of these were written by this petitioner, Herbert William Mullin,
at one week, and at two weeks, after the December 27th, 2001, California
Department of Corections Board of Prison Terms Parole Consideration Hear-
ing for Herbert William Mullin at Mule Creek State Prison.

Both of these pages were presented to the CDCR- Board of Parole Hear-
ings prior to, and at the Parole Consideration Hearing of March 22, 2006.
Both were included with the following Title 15 information.

    Title 15,  Article 5
    # 2281 -  Determination of Suitability
    (d)    -  Circumstances Tending to Show Suitability
    (4.)   -  Motivation for the Crime -
                The prisoner committed his crimes as the result
                of significant stress in his life; especially
                because the stress had built over a long period
                of time.

The two pages were only two of approx. one dozen pages which discribed
and explained the motivation aspect and the stress aspect and the length
of time aspect of the crime spree rationale.

The above cited Title 15, Article 5, # 2281, (d), (4), indicates
that my discriptions and explanations should be concidered by the Board
of Parole Hearings as "CIRCUMSTANCES TENDING TO SHOW SUITABILITY".

The 'hostile' lines of questioning by the board members, as well as
the 'hostile language' in the Parole Denial Decision, do not in any way
indicate that the Board of Parole Hearings understands this "CIRCUMSTANCE
TENDING TO SHOW SUITABILITY". That is unfair & prejudicial.

Concerning the two pages which are included as exhibits. I tried
to have these placed in my Central File but was not allowed to do so.
They express 'true sorrow & true remorse' on my part for the commission
of the crimes. I have expressed true sorrow & true remorse ever since
I began to rid myself of the 'mental illness' that caused the crime spree.
I truthfully am sorry for the victims & their families. Honest, every
day I pray & hope that the God of America will guide & protect & improve
them as best He can.

    I believe the Judges of the various Courts involved have the
power to rectify the numerous legal problems this case presents to them.
They could, or any one of them could, appoint a 'Public Defender' to
assist Herbert William Mullin in bring ex all the legal problems into
the light of day. I hope that that will happen.

    Furthermore, I request that the 'Five Year Denial' Decision
of the CDCR- Board of Parole Hearings of March 22, 2006, be overturned
and/or vacated. I request that a new CDCR- Board of Parole Hearings be
convened to adjudicate the Petition of Herbert William Mullin that he
be 'PAROLED' as soon as is possible, i.e., RUAPP = Release Upon Approval
of Parole Plans.

                                        *H. W. Mullin*
                                        Herbert William Mullin

6/15/2006
DATED

28

Herbert William Mullin
Political Prisoner
January 2nd, 2002
Wednesday

First of all, I want to express true sorrow & true remorse for my part in the crime spree that occurred between October 13th, 1972, and February 13th, 1973. It was a four month period of time. I am honestly sorry and remorsefull each & every day. I hope that God will guide and protect and improve the victims. God Bless America !

Secondly, I am still wondering why the police & sheriff authorities, as well as the california prison authorities, as well as the families of the victims, are not prosecuting &/or critisizing my family & former friends for causing me to committ that 'four month crime spree'.

As it was explained to me, through the Socratic Teaching Method, I was forced into a soccio-psychological state of 'immaturity', with alot of 'naievity' & 'gullibility' side effects, by my family & friends, as well as the various schools & church organizations. From that state of soccio-psychological immaturity, I was further driven into the psychological state of 'undifferentiated schitzophrenia', wherein I remained for some four years; i.e., 1969, 1970, 1971, & 1972.
Then in the late summer &/or early autumn of 1972, I was forced into a soccio-psychological state of 'paranoid schitzophrenia', at which point in time the 'four month crime spree' began to take place; i.e., from Oct. 13th, 1972, until Feb. 13th, 1973.
I believe it could be proved that my family and friends knew that I was being deprived of normal & natural mental health by the other members of my family and friends. It was a ~~ktt~~ group effort on all their parts. I believe it could be further proven that my family and friends knew when each one of the crimes took place, also that they did nothing to stop me from committing the next crime, nor did they notify the police authorities or the sheriff authorities. Why are they not prosecuted &/or critisized for that violation of our California Penal Code???

As of this writting, one Psychiatrist & two Psychologists, and one Counsellor, have agreed with me that my discription & explanation is true and accurate. I was the victim of a 'kill-joy sadistic witchcraft' plot that resulted in the 'four month crime spree'. My family and friends are more ~~gttt~~ guilty and responsible for the crimes than I am. My family and friends chose as adults to place me into the 'immature soccio-psychological' state. They knew what they were doing! I did not learn how to think about these problems until after my arrest. Only after being questioned for hundreds of hours did the truth about what had happened become evident to me. My family and friends are guilty of pre-mediated 2nd degree murder, at the very least.

I have been in the California Department of Corrections for some 28 years and 9 months, approximately. During that time, with the help & assistance of many good and kind Psychiatrists & Psychologists, as well as Counsellors and Correctional Officers, I have overcome my mental illness. I now concider myself to be sane & healthy. I am very greatful for the guideance and teachings and blessings of all those nice and wonderful people. Good mental health is a wonderful experience. Honest, I am rehabilitated and re-educated.

Again, I apologize for my part in the 'four month crime spree'. I am truthfully sorry and remorsefull each and every day.

*Herbert William Mullin —*
*1/2/2002*

Herbert William Mullin
January 9th, 2002
Wednesday

"Response & Statement"

On December 27th, 2001, a Thursday, I met with the California Department of Corrections, Board of Prison Terms. I was requesting that the BPT grant me a parole from prison.

My name is Herbert William Mullin. I was born on April 18th, 1947. I have been in California State Prison for the past 28 years and eleven months, approximately. I graduated from the San Lorenzo Valley High School in Felton, California, in June of 1965. I graduated from the Cabrillo College in June of 1967 with an Associate of Science Degree with approximately 66½ units of college credit.

While in High School I worked part-time after school at Johnnies Supermarket in Boulder Creek during 1962 & 1963 & 1964. I also worked there full-time during the summers.

While at Cabrillo College I worked part-time at various Gasoline Service Stations in Santa Cruz during the school year & as an Engineering Aid for the Santa Cruz County Department of Public Works during the summers of 1966 & 1967.

I am truthfully very sorry for my part in the crime spree that took place between October 13th, 1972, and February 13th, 1973. I show true remorse in my daily prayer life. I hope that God will guide and protect and improve the victims. 85% of the American People believe in life after death. I certainly do. I hope that God will guide and protect and improve the victims. God Bless America !

Those of you interested in my side of the story could probably get a xerox copy of my handwritten defense exhibits from the original trial at Santa Cruz in the summer of 1973. Superior Court # 50219 Trial #. My testimony was/is in Volumne # 6 of the Trial Transcripts. I hope that the Santa Cruz County & the Santa Clara County Police & Sheriff & District Attorney Offices will begin to criticize &/or prosecute my family and former friends for causing me to comitt that four month crime spree. If the District Attorney's Offices of Santa Cruz County and Santa Clara County were to keep an eye on my family and former friends, they would probably find them guilty of more than just causing me to comitt those crimes some 29 years ago.

I was the victim of a 'kill-joy sadistic witchcraft plot' that resulted in the 'four month crime spree'. My family and former friends are guilty of pre-meditated 2nd degree murder, at the very least.

I have been in Prison for 29 years, approximately. During that time with the help & assistance of many good and kind Psychiatrists and Psychologists, as well as Correctional Counsellors and Correctional Officers, I have overcome my mental illness. I now consider myself to be sane and healthy. I am very greatfull for the guidance and teachings and blessings of all those nice and wonderful people. Good mental health is a wonderful experience. Honest, I am renabilitated and re-educated.

Again, I apologize for my part in the 'four month crime spree'. I am truthfully sorry and remorsefull each and every day.

*H.W. Mullin* —
Herbert William Mullin
Wednesday, January 9th, 2002

30.

The following Bibliography was presented to the Parole Considera-
tion Hearing panel on March 22, 2006. They did not acknowledge it
being there near the top page of the 'two folders' presented to them
before the hearing began. Nor did they question me about this Bibli-
ography during the actual hearing. This is a definite indication that
they were being 'unfair & biased', as well as 'prejudicial' in a neg-
ative sence.

### Social-Ecconomic-EXXX Political Bibliography

#1.  Dr. C. Everet Koop, M.D. :  Surgeon General of the U.S.A. From
     circa 1993 until and through to 2001.
        'Koop's Official Report of the Surgeon General concerning
        the psycho-social impact of T.V. Violence on America's
        Criminal Justice System.
#2.  "PRE-MEDICATED MURDER"   by  Leeland Cooley
#3.  "Corridors of Power"   by  C. P. Snow
#4.  "The Culture of Violence"   by  Francis Barker
#5.  "What Uncle Sam Really Wants"  by  Naom Chomsky
#6.  "Secrets, Lies, and Democracy"  by  Naom Chomsky
#7.  "The Art of Selfishness"  by  David Seabury
#8.  "The Gentle Art of Verbal Self-Defense"
                by  Suzette Hayden Elgin
#9.  "The Official Report of The President of The United States of
     America on Violence in America", circa years 1993 - 1997.

---

If the Parole Consideration Hearing panel on March 22, 2006,
would have questioned me & my Public Defender about this Bibliogra-
phy, and it's pertinence to 'suitability', then My Public Defender
and I could have pointed to Title 15, Article 5, # 2281, # (d)
which pertains to "CIRCUMSTANCES TENDING TO SHOW SUITABILITY".
# 2281, # (d) ....# 4.) MOTIVATION FOR THE CRIME.

"The prisoner committed his crimes as the result of significant
stress in his life; especially because the stress  had built over a
long period of time."

        Also, # 2281, # (d), ....#5.) AGE.
    "The prisoner's present age reduces the probability of recidivism."
    The prisoner was 25 years old at the time of the crime.
    The prisoner was approx. 59 years old at the Parole Hearing.

6/22/2006                           HERBERT W. Mullin

31.

From my point of view, my present discriptions & explanations concerning 'the 13 murder crime spree', came from the "QUESTION AND ANSWER" Syndrome that ensued from the arrest on February 13, 1973, through to the conviction at the Santa Cruz County trial # 50219.

Who did I talk with after the February 13, 1973, arrest ?

#1.  Richard Pease ......... Defense Attorney
#2.  James Jackson ......... Public Defender, Defense Attorney
#3.  Fred W. Tempe, Jr. .... Psychiatrist, M.D.
#4.  Charles Morris ........ Psychiatrist, M.D.
#5.  Donald Lunde .......... Psychologist, Ph.D.
#6.  John Peschou .......... Psychiatrist, M.D.
#7.  John J. O'Connor ...... Catholic Priest, B.A.

What did we talk about during the "QUESTION AND ANSWER SYNDROME" ?

#1.  Kill-joy Saddism
#2.  Patrimonious Condescending Paternalism
#3.  'Bi-sexual people with inferiority complexes were/are sabbataging my efforts to reach maturity &/or good mental health'
#4.  Conspiracy of Silence
     Feigned Ignorance
     Implications
#5.  Passive-Aggressiveness
     Approach-Avoidance Syndrome
#6.  Psychological Saddism
     Kill-joy Saddism
#7.  Immaturity
     Naievity
     Gullibility

The above mentioned people always had tape-recorders with them when they were questioning me. (February through July of 1973).

Where are those tapes now ?

6/22/2006
(dated)

H. W. Mullin
(Herbert William Mullin)

32.

Herbert William Mullin
# B-51410
Rm.# 8-249 up
Mule Creek State Prison
February 8th, 2005

To the California Department of Corrections
Board of Prison Terms
Mule Creek State Prison Mental Health Department
Mule Creek State Prison Unit Classification Hearing Pannel-3 Facility
Mule Creek State Prison Peace Officer's Association

Dear Ladies & Gentlemen:

This letter is my attempt to pursuade you that I am actively involved in trying to receive a RUaPP-Release Upon Approval of Parole Plans from the C.D.C. Board of Prison Terms at my forthcoming Parole Concideration Hearing in December of 2005.

At my last B.P.T. Hearing my 'Life-Term Mental Health Evaluation' was prepared by a 'contract' psychologist named Dr. Dee Shafer, Ph.D. Her interview took place on 7/26/2001, in preparation for the December 2001 B.P.T. Parole Concideration Hearing.  Her report, on page # 4, indicated the 'Diagnostic Impressions (DSM IV)'

Axis # I.    292.12   Hallucinogen-Induced Psychotic Disorder
             305.90   Ploysubstance Abuse by History
Axis # II    301.9    Personality Disorder NOS with Antisocial Features
Axis # III   -        None known
Axis # IV    -        Incarceration
Axis # V     -        Global Assessment of Functioning (GaF) = 65

In an effort to show that 'Substance Abuse History cannot be used to deny me my parole', I discovered the following information in the Mule Creek State Prison Law Library.
**  ADA- Americans with Disabilities Act : ADA, 42 U.S.C. # 12102 (2)(B.C.) (1994) sought prospective injunctive relief against the Calif. Board of Prison Terms, alleging the BPT followed an unwritten policy of automatically denying parole to lifers who had substance abuse histories.
Such history amounts to a disability under ADA; and the BPT parole proceedings, including substantive decision making processes, constitute an 'activity of a public entity' protected through the ADA.
The 9th Circuit Court of Appeals (U.S.A.) acknowledged
# 1.) Drug addiction is a recognized disability under ADA
# 2.) People who have successfully completed a Drug/Alcohol Rehabilitation Program remain protected through the ADA.
This is found under the ADA's Title II protection clauses.
Since 42 U.S.C. # 12132 guarantees disabled persons equal benefits to a public entity, the 9th Circuit U.S.A. Court of Appeals held that State Parole Boards fall squarely within the statutory definition of 'public entity', citing Pennsylvania Department of Corrections versus Yeskey, 524 US 206 (1998); and Thompson versus Davis, 295 F.3rd-890, 9th Circuit U.S.A. Court of Appeals (2002)yielding the ADA, Title II protection.

ADA, Title II, prohibits a public entity from discriminating against a qualified individual with a disability on the basis of that disability.  Four elements pertain certain MAXI :
# 1) the plaintiff is an individual with a disability
# 2 ) the plaintiff is otherwise qualified to participate in or receive

33.

February 8th, 2005                                               page # 2

the benefits of some public entities services, programs, or activities.
# 3)  the plaintiff was either excluded from participation in, or
      denied the benefits of, the public entities sevices, programs,
      or activities, or was otherwise discriminated against by the
      public entity.
# 4)  such exclusion, denial of benefits, or discrimination was by
      reason of the plaintiff's disability.
      cite: No. 01-15091
      D.C. No. CV-96-00287-GEB (GGH)
      U.S.Court of Appeals for the 9th Circuit (March 8th, 2002)

     Therefore we see that the State Prisoner's Parole Proceedings
are not excluded from the ADA-American's with Disabilities Act.
Futhermore, the ADA Title II protection clauses pertain.             **

          As I stated in the begining of this letter, I am trying to prove
that I am actively involved in trying to receive a RUAPP - Release
Upon Approval of Parole Plans at my forthcoming December 2005 Board
of Prison Terms Parole Concideration Hearing.  I hope that this letter
and the research matterial herein included shows to the various author-
ities involved that I am covering an important aspect of my defense.
'Substance Abuse History' should not be used to deny me my parole.
The U.S.A. 9th Circuit Court of Appeals has strengthened the protection
granted by the ADA - Americans with Disabilities Act, Title II.

     My Central File shows that I have been actively involved in
the Mule Creek State Prison Narcotics Anonymous Group, and the Mule
Creek State Prison Alcoholics Anonymous Group.  I have received very
good participation chronos for my involvement & effort & contributions.
I began my paricipation here at M.C.S.P. in 1996 with the Narcotic
Anonymous group.  I stayed with them them for seven years.  I have
been with the Alcoholics Anonymous Group for the past two years
and am getting good participation chrons.

     I believe that I have show without a doubt that I am a rehabili-
tated & re-educated person.  I believe I deserve a 2nd Chance at
living in the Free Society of the State of California, Santa Cruz
Conty.  I would be a benefit to society in that I would be working
and paying taxes.  I would be continuing to attend A.A. group meetings
and sharing my strength, hope, and experience with others in an effort
to keep alcoholism & drug addiction & criminal behavior from happening
in our communities.

     I hope that you will give me the chance to be free.  I hope
that the Board of Prison Terms will grant me a RUAPP.

                                        With kind regards,

                                        HERB Mullin

     2/8/2005                           Herbert William Mullin
      (dated)

34.

Herbert W. Mullin
# B-51410
M.C.S.P. Rm# B-249 up
February 22nd, 2005

To the California Department of Corrections
        Board of Prison Terms:

    In an effort to show my suitability for parole I have researched
the following information from the M.C.S.P. B-Facility Law Library.  I
believe it shows that I am entitled to a greater degree of consideration
for parole.  Incidently, I have been actively involved in Narcotics Anon-
ymous and Alcoholics Anonymous were at M.C.S.P.  6½ years with N.A (from
the middle of 1996 through 2002), and 2½ years with A.A. (from January of
2003 through to the present 2/22/2005).  My Central File records show that
I have consistently received good participation credits in these programs.

"SUBSTANCE ABUSE HISTORY CANNOT BE USED TO DENY PAROLE"

    ADA = Americans with Disabilities Act
ADA, 42 U.S.C. # 12102(2)(B.C.)(1994) seeks prospective injunctive relief
against the California Board of Prison Terms (BPT) alleging the BPT follow-
ed an unwritten policy of automatically denying parole to lifers who had
substance abuse histories.
    Such history amounts to a disability under ADA; and the BPT Parole
proceedings, including the substantive decision making process, constitute
an "activity of a public entity" protected through ADA.
    The 9th Circuit Court of Appeals (USA # 9th Circuit Court of Appeals)
acknowledged that # 1.) Drug Addiction is a recognized disability under
the ADA, and # 2.) that people who have successfully completed a drug &/or
alcohol rehabilitation program, remain protected through the ADA; re: the
ADA's Title II protection clauses.
    Since 42 U.S.C. # 12132 guarantees disabled persons equal benefits
to a public entity, the U.S.A. 9th Circuit Court of Appeals held that
State Parole Boards fall squarely within the statutory difinition of
'public entity', citing Pennsylvania Department of Corrections v. Yeskey,
524 US 206 (1998).  Furthermore, Thompson v. Davis, 295 # F. 3rd 890,
U.S.A. 9th Circuit Court of Appeals (2002), yields the ADA Title II pro-
tection.
    ADA Title II Protection, prohibits a public entity from discrimina-
ting against a qualified individual with a disability on the basis of the
disability.  Four elements pertain: # 1.) the plaintiff is an individual
with a disability  # 2.) the plaintiff is otherwise qualified to partici-
pate in or receive the benefit of some public entities services, programs,
or activities  # 3.) the plaintiff was either excluded from participation
in, or denied the benefits of, the public entities services, programs, or
activities; or XXX was otherwise discriminated against by the public entity.
# 4.) Such exclusion, denial of benefits, or discrimination was by reason of
the plaintiff's disability.   Cite No. 01-15091   D.C. No. CV-98-00297-
GEB (GGH) , U.S.A. 9th Circuit Court of Appeals on March 8th, 2002
State Prisoner's Parole Proceedings are not excluded from the ADA-Americans
with Disabilities Act (1994).

    I believe I deserve a RUAPP- Release Upon Approval of Parole Plans.

2/22/2005                                  H W Mullin
    (Dated)                                Herbert W. Mullin

                                           135.

Herbert William Mullin
C.D.C. # B-51410
Rm.# 8-249 up  @ M.C.S.P.
February 24th, 2005
Thursday

"PSYCHOLOGICAL SELF DEFENSE"

HWM's former family, former friends, former schools, and former churches, etc, knew that HWM was immature and naieve and gullible.  They kept him that way; they had made him that way; they knew what they were doing.

HWM did not know that they were doing that to him.

They knew they were doing that to him.

HWM was praying and hoping that they would receive good health and good wealth blessings from God.

They were praying and hoping that HWM would remain immature, naieve, and gullible, et cetera.

That soccio-ecconomic-political-psychological pressure created the stage for the October 13th, 1972 through February 13th, 1973 crime spree.

Presumably my former siblings were saying to me on a sub-conscious level: "Even though we are getting over our immaturity, naievity, and gullibility; even though we are growing up; we won't share our new knowledge, our new strength, our new experiences with you."

My parents and their parents knew that this psychological crime was taking place.  This situation created an unhealthy psychological atmosphere around my life; it no doubt precipitated the crime spree.

    Another version:
1)  HWM wants to mature and grow up; he wants to reach his age of reason; he wants to get rid of naievity and gulibility.  He wants these things on an unconscious &/or sub-conscious level of his psyche.
2)  HWM's former family and former friends sabbatage his efforts, yet they continue to progress.
3)  HWM, at age 22, in 1969 (March), is placed into Mendocino State Mental Hospital by his former family and late-rape, acquaintance-rape Catholic Priest with the resulting diagnosis of 'undifferntiated schitzophrenia'.
4)  The crime spree takes place between Oct. 13, 1972 through Feb. 13, 1973.  HWM had been pushed into a psychological state of 'paranoid schitzophrenia'.

    A good Defense Psychiatrist, testifying in behalf of HWM, could prove that HWM was 'NOT GUILTY BY REASON OF INSANITY' at the time of the crimes.  HWM was the victim of kill-joy saddistic soccio-ecconomic-political-psychological sabbatage.

    I am truthfully sorrowful and remorseful every day for my part in the horrible crime spree.  I pray that God will guide & parotect & reward the victims appropriately.

_H W Mullin_ ———

Herbert William Mullin

_2/24/2005_
    (dated)

136.

Herbert William Mullin
C.D.C. # B-51410
Rm.# 3-249 up @ M.C.S.P.

" PSYCHOLOGICAL SELF DEFENSE "

March 3rd, 2005
Thursday

Concerning friendship & the crime spree:

The former friends I did have also sabbataged my maturation progress because they were paranoid about the soccio-ecconomic-political struggle that was occuring between them and my family. I was in the middle of their hate for one another. I did not know it. They did know it. The crime spree is a result of that negative psychological pressure.

Concerning the Soccio-Ecconomic-Political Struggle:

My former family and former friends had declared Psychological war upon me without my knowledge. Their psychological warfare tactics included their attempts at keeping me immature, naeive, and gullible. They did not teach me about such phenomena as #1) the Pecking Order #2) the life & death of the ego   #3) one-upmanship   #4) ego-bashing #5) extrovert vs. introvert balancing  #6) mine's better than yours (etc.).
It takes years & years of practice & guidance & blessings from the family unit to teach the young person the way to maturity & mental health.
My former family, and my former friends and their families, were deliberately sabbataging my efforts at achieving maturity & mental health. They knew what they were doing. I did not know that it was happening.
When the 13-murder crime spree took place, between October 13th, 1972, and February 13th, 1973, my former family and former friends & their families knew when each crime individually took place, yet not one of them notified the police, or the sheriff, or in any way tried to stop me from continuing along that insane progressing crime spree. That is a crime in itself, yet the authorities have never emphasized my former familie's culpability, not the culpability of my former friends & their families.
Here is a list of the schools & churches I belonged to at that time:
1. St. Stephen's Grammar School & Catholic Church; San Francisco, Calif.
2. Riordan High School; Catholic Church; San Francisco, Calif.
3. San Lorenzo Valley High School; Felton, California (Santa Cruz County).
4. St. John's Catholic Church; Felton, California 95013 zip.
5. Cabrillo Junior College; Aptos, California (Santa Cruz County).
A good Defense Psychiatrist testifying on my behalf and in my defense could describe and explain what happens to the victim of kill-joy sadistic soccio-ecconomic-political-psychological sabbatage. That Defense Psychiatrist could prove that I was 'NOT GUILTY BY REASON OF INSANITY' at the time of the crimes.

Concerning my own maturity:

I was arrested on February 13th, 1973. I have been in prison ever since. That is some 32 years behing bars. I am going to be 58 years old on April 18th, 2005. I achieved my maturity while in prison. The lessons I have learned about maturity, naievity, and gullibility have come to me during the years that I struggled to re-achieve my own mental health. I have not associated with my former family since the summer of 1976, some 23 years ago.

3/3/2005
(dated)

H. W. Mullin —
Herbert William Mullin

137

From Herbert William Mullin
    # B-51410 // Rm. B-249
    Mule Creek State Prison

Date: December 26th, 2001
        Wednesday

In response to the letter from Chief Psychiatrist Vance Nerum, M.D.
dated 12/24/2001, with reference to the Board of Prison Terms' Life-
Term Mental Health Evaluation for the Calendar Year of 2001, written
by Dr. Dee Shafer, Ph.D., Contract Psychologist, Psy 7540.

    I did visit the MCSP B-Mental Health Office on 12/24/2001 & I did
review the DSM-IV book under the supervision of Correctional Officer
Clevenstine.  I kept my review pertinent to the sections noted by
Dr. Dee Shafer on page # 4 of above mentioned 'Evaluation'; i.e. the
Diagnostic Impressions (DSM-IV).
    I read the Axis I, 292.12- Hallucinogen-Induced Psychotic Disorder,
as well as the Axis I, 305.90- Polysubstance Abuse by History, sections.
These sections probably pertain to the way I was during the 4 or 5 years
before the commission of the four month crime spree.  I specifically noted
one section that indicated, "Diagnosis of Substance Abuse is more likely
in individuals who have only recently started taking the substance."  That
was the case at the time of the crime and in the years just previous.  It
also indicates that I was not an experienced drug user, nor that I had
been very active as a drug user numerically.  I also noted that I only
manifested inappropriate behavior in the listed categories of poor work
performance & a few arrests on my arrest record; I note that these occur-
rences pertain to behavior that took place some 29 through 30 years ago.
The pages I focused on re: Axis I were pages 192 & 271.
    I read the Axis II, 301.7- Personality Disorder NOS with Antisocial
Features, section.  There were five pages to refer to; i.e., pages 629,
633, 645, 649, & 675.  Again I felt that this section also pertained to
my condition at the time of the crimes and the 4 or 5 years just previous
to the four month crime spree.  One paragraph stood out from all the others
that I had read in these Axis II diagnosis.  I quote: "An enduring pattern
of inner experience and behavior that deviates markedly from the expecta-
tions of the individual's culture.  (Manifested in two or more areas).
1) cognition; ways of perceiving and interpreting self, other people,
    and events.
2) affectivity; the range, intensity, lability, and appropriateness of
    the emotional response.
3) interpersonal functioning.
4) impulse control   ................................"

    In response to this diagnosis I must say that you, before the crimes
I was experiencing abnormal social, economic, and psychological events
in my life.  I do believe that I have overcome the mental illness that
caused the abnormal experiences to occur.  I also believe what I have
rehabilitated myself and re-educated myself socially, economically,
and politically, as well as psychologically, to the extent that now I am
a healthy and well-functioning individual.

    I read part of the section in the DSM-IV pertaining to 'Global
Assessment of Functioning (GAF).  The rating of overall psychological
functioning, on a scale of,) 0-100 (, was opperationalized by Dr. Lutorsky
in the Health-Sickness Rating Scale, in the year 1962.  Dr. Spitzer and
his colleagues developed a revision of the HSRS called the Global Assess-
ment Scale.  A modified version of the GAS was included in the DSM-III-R
and was known as the GAF Scale, our present Global Assessment of Function-
ing Scale.

38.

At this point in time I must say that I disagree with Dr. Dee Shafer's assessment of my GAF. I read over all the matterial in the pertinent sections pertaining to the GAF and based upon what I know about myself and the world I live in, I would say that I deserve a GAF of '78'. I quote the book: "If symptoms are present, they are transient and expectable reactions to the psychosocial stressors; no more than slight impairment in social, occupational, or school functioning."

A GAF of '78' seems much more appropriate from my point of view.

Concerning Dr. Shafer's comments in the 'Assessment of Dangerousness' section of her 'Evaluation':

I believe I am eficient and effective as a worker. I have proved this in my work performance record. I believe I am conscientious and dependable as a member of my present Narcotics Anonymous Group. There are many NA Groups that meet throughout the Santa Cruz County Area on several different days each week. I am certain that if I were to 'Parole', I would be accepted as a guest speaker at any of theose weekly meetings, and that I would become a member in good standing at my own neighborhood Narcotic Anonymous Group. I have no doubt about this.

I do not believe I am a danger to society. I have learned the lessons that life has to teach while in California Department of Corrections for the past 28½ years approximately. I have proved beyond a shaddow of a doubt that I am capable of living a law abiding life in the free society of Santa Cruz County. I would be a worthwhile citizen, teaching others that breaking the law is wrong, and obeying the law is right. I would get involved in whatever programs are available so that I could help others stay away from a life of crime-prison &/or drug abuse. I am possitive that I could make a living, one that would show that I am an educated and culturaly sensitive person.

Lastly, I want to appologise for my part in the commission of the crimes. I trully am sorry & remorseful every day. I hope that God will guide, protect, and improve the victims. I hope that I can be forgiven and that I can have a 2nd chance at living free in SantaCruz County.

Respectfully

*H W Mullin*

Herbert William Mullin
December 28th, 2001

139.

## H. W. Mullin Responds

Concerning the 'Board of Prison Terms Life-Term Mental Health Evaluation for the Calendar Year 2001, by Dr. Dee Shafer, Ph.D., dated 7/26/01 _____

I received this report from my CC II Counselor on 10/30/01 _____
This response was composed on 11/5/01 .

With regards to page # 4, 'Review of Life Crime' _____
    Concerning Dr. Shafer's statement: "He was unable to offer any insight into the emotional impact of this realization.'
    It has been some 101 days scince the 7/26/01 interview with Dr. Shafer, and 28 years and 7 months scince the 'realization' in question.  I believe now that I must have been then in a non-verbal psycho-emotional state of disappointment as well as confusion.  That was the emotional impact then in the spring-summer of 1973.

    Concerning Dr. Shafer's statement: "Although he stated he was remorseful, there was no affective response as he talked about his history."
    Although it has been 101 days scince the 7/26/01 interview, I think that my 'affective response' was appropriate and imbued with the proper sentiments of sorrow and reworse.  I do not talk to anyone about my psychological history as per Life-Crime Convictions (etc.).  I last spoke to a Psychologist about this in 1996 when preparing for the 1996 Parole Consideration Hearing of 1996.  Maybe the fact that the historical events of these crimes is not a/or has not been a part of my thoughts or talk, accounts for Dr. Shafer's observation, i.e., "there was no affective response."

    I want to take this time to express again my true remorse and true sorrow for the commission of the crimes.  I express sorrow and remorse honestly and truthfully in my daily prayer life.

_HERBERT Wm. Mullin_ ___

Herbert William Mullin
# B-51410
Mule Creek State Prison
4001 Hywy. # 104
Ione, California  95640

⌐40.

EXHIBIT # _____

        This exhibit is included so that the Court to which I am appealing
will see that I believe it has the necessary power to make a decision
in my behalf with reference to this Petition for Appointment of Competent
Legal Counsel, &/or Petition for Writ of Habeas Corpus, &/or Petition
for Writ of Mandamus, &/or Reinstatement of the Appeal re: Santa Cruz
County case # 50219, and Santa Clara County case # 56702, (both of which
occurred during the year 1973).


California Penal Code # 1181

Paragraph # 6.      When the verdict or finding is contrary to Law or
evidence, but if the evidence shows the defendant to be not guilty of
the degree of the crime of which he was convicted, but of a lesser degree
therof, or of a lesser crime included therin, the Court may modify the
verdict, finding, or judgment accordingly, without granting or ordering a
new trial, and this power shall extend to any Court to which the cause
may be appealed.


        Again I want to emphasize, I have never been allowed to appeal the
original convictions with the aid of legal counsel.  I have been in
the California Department of Corrections for 31½ years (approx.).

        Now is the time for the Court to act in my behalf.


/41.

Herbert William Mullin
Mule Creek State Prison
# B-51410  ③  Rm.# 8-249up
4001 Highway # 104
P.O. Box # 409040
Ione, California 95640

May 20th, 2005    Friday

## PAROLE PLANS

Contact the Santa Cruz Parole Unit
Address:  8030 Soquel Ave. #102
          Santa Cruz, CA 94103

Contact the Camp Recovery Center re: Residential Opportunity
Address:  3192 Glen Canyon Rd.
          Scotts Valley, CA 95066

Contact the Santa Cruz County One Stop Center re: Employment Opportunities
Address:  1040 Emiline St.
          Santa Cruz, CA 95060

I am a graduate of San Lorenzo Valley High School, Class of 1965.
I am a graduate of Cabrillo Junior College, Class of 1967.
I worked for Johnnies Super Market in Boulder Creek during 1962, '63, & 64.
I worked for Hoot Cress's Shell Gasoline Station during 1964.(Boulder Creek)
I worked for the Santa Cruz County Department of Public Works, '66 & '67.
I worked for the Santa Cruz County Goodwill Industries Organization during
    1969 & 1970 & 1971.
I have an Associate of Science Degree from Cabrillo College in Civil High-
    way Technology &/or Construction Technology.
I have work experience in
    a.) Grocery Store Clerk
    b.) Gasoline Station Attendant
    c.) Engineering Aid I; Department of Public Works
    d.) Manager of Retail Store; Goodwill Industries Retail Store
    e.) Vocational Bakery- Prison One Year Certificat of Completion
    f.) Vocational Landscape & Gardening- Prison One Year Certificate of
        Completion, with four years experience
    g.) Vocational Mill & Cabinetry - One Year Prison Certificate of
        Completion, with two additional years of experience
    h.) Janatorial Maintenance - 5 years experience

My name is Herbert William Mullin.
I was born on April 18th, 1947.
I am 58 years old as of April 18th, 2005.
I am ¼ irish, ¼ english, and ¼ norse scandanavian in ancestry.
Boulder Creek, California, is my Home Town.  It is the 'Gateway to Big Basin'
    I am an honest, hard-working individual.  I believe in the American
Way of Life.  I believe in Capitalism & the Democratic Republican form of
Government.  I Pledge Alliance to the Republic of the United States of
America.  I promise to be a hard-working, tax paying, worthwhile citizen.
I will obey the Laws of the U.S.A., California, and Santa Cruz County.
I hope that I can be 'Paroled' &/or 'Released' from Prison as soon as is
possible.  I look forward to living my life as a free & respectible citizen
in my old hometown of Boulder Creek.

                                    Thank You.

5/20/2005
  Date

                                    H.W.Mullin

                                              142.

Herbert William Mullin
C.D.C.# B-51410
July 15th, 2004

This is a book report in synopsis format. It is designed to show that there is a element of truth relevant to my own personal incarceration.

The name of the book is .....  "WHERE I WAS FROM"
The author's name is Ms. Joan Didion
Publisher's are 'Alfred Knoff'
Published during the summer of 2003 (approx)

The message of the book was that the Legal Court System & the C.D.C. Psychological Departments & The C.D.C. Administrations deliberately make some convicts look more guilty than the convicts actualy are.

Because of that, some convicts do more time in prison than they should.

Some convicts are made to appear mentally ill in psychological reports when in fact they are mentally healthy.

This persecutory situation exists because of social & ecconomic & political pressure. The California Peace Officer's Association was cited in the book as being the main instigator.

That in synopsis format is the message of the book entitled "WHERE I WAS FROM"  by Ms. Joan Didion.


How does this pertain to me ?

The question & answer methods used by the various Psychological Authorities &/or Administrative Authorities are often times designed to ellicit answers from me that indicate I was guilty &/or not ready for parole. Whereas, if the authorities had asked questions designed to ellicit answers that idicate mitigation &/or lesser degree of culpability, then their conclusions as to suitability for parole would be based on a series of positive questions & answers.

In other words, a series of positive questions & answers leads to a positive conclusion.

I was convicted & sentenced in 1973 under the 1973 Law. I am supposed to meet with the Adult Authority to discuss 'Parole Consideration' once every year according to 1973 Law. That 'Right' of mine is 'Guaranteed' to me by the Constitution of the United States of America, and by the Constitution of the State of California, i.e., Ex Post Facto Protection. Because of the current illegal 5 year denial process that the Board of Prison Terms uses when meeting with me, my ability to try to prove my suitability for parole is devastated. "WHERE I WAS FROM" addresses this very problem within it's pages.

I know that this is a touchie subject. In effect I am caught between a rock & a hard place. On the one hand I am very very greatful for being allowed to achieve good mental health. On the other hand I can see that the C.D.C. Psychological & Administrative Authorities are not doing what should be done so that I can be let free.

This letter is designed to let the Authorities know that I really do believe I am a good & healthy & sane man. I deserve to be set free. I am trully sorry for my part in the commission of the crimes. I show true sorrow & true remorse in my daily prayer life.

143

# CONTENTS OF "TWO FOLDERS"

By ignoring these RESEARCH papers, the PAROLE Consideration panel Avoided concidering circumstances Tending To show suitability For PAROLE ———.

1. NATURAL Science Thesis concerning the MEANDERS of the Rivers, STREAMS, and CREEKS of North, Central, and South, America ———. 3 PAGES — 660 words ——.

2. NATURAL Science OBSERVATIONS & RESEARCH RE: MARS PLANET, STAR VEGA, and STAR Altair - Aquila Alpha —— with REFERENCE To DR. Albert Einstein, J. Kepler, And T. BRAHE, and G. Galilei, and Sir Issac Newton — 5 pages — 1110 words ——.

3. Ten PAPERS on various THEORETICAL physics Topics pertaining To the principles of Relativity & Albert Einstein. Eleven (11) pages —— 4000 words ——.

4. Biographical Synopsis ——
   a) Plato — 2 pages — 500 words
   b) Sophocles — 1 page — 150 words
   c) Aeschylus — ½ page — 99 words

"Contents of Two Folders"

(con't)    d) Euripides — ½ page — 101 words
    e) CHORUS — Discription/explanation — 99 words
    f) THALES — ½ page — 99 words —
    g) ANAXAMANDER — ½ page — 91 words —
    h) ANAXAGORAS — ½ page — 91 words —
    i) Diogenes — ½ page — 95 words —
    j) Plotinus & Neo-platonism —
                              1 page — 220 words
    k) Ronald Laing — 2 pages — 330 words
    l) Carl Gustav Jung — 2 pages — 330 words
    m) John Dewey — ½ page — 91 words
    n) C. S. Peirce — 1 page — 150 words
    o) William James — ½ page — 101 words


5.  Written Definitions of Psychological
    Terms From Webster's 3rd Collegiate
    Dictionary ——
    a) Individuation
    b) individualize
    c) individuality
    d) Individualism
    e) individual
    f) Ego ; Egoism
    g) Altruism
    h) pathos ; sympathy ; empathy —

                                145.

con't)    i) id ; superego ; psyche ___.
         j) PRIOR RESTRAINT = legal term (Applicable)

6. Handwritten Pledge of Allegiance ___
      2/20/2006 ___ 2/28/2006 ___ 3/2/2006 ___
      3/9/2006 ___ 3/16/2006 ___ .
      [FIVE IN ALL] ___ ,
   WRITTEN and signed by H. W. Mullin ___

7. 29 CARBON copies of letters, WRITTEN or
   RECEIVED, concerning H. W. Mullin
   And His Attempts At Finding Sponsors !

8. Bibliography ___
      30 SEPERATE ENTRIES ___ .

9. Questions From PEN-PALs
      Answers From Me ___ H. W. Mullin ___.
      4 pages ___ 1200 words ___ .

10. 38 "GOD BLESS America" 2"x4" cards
    34 "GOD BLESS America 3"x6" papers
       [Colorful ARTWORK productions]

                                      146.

8. Did you appeal from the conviction, sentence, or commitment?    ☐ Yes. ☒ No.    If yes, give the following information:

  a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

    Not Applicable

  b. Result:   Not Applicable                              c. Date of decision:   Not Applicable

  d. Case number or citation of opinion, if known:      Not Applicable

  e. Issues raised:   (1)      Not Applicable

      (2)      Not Applicable

      (3)      Not Applicable

  f. Were you represented by counsel on appeal?  ☐ Yes. ☒ No.  If yes, state the attorney's name and address, if known:
    Not Applicable

9. Did you seek review in the California Supreme Court?    ☐ Yes. ☒ No.  If yes, give the following information:

  a. Result:   Not Applicable                          b. Date of decision:   Not Applicable

  c. Case number or citation of opinion, if known:      Not Applicable

  d. Issues raised:   (1)      Not Applicable

      (2)      Not Applicable

      (3)      Not Applicable

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    Not Applicable

11. Administrative Review:

  a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

    Not Applicable

  b. Did you seek the highest level of administrative review available?    ☐ Yes. ☒ No.   Not Applicable.
    *Attach documents that show you have exhausted your administrative remedies.*

47.

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  [×] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1)  Name of court:  _Please see the attached page, re: # 13._ _____

    (2)  Nature of proceeding (for example, "habeas corpus petition"): _____

    (3)  Issues raised:  (a) _____

        (b) _____

    (4)  Result *(Attach order or explain why unavailable):* _____

    (5)  Date of decision: _____

  b. (1)  Name of court: _____

    (2)  Nature of proceeding: _____

    (3)  Issues raised:  (a) _____

        (b) _____

    (4)  Result *(Attach order or explain why unavailable):* _____

    (5)  Date of decision: _____

  c.  *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    _Unknown._ _____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

    _Not applicable._ _____

16. Are you presently represented by counsel?  [ ] Yes.  [×] No.   If yes, state the attorney's name and address, if known:

    _No._ _____

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [×] No.  If yes, explain:

    _No._ _____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    _Not applicable._ _____

the undersigned, say:  I am the petitioner in this action.  I declare under penalty of perjury under the laws of the State of California that e foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as those matters, I believe them to be true.

ate:  _8/30/2006_ _____  ▶ _H. W. Mullin_ _____
                                      (SIGNATURE OF PETITIONER)

**PETITION FOR WRIT OF HABEAS CORPUS**

PETITION FOR WRIT OF HABEAS CORPUS
  Herbert William Mullin  versus JDCR - Board of Parole Hearings

from question sheet:  # 12.  Other than direct appeal, have you filed any o
other petitions, applications, or motions with respect to this conviction,
commitment, or issue in any court ?  If 'YES', continue with # 13.

# 13.)

# A.)  In the United States District Court, Northern District of Calif.
        Case # C-04-20082-RPA
        Nature of Proceedings:   Habeas Corpus Petition.
        Issues Raised:           Unknown
        Result:                  Unknown
        Date of Decision:        Unknown
        Please see the attached cover sheet from the Office of the Attorney
        General of California, dated approx. December 16th, 1986.

# B.)  In the Superior Court of the State of California in and for the
        County of Santa Cruz
        Case # 50219
        Nature of Proceeding:    Penal Code # 1381 - A Motion to Dismiss
                                 Outstanding Charges re: P.C. # 1381
        Issues Raised:           Bring to Trial or Dismiss Charges
        Result:                  Denied
        Date of decision:        July 20th, 1987
        Please see the attached 'Order Denying Motion to Dismiss'.

# C.)  In the Court of Appeal of the State of California in and for
        the Sixth Appellate District
        Case # H 003447
        Nature of Proceedings:   Motion to Dismiss Outstanding Charges
        Issues Raised:           Penal Code # 1381, i.e., Dismiss Charges
        Result:                  Denied
        Date of decision:        August 21st, 1987
        Please see the attached 'Denial' Court response.

# D.)  In the Supreme Court of the State of California, IN BANK
        Case # S-003072
        Nature of Proceedings:   Motion to Dismiss Outstanding Charges
        Issues Raised:           Bring to Trial, or, Dismiss Charges.
                                 Re; Penal Code # 1381
        Result:                  Denied
        Date of Decision:        December 3rd, 1987
        Please see the attached 'Denial' Court Response.

# E.)  In the United States District Court for the Northern District
        of California
        Case # C-88-20054-WAI
        Nature of Proceedings:   Calif. Penal Code # 1381 Petition
        Issues Raised:           Motion to Dismiss Outstanding Charges
        Result:                  Dismissed without Prejudice
        Date of Decision:        March 30th, 1988
        Please see the attached 'JUDGMENT' Order

149.

PETITION FOR WRIT OF HABEAS CORPUS
Herbert William Mullin  versus  CDCR - Board of Parole Hearings

(# 13.)  (continued)

# E.)   In the United States Distict Court for the Northern District
of California
Case #  C-04-3041-CRB(PR)  'ORDER OF DISMISSAL'  July 20, 2004

In the United States Court of Appeals for the Ninth Circuit
Case # 04-74592  'ORDER' of Denial.    October 29, 2004

In the Supreme Court of the United States
Case # 04-8764  'Petition for Writ of Certiorari is Denied'
Date of Decision:  April 25th, 2005

Concerning the above three Court Decisions, please see the attach-
ed Court Denial Orders &/or Dismissals; also find for explanatory
purposes, theQuestions Presented, the Constitutional and Statutory
Provisions Involved, the Statement of the Case, the Reasons for
F Granting the Petition, all of which explain the nature of the
proceedings, the issues raised, and the Petitioner's desired
outcome.

#(G.) In the United States Court of Appeals for the Ninth Circuit

/50.

COPY

1  JOHN K. VAN DE KAMP, Attorney General
      of the State of California
2  STEVE WHITE, Chief Assistant
      Attorney General
3  DANE R. GILLETTE, Supervising
      Deputy Attorney General
4  LANDRA E. ROSENTHAL
      Deputy Attorney General
5  6000 State Building
   San Francisco, California 94102
6  Telephone: (415) 557-4009

7  Attorneys for Respondent

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11 HERBERT WILLIAM MULLIN,            )    C-84-20082-RPA
                                      )
12                  Petitioner,       )
                                      )
13      v.                            )
                                      )
14 WAYNE ESTELLE,                     )
                                      )
15                  Respondent.       )
   _____)

16

17              ANSWER TO PETITION FOR
                WRIT OF HABEAS CORPUS

18      DECEMBER 16th, 1986 — APPROX.

19

20

21 Note: THE REASON FOR THIS EXHIBIT IS

22 THAT IT GIVES A complete History

23 of the STATE and Federal Appeal

24 processes that Mullin HAS Been

25 involved in As per ANy Habeas

26 Corpus proceedings —

27

PAPER
OF CALIFORNIA
(REV. 10-86)

DECLARATION OF SERVICE BY MAIL

Case Name:  Mullin v. Estelle                    No.:  C 84 20082 RPA

I declare that:

I am employed in the County of San Francisco, California.  I am
over the age of 18 years and not a party to the within entitled·
cause; my business address is 6000 State Building, San Francisco,
California  94102.

On   December 17, 1986   , I served the attached
          (Date)

          Answer to Petition for Writ of Habeas Corpus;
          Appendix to the Answer to Petition for Writ of
          Habeas Corpus; Order

in said cause, by placing a true copy thereof enclosed in a
sealed envelope with postage thereon fully prepaid, in the
United States mail at San Francisco, California, addressed
as follows:

     Herbert W. Mullin
     California Men's Colony
     B-51410, Room # 1185
     San Luis Obispo, CA   93409-0001

I declare under penalty of perjury that the foregoing is true
and correct, and that this declaration was executed at
San Francisco, California, on  December 17, 1986  .
                                    (Date)

  CARMENCITA O. MALBOG                Carmencita O. Malbog
       (Typed Name)                      (Signature)

DSM 1 - SF                                        (8/84)

152.

1
2
3
4
5
6
7
8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                  IN AND FOR THE COUNTY OF SANTA CRUZ
10   THE PEOPLE OF THE STATE OF          Case No.   50219
11   CALIFORNIA,
12                  Plaintiff,           ORDER DENYING MOTION TO DISMISS
13      vs.
14   HERBERT WILLIAM MULLIN,
15                  Defendant.
                                    /
16         On July 17, 1987, Defendant filed a motion to dismiss
17   outstanding charges in this case.   There are no outstanding
18   charges.  On March 14, 1973, Defendant was charged by indictment
19   with ten counts of murder.  On August 15, 1973, Defendant was
20   found guilty on all ten counts.  On September 18, 1973, he was
21   sentenced to state prison on all ten counts.
22         The motion to dismiss is denied.
23   Dated:  _Jul 30, 1987_
24
25
26                      _____
                        JUDGE OF THE SUPERIOR COURT
27
28

                                                      53.

COPY

COURT OF APPEAL OF THE STATE OF CALIFORNIA

in and for the

SIXTH APPELLATE DISTRICT

FILED

AUG 21 1987

Court of Appeal - Sixth App. Dist.
BY_____
            DEPUTY

|  |  |  |
|---|---|---|
| HERBERT WILLIAM MULLIN,<br>        On habeas corpus. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. H003447 <br><br> Superior Court No. 50219 |

BY THE COURT

The petition for writ of habeas corpus (motion
to dismiss outstanding charges) is denied.

(Capaccioli, Acting P.J., and Premo, J.
(assigned) participated in this decision.)

:ed_____ AUG 2 1 1987 _____

                                CAPACCIOLI, J.
                    _____ Acting P.J.

/ 54.

ORDER DENYING WRIT OF HABEAS CORPUS

Criminal No. S003072

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

# IN BANK

In re HERBERT WILLIAM MULLIN

on

Habeas Corpus

SUPREME COURT

# FILED

DEC - 3 1987

Laurence P. Gill, Clerk

―――――――――――――
DEPUTY

Petition for writ of habeas corpus DENIED.

_____
Chief Justice

55.

FILED

3/30/88

MAR 3 0 ....

WILLIAM L. W....
CLE....
NORT.... ....
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HERBERT WILLIAM MULLIN,                )
                                       )
                   Petitioner,         )    NO.  C-88-20054-WAI
                                       )
          v.                           )
                                       )
WAYNE ESTELLE,                         )    JUDGMENT
                                       )
                   Respondent.         )
_____)

          In accordance with the accompanying Order,

          IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the

above-entitled action is DISMISSED WITHOUT PREJUDICE.

          DATED: MAR 3 0 1988

                                    _____
                                    WILLIAM A. INGRAM
                                    United States District Judge

/56.

821

1

2

3

4

5

6

7

8

9

FILED

3/30/88

WILLIAM L. WHITTAKER
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10  HERBERT WILLIAM MULLIN,           )
                                     )
11               Petitioner,         )    NO.   C-88-20054-WAI
                                     )
12          v.                       )
                                     )
13  WAYNE ESTELLE,                   )         O R D E R
                                     )
14               Respondent.         )
    ─────────────────────────────── )

15

16

17          Petitioner Herbert William Mullin was convicted of ten

18  counts of murder on August 15, 1973.  Petitioner was sentenced on

19  September 18, 1973, to life imprisonment and is currently serving

20  this sentence at the California Men's Colony at San Luis Obispo.

21  The petitioner is not challenging his conviction in the instant

22  application for habeas corpus relief.  Instead, he seeks

23  dismissal of two pending counts of murder in Santa Cruz County.

24          Petitioner filed a motion to dismiss the charges at

25  issue in the Santa Cruz County Superior Court on July 17, 1987.

26

82)

157.

1    His motion was dismissed on the ground that no outstanding

2    charges existed. Petitioner properly exhausted his state

3    judicial remedies before the California Court of Appeal and the

4    California Supreme Court. Both courts denied his petitions

5    without comment or citation. Petitioner's request for federal

6    habeas corpus relief is HEREBY DISMISSED because this court lacks

7    subject matter jurisdiction.

8         In order for this court to have subject matter

9    jurisdiction over a petition for a writ of habeas corpus, the

10   petitioner must be "in custody pursuant to the judgment of a

11   state court." 28 U.S.C. §§ 2241 (c)(3); 2254 (a). Petitioner is

12   not in custody for the purposes of this court's subject matter

13   jurisdiction because he has not been charged with the alleged

14   offenses. See Fields v. Martin, 372 F. Supp. 954, 956

15   (D. S.C. 1974) (person who is under the threat of prosecution

16   cannot be considered as being in custody). Assuming arguendo

17   that the alleged charges were litigated, this court would still

18   lack subject matter jurisdiction because petitioner is not

19   currently incarcerated on those charges.

20        Based on the foregoing reasons, this court HEREBY

21   DISMISSES WITHOUT PREJUDICE petitioner's request for habeas

22   corpus relief.

23        DATED: 3 29 88

24

25        _____

26        WILLIAM A. INGRAM
          United States District Judge

2

158.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FILED

JUL 3 0 2004

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re HERBERT W. MULLIN,               No. C 04-3041 CRB (PR)

    Petitioner.                         ORDER OF DISMISSAL

    Petitioner, a state prisoner incarcerated at Mule Creek State Prison in Ione,
California, has filed a petition for "appointment of competent legal counsel." Although
convicted of multiple murders nearly 30 years ago, petitioner claims that he is
constitutionally entitled to appointment of counsel to bring a "habeas corpus &/or civil
court suit &/or mandamus" in connection with his 1973 state court proceedings.
Petitioner notes that he has repeatedly filed petitions for appointment of counsel in the
state courts and has been repeatedly denied.

    Petitioner is free to file a petition for a writ of habeas corpus under 28 U.S.C. §
2254, or a civil rights complaint against a state actor under 42 U.S.C. § 1983, in this
court. However, he is not entitled to appointment of counsel from this court so that he
may pursue a civil action against the Archdiocese of San Francisco in state court. Nor is
he entitled to appointment of counsel before he even files a federal habeas petition under
§ 2254. Cf. Calderon v. Ashmus, 523 U.S. 740, 742-49 (1998) (state prisoner may not
seek any kind of declaratory judgment or injunctive relief regarding a challenge to his

/59.

1    state conviction apart from filing an application for a writ of habeas corpus under 28

2    U.S.C. § 2254); see also Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981) (no

3    constitutional right to counsel in a civil case unless an indigent litigant may lose his

4    physical liberty if he loses the litigation); Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th

5    Cir. 1986) (6th Sixth Amendment right to counsel does not apply in habeas corpus

6    actions). The petition is DISMISSED.

7        The clerk shall close the file and terminate all pending motions as moot. No fee

8    is due.

9    SO ORDERED.

10   DATED: July 30, 2004

11                                CHARLES R. BREYER
                                  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                     2

/60.

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

OCT 29 2004

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: HERBERT W. MULLIN. | No. 04-74692 |
| | D.C. No. CV-04-03041-CRB |
| ------------------------ | Northern District of California, |
| | San Francisco |
| HERBERT W. MULLIN, | |
| Petitioner, | ORDER |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, | |
| Respondent, | |
| ARCHDIOCESE OF SAN FRANCISCO, | |
| Real Party in Interest. | |

Before: KOZINSKI, HAWKINS and THOMAS, Circuit Judges

Petitioner has not demonstrated that this case warrants the intervention of

this court by means of the extraordinary remedy of mandamus. *See Bauman v.*

*United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977). Accordingly, the petition

is denied.

S:\MOATT\Panelord\10.14.04\orders\kz3\04-74692.wpd

/61.

04-74692

No motions for reconsideration, modification, or clarification of this order

shall be filed or entertained.

/62.

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

April 25, 2005

Mr. Herbert William Mullin
Prisoner ID B-51410
Mule Creek State Prison
4001 Highway #104, Room 8-249 Up
Ione,, CA  95640

Re:  Herbert William Mullin
v. United States District Court for the Northern District of
California
No. 04-8764

Dear Mr. Mullin:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.  Justice Breyer took no
part in the consideration or decision of this petition.

Sincerely,

William K. Suter

William K. Suter, Clerk

/63.

## QUESTION(S) PRESENTED

#1.) Petitioner Herbert William Mullin believes that the United States Supreme Court has the Power to Appoint Competant Legal Counsel to defend &/or assist petitioner. Petitioner was denied legal counsel during the Appealate Phase of his original trial some 30 to 31½ years ago. (See exhibit B A of Appendix # A). Will the U.S. Supreme Court now rule to allow petitioner Competant Legal Counsel ?

#2.) Petitioner has been denied his right to a speedy trial. Exhibit # A of Appendix # A, the Jack Leavitt letter dated April 29th, 1974, indicates that there are still two uncharged counts of P.C.# 187, from the original trial in Santa Cruz County, California, i.e., # 50219, in the Summer of 1973. Because no other court that petitioner has approached has rectified this problem, will the U.S. Supreme Court Appoint Competant Legal Counsel to assist &/or defend the petitioner ?

#3.) Petitioner believes that he is the victim of malicious prosecution. The contents of this 'entire' petition prove so. Will the U.S. Supreme Court Appoint Competant Legal Counsel to rectify this injustice ?

#4.) Petitioner was arrested & tried & convicted & sentenced in 1973. That was some 31 to 32 years ago. Petitioner was seen by the California Adult Authority in 1976 for a Parole Concideration Hearing. Under the Laws in effect at the time, petitioner was supposed to be seen by the Adult Authority once each year for Parole Concideration. The State of California Legislature changed those laws in violation of the 'ex post facto protection' clauses in the United States Constitution. Will the U.S. Supreme Court Appoint Competant Legal Counsel to represent petitioner in solving this problem??
(Curently the California Parole Authorities are dening to meet with this petitioner for four or five years at a time. This is a form of XXX Cruel & Unusual Punishment.)

#5.) Petitioner was urged & pursuaded by his Public Defender at the original trial to take the stand and testify. The Public Defender's Home had burnt to the ground under 'strange circumstances during the weeks preceeding the defense portion of the X trial. Exhibt # a of Appendix # a , the Jack Leavitt letter, further indicates that this petitioner was not represented by competant legal counsel during the original trial # 50219 in Santa Cruz County Superior Court in 1973. Will the XX U.S. Supreme Court now Appoint Competant Legal Counsel to represent & defend this petitioner ?

#6.) The Right of everry citizen in the United States of America to be represented by Competant Legal Counsel in Criminal Court is basic. This petitioner believes that he was sabataged mentaly by his former family and his former Catholic Church; that soccio-econcmic-political pressure resulted in the crime spree, re: 13 victim P.C.# 187. By Granting Herbert William Mullin assistance of dompetant legal counsel at this time, the U.S. Supreme Court would be protecting the Right of all the citizens of the U.S.A. to fair and impartial Justice. Equal Protection under the Law would be even more of a reality. Will the U.S. Supreme Court Appoint Competant Legal Counsel to this petitioner ?

(i)

164.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

U.S.A. Constitution, Article #1., Section #9, paragraph #s 2 & 3.
      "The Privilege of the Writ of Habeas Corpus shall not be suspended,
unless when in Cases of Rebellion or Invasion the public safety may
require it."
      "No Bill of Attainder or ex post facto Law shall be passed."

U.S.A. Bill of Rights (The First Ten Amendments)
      Amendment # 5.
      "No person shall be held to answer for a capital, or otherwise
infamous crime, unless on a presenment or indictment of a Grand Jury,
except in cases arising in the land or naval forces, or in the Militia,
when in actual service in time of War or public danger; nor shall any
person be subject for the same offence to be twice put in jeopardy of
life or limb, nor shall be compelled in any criminal case to be a wit-
ness against himself, nor be deprived of life, liberty, or property,
without due process of law; nor shall private property be taken for
public use without just compensation."

      Amendment # 6.
      "In all criminal prosecutions, the accused shall enjoy the right
to a speedy and public trial, by an impartial jury of the State
and district wherein the crime shall have been committed; which district
shall have been previously ascertained by law, and to be informed of the
nature and cause of the accusation; to be confronted with the witnesses
against him; to have compulsory process for obtaining witnesses in his
favor, and to have the assistance of counsel for his defence."

      Amendment # 8.
      "Excessive bail shall not be required, nor excessive fines impos-
ed, nor cruel and unusual punishments inflicted."

U.S.A. Constitution; Amendment # 14., Section # 1.
      "All persons born or naturalized in the United States and subject
to the jurisdiction thereof, are citizens of the United States and of
the State wherein they reside.  No State shall make or enforce any law
which shall abridge the privileges or immunities of citizens of the
United States; nor shall any State deprive any person of life, liberty,
or property, without due process of law; nor deny to any person within
its jurisdiction the equal protection of the laws."

      California Penal Code # 1181
      "Paragraph # 6"      When the verdict or finding is contrary
to Law or the degree of the crime of the EVIDENCE, but if the evidence
shows the defendent to be not guilty of the degree of the crime of
which he was convicted, but of a lesser degree thereof, or of a lesser
crime included therein, the Court may modify the verdict, finding, or
judgement accordingly, without granting or ordering a new trial, and
this power shall extend to any Court to which the cause may be appealed.

*3.*

/65.

## STATEMENT OF THE CASE

Petitioner Herbert William Mullin believes he is the victim of a conspiracy. His former family & friends & church & schools kept him in a state of naievity, gullibility, & immaturity throughout his grammar school, high school, and college years. After his college years were over he was pushed into a state of undifferentiated schitzophrenia for four years, then he was forced into a state of paranoid schitzophrenia and at that time (October 13th, 1972 through February 13th, 1973) the 13 murder California Penal Code 187 crime spree took place.

Because of excessive drug therapy by the prison security housing unit authorities during the petitioner's first two years in California State Prison, the petitioner was incapable of filing the proper paperwork to pursue his original trial appeals.(See Appendix A, Exhibit A).

Petitioner has mentioned in his approaches to all the courts that there are still two uncharged counts of P.C. 187 that Santa Cruz County is unwilling to indict at this time. Petitioner has also brought this matter before the Parole Authorities when the Santa Cruz County District Attorneys representative deputy was present on approximately eight occassions over the past 30 years. It is hoped by this petitioner that the United States Supreme Court will Appoint Competant Legal Counsel so that these two uncharged counts can be processed correctly. (See Appendix A, Exhibit A).

The 'ex post facto' protection clause in the United States Constitution should be invoked by the United States Supreme Court to protect this petitioner from further 'cruel & unusual punishment'. This petitioner is supposed to meet with the Parole Concideration Authorities once each year as mandated by Law at the time of his conviction & sentencing. The present California Department of Corrections Board of Prison Terms policy of dening parole concideration for 5 years at a time is unconstitutional. (U.S. Constitution, Article #1., Section #9., paragraph #s 2&3., as well as U.S. Bill of Rights, U.S.Constitution Amendment # 8.)

Petitioner was urged & pursuaded by his Public Defender to take the stand and testify at the original trial. Exhibit A of Appendix A shows that this was very detrimental to this petitioner's defense at the original trial, re: degree of guilty (or 'Not Guilty By Reason of Insanity') (See Appendix # A, Exhibit # a.) This petitioner needs Competant Legal Counsel to approach the appropriate Court System to solve this injustice. (See United States Constitution, Amendment # 5.)

The contents of this entire petition show that this petitioner has tried to contact legal counsel and was unable to do so. As question # 6 of the 'QUESTIONS PRESNTED' section of this Petition for Writ of Certiorari indicates, this petitioner believes that 'Equal Protection Under the Law' is the right of all the citizen's of the U.S.A. By Appointing Competant Legal Counsel to represent this petitioner, the United States Supreme Court would be bring the truth, the whole truth, and nothing but the truth into the Light of the Court Room where it could be finally looked upon with an Eye of Justice and Impartiality. I believe I was 'Not Guilty By Reason of Insanity' at the time of the crimes. My Public Defender, the California Prison Authorities, the lower courts, and the Parole Authorities are all guilty of going along with the momentum of procrastination. (U.S. Constitution., Amendment # 14., Section #1.)

4.

66.

## REASONS FOR GRANTING THE PETITION

Basicaly, in lawman's language, this is a Petition XX for Appointment of Competant Legal Counsel. By exercising it right to grant this Petition for Writ of Certiorari, the United States Supreme Court could appoint competant Legal Counsel to represent this petitioner. In so doing, the U.S. Supreme Court would be allowing the truth about what happened to finally be X brought to light.

The decisions of the lower courts not granting the appointment of competant legal counsel are in violation of the guarantees granted to the citizens of the U.S.A. in the United States Constitution & it's Amendments. Every citizen in the U.S.A. benefits from the Power of the United States Constitution and it's Amendments. By granting this Petition for Writ of Certiorari, the United States Supreme Court would be protecting and also stengthening the United States Constitutuion and it's Amendments, as well as the citizenry of the United States of America.

By Appointing Competant Legal Counsel, the United States Supreme Court would be making it possible for that Counsel to show the U.S. Supreme Court why the denial decisions of the Ninth Circuit Court of Appeals, et al, are in conflict with the decisions of other appellate courts. Competant Legal Counsel could show where and when other appellate courts supported the Constitutional Guarantees enunciated within the U.S.A. Constitution, Article #1., Section # 9., paragraph #s 2 & 3.; U.S.A. Constitution, Amendment # 5.; U.S.A. Constitution, Amendment # 6. ; U.S.A. Constitution, Amendment # 8. ;   U.S.A. Constitution, Amendment # 14, Section # 1.).

During the past ten (10) years alot of problems have arrisen in the news media about the Catholic Church in America and Psychological & Sexual Abuse by the Catholic Priesthood. My case fits into this horrible phenom* ena with the added problem that I am the son of a U.S. Army veteran who was put into a Psychiatric Hospital for shell shock stress syndrome in the year 1945. I was born on April 18th, 1947. The Psychological Abuse of my family, combined with the Sexual & Psychological Abuse by the Catholic Priest, most definately has alot to do with the commission of the crime spree that I have been in prison for these past 32 years (approx.). The United States Supreme Court could protect other Catholic scapegoats if they chose to grant this Petition for Writ of Certiorari.

The lower courts were wrong to deny myPetitions for Appointment of Competant Legal Counsel. They saw that wrongs were being done. They knew that there were two uncharged counts of P.C. 187 still pending. They knew I had received intentional incompetant assistance of counsel at my original trial. They knew I had been inappropriately medicated by the prison authorities during my first two years in prison & that therefore I was denied the right to competant legal counsel in XX my appeal process. The lower courts failed to allow me to present the real truth about who is really responsible for causing the crime spree to occur. These are all valid reasons for the United States Supreme Court to grant this Petition for Writ of Certiorari &/or Petition for Appointment of Competant Legal Counsel.

The United States Supreme Court is the Highest Court in the Land. It has the Power and the Responsibility to do what is Right & Just. I hope that Truth & Justice will prevail. I request that a Petition for Writ of Certiorari be granted.

5.

67.

# EXHIBIT  A

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of: ) CDC Number B-51410
)
HERBERT MULLIN )
)
_____)

**INMATE COPY**

MULE CREEK STATE PRISON

IONE, CALIFORNIA

MARCH 22, 2006

RECEIVED
ON
4/28/2006
FRIDAY

PANEL PRESENT:

ARCHIE JOE BIGGERS, Presiding Commissioner
NOREEN BLONIEN, Deputy Commissioner

OTHERS PRESENT:

HERBERT MULLIN, Inmate
ARIADNE SYMONS, Deputy District Attorney
RONALD RICO, Deputy District Attorney
LARRY CHLADEK, Attorney for Inmate
THELMA JONES, Observer
SHMUEL THALER, Observer
Correctional Officers, Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No    See Review of Hearing
_____  Yes   Transcript Memorandum

Ruby M. Dougherty, Peters Shorthand Reporting

69.

82

1   CALIFORNIA BOARD OF PAROLE HEARINGS

2      D E C I S I O N

3   DEPUTY COMMISSIONER BLONIEN:  We're on

4 record.

5   PRESIDING COMMISSIONER BIGGERS:  The time

6 is now 1:45 p.m.  Let the record reflect that

7 all previous parties are now present.  Mr.

8 Mullins, the Panel has reviewed all the

9 information received from the public and has

10 relied on the following circumstances in

11 concluding that the prisoner is not suitable for

12 parole and would pose an unreasonable risk of

13 danger to society or a threat to public safety

14 if released from prison.  And this was

15 determined by many factors.  The first one being

16 that the offense was carried out in an

17 especially cruel and callous manner.  You either

18 shot or stabbed 11 victims, and you made

19 reference to the fact -- and you were convicted

20 of ten of those.  I mean 11 -- 11.  You were

21 convicted of 11 murders.  And you even went so

22 far as to confess two other murders.  Multiple

23 victims you either stabbed or shot.  You -- in

24 one incident the offense was carried in a

25 calculated manner such as an execution style

26 murder in that you murdered a whole family, and

27 HERBERT MULLIN B-51410 DECISION PAGE 1  03/22/06

70.

83

```
 1   one of those victims was four-years-old and the
 2   other was nine. The offense was carried out in
 3   a manner which demonstrated an exceptionally
 4   callous disregard for human suffering. And I'm
 5   talking primarily about the victims of -- of the
 6   family -- the victim's families, for example.
 7   You talked in here today about everything, about
 8   how your hope that their souls are blessed by
 9   God or something but I never heard you say
10   anything at all about the family of the victims
11   that you murdered. And I think that they are
12   suffering quite a bit for the loss of their life
13   -- of their loved ones. The motive for the
14   crime was very trivial in the fact that you
15   killed a priest, and you said it in here today
16   that you mistook him for another priest. And I
17   don't quite understand how you would even --
18   well, let me back up. How you would -- if you
19   didn't recognize the individual or you didn't
20   know who the individual was, and in some cases I
21   think you knew some of your victims and in some
22   cases you didn't. That you would just
23   arbitrarily go to a church where they hold
24   confession and kill a person. And I draw these
25   conclusions from the fact that you were
26   convicted of murdering 11 people, and I don't
27   HERBERT MULLIN B-51410 DECISION PAGE 2  03/22/06
```

71

84

1  know for what reason. You did not provide a
2  reason, other than the fact that you laid
3  everything on your parents and you blame this on
4  your parents but yet you have a sister and I
5  don't think that she has been involved in any of
6  this type of behavior. I don't think you've
7  accepted responsibility. In fact, I thought it
8  was said very well earlier that you feel
9  entitled to be suitable for parole but yet you
10 still have not taken upon yourself to determine
11 -- or accepted the fact as to why you did what
12 you did. In my few short years of doing this, I
13 have not had the opportunity to talk to someone
14 who has done something such as this for no
15 apparent reason, because you have not provided
16 me with a reason. Normally someone will tell me
17 why they did something, but you won't do that
18 for whatever reason. We looked at your previous
19 record, and I see here that you said that you
20 were not under the influence but this time you
21 said you may or may not be. You have a history
22 of marijuana use. I couldn't determine one way
23 or the other if you were under that, but it
24 didn't matter. You still killed 11 people on
25 different occasions. I want to commend you for
26 your attending AA and NA over the last ten
27 HERBERT MULLIN B-51410 DECISION PAGE 3  03/22/06

172.

```
 1  years, some of the self-help things that you're
 2  doing here, and also for not having but only one
 3  128 and one 115.  The psychological report dated
 4  2001 that was authored by a Dr. Shaffer -- and I
 5  wanted to read that to you just so I want to get
 6  it on the record so that you can understand
 7  what's going through my mind at this point.
 8              "In short, it appears that within
 9              the controlled and structured
10              environment of CDC he can function
11              without presenting a danger to
12              himself or others.  If released to
13              the community he is not likely to
14              receive the level of support he
15              expects from members of Narcotics
16              Anonymous.  No other community
17              support, having discontinued his
18              contact with family members --
19              which is what you have done.  That
20              you are someone dependent -- you
21              are a dependant individual who
22              probably requires a highly
23              structured environment in order to
24              function best."
25  He also went on, and I'm going to paraphrase him
26  now, that your frustrations with the free world
27  HERBERT MULLIN B-51410 DECISION PAGE 4  03/22/06
```

73

86

```
1   increase your risk for future acting out.
2   Things have changed out there and I don't know
3   that much about your religion.  I'd be the first
4   to say that I don't know that much about your
5   religion, but I think that you need to come to
6   the reality that something else other than your
7   parents were responsible for you committing
8   these offenses.  You're -- you are not the
9   victim.  The victims and their families are the
10  victim.  You are the individual who made them
11  victims.  You need to accept that.  I don't
12  think you have very good realistic parole plans.
13  You talked about going up to this place or that
14  place and you were going to go to an area in
15  Santa Cruz and stay there but you had no
16  employment.  You said you're going to have to go
17  look and request work.  You know, if you -- if
18  we would have given you a date, we just would
19  have thrown you out there and there's no way --
20  you don't know whether you even have a job.  So,
21  you should probably have a job all lined up
22  before you consider coming back to this parole
23  to get a -- come back and get a date that's
24  suitable.  The Panel also notes the responses of
25  -- 3042 responses -- where we have the District
26  Attorneys of both Santa Clara and Santa Cruz who
27  HERBERT MULLIN B-51410 DECISION PAGE 5  03/22/06
```

74

87

1    indicate their opposition to -- of us finding

2    you suitable for parole.  I also want to take

3    notice that you did have a supportive letter

4    from a gentleman in Florida, but I also want to

5    get on the record that this gentleman never met

6    him.  He -- it seems more like he's a penpal

7    because you've never seen him face to face.  You

8    -- someone else told him something and he

9    started writing you, and yet he doesn't know

10   that much about you other than what you've

11   written, but yet he can write a letter of

12   support and so on.  I just wanted to note for

13   the record that we did have in fact that --

14           DEPUTY DISTRICT ATTORNEY RICO:

15   Commissioner?

16           PRESIDING COMMISSIONER BIGGERS:  Yes.

17           DEPUTY DISTRICT ATTORNEY RICO:  There was

18   also a letter in opposition from the family

19   member that --

20           PRESIDING COMMISSIONER BIGGERS:  Yes.  I

21   will (indiscernible).  Thank you.  And then we

22   have the letter of opposition from the family

23   member that I -- that I want to go on record as

24   well.  Again you say you have remorse for the

25   victims, but I go back to the fact that I never

26   heard anything about the victims' families at

27   HERBERT MULLIN B-51410 DECISION PAGE 6  03/22/06

75.

88

```
 1   all.  I mean, the whole hearing today -- nothing
 2   was ever mentioned about the victims' families,
 3   what pain and suffering you caused them.  Again
 4   I want to commend you for your AA participation
 5   for the last ten years and your exceptional work
 6   reports from your supervisor (indiscernible)
 7   while you're in prison.  But these positive
 8   aspects of your behavior don't outweigh factors
 9   of being unsuitable for parole as far as we are
10   concerned.  In a separate decision the Panel
11   finds it is not reasonable to expect that parole
12   will be granted at a hearing in the next five
13   years.  And the reason that we did that was the
14   fact that you murdered 11 people and the fact
15   that you admitted to murdering other
16   individuals.  And again specifically, you know,
17   of the 11 people that you murdered and were
18   convicted of, four of them were from the same
19   family and two of them were kids, ages four and
20   nine that were just beginning their life.  And
21   by your own admission you didn't even know them.
22   The motive for the crime was trivial in
23   relationship to the offense.  I mean, again, you
24   go back to the (indiscernible) that you
25   murdered.  Again, someone that you didn't even
26   know.  You just picked them at random I guess,
27   HERBERT MULLIN B-51410 DECISION PAGE 7  03/22/06
```

/76.

1    and did that.  We took into consideration your

2    history of criminality and that, you know, you

3    were picked up on marijuana possession, you were

4    resisting arrest, drunk in public, and also your

5    history of unstable and tumultuous relationship

6    with others.  You were hospitalized for mental

7    illness and -- on three or four different

8    occasions and by your own admission you said

9    that the treatment here has been great, and you

10   appear -- you say that you realize that you want

11   to thank the CDC, and I hope I'm getting this

12   correct, that -- for making you sane.  But at

13   the same time we felt that the entitlement that

14   because you've done all this you've asked them

15   to bless the souls of the -- of your victims,

16   that you are entitled to be suitable.  And just

17   let me just clarify that even further by stating

18   that no one forced you to pull the trigger, no

19   one forced you to knife those people.  You did

20   this all yourself.  You did it, no one else.

21   Not your family, not your father, not your

22   mother.  A lot of people come from families that

23   are dysfunctional.  I can't find anything in

24   your record that shows that your family was

25   dysfunctional, so I find that just unbelievable

26   that you would even go to that extent.  Your

27   HERBERT MULLIN B-51410 DECISION PAGE 8   03/22/06

77.

1    psychological evaluation that I read earlier I

2    want to put on record as another reason that we

3    went into a multi-year denial, and primarily the

4    part that states that it appears that you --

5    that within a controlled and structured

6    environment of CDC you can function without

7    presenting a danger to yourself or others.  And

8    I just feel that if -- we, the Panel feels that

9    if you are released that you have a tendency to

10   want to do that again.  That you would in fact

11   be a danger to society if you are in fact

12   released.  The Panel -- we also recommended you

13   remain disciplinary-free, would like you to

14   participate in some self-help programs and some

15   therapy programs if they are available.  The

16   Panel also requests a clinical evaluation prior

17   to your next hearing, and I'm going to ask you

18   to cooperate with the clinicians in the

19   completion of this clinical evaluation prior to

20   your next hearing.  Did I miss anything?

21        DEPUTY COMMISSIONER BLONIEN:  No.

22   //

23   //

24   //

25   //

26   //

27   HERBERT MULLIN B-51410 DECISION PAGE 9  03/22/06

78.

1    PRESIDING COMMISSIONER BIGGERS:  Well,

2  that concludes the reading of the decision.

3  Good luck to you, sir, and hopefully you can

4  look into your own mind and determine, you know,

5  who's responsible for this and I guarantee it's

6  not your family.  That concludes the hearing.  I

7  wish you the best of luck, sir.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23  PAROLE DENIED FIVE YEARS

JUL 2 0 2006

24  THIS DECISION WILL BE FINAL ON:_____

25  YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26  DATE, THE DECISION IS MODIFIED.

27  HERBERT MULLIN B-51410 DECISION PAGE 10 03/22/06

/ 79.

92

CERTIFICATE AND

DECLARATION OF TRANSCRIBER


I, RUBY M. DOUGHERTY, a duly designated

transcriber, PETERS SHORTHAND REPORTING, do hereby

declare and certify under penalty of perjury that I

have transcribed tape(s) which total two in number and

cover a total of pages numbered 1 - 91, and which

recording was duly recorded at MULE CREEK STATE

PRISON, IONE, CALIFORNIA, in the matter of the

SUBSEQUENT PAROLE CONSIDERATION HEARING for HERBERT

MULLIN, CDC NO. B-51410, on MARCH 22, 2006, and that

the foregoing pages constitute a true, complete, and

accurate transcription of the aforementioned tape to

the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated APRIL 11, 2006, at Sacramento,

California.


RUBY M. DOUGHERTY
TRANSCRIBER
PETERS SHORTHAND REPORTING

# EXHIBIT B

81.

12

1    PRESIDING COMMISSIONER BIGGERS:  You have

2  an additional right to be heard by an impartial

3  Panel.  Do you have any objection to the Panel

4  members?

5    INMATE MULLIN:  No, I don't.

6    ATTORNEY CHLADEK:  (Indiscernible) okay.

7    PRESIDING COMMISSIONER BIGGERS:  You will

8  receive a written copy of our tentative decision

9  today.  This decision becomes effective within

10  120 days.  A copy of the decision and a copy of

11  the transcript will be sent to you, and you will

12  have 90 days from that date to appeal if you so

13  desire.  Now, let me just explain something to

14  you about the appeals process.  There has been a

15  recent change.  I think it was 2004 where your

16  appeal would come to the Board, but we do not

17  hear appeals anymore.  Your appeal now goes

18  directly to the Court.

19    INMATE MULLIN:  Okay.

20    PRESIDING COMMISSIONER BIGGERS:  Do you

21  understand that?

22    INMATE MULLIN:  Yes.

23    PRESIDING COMMISSIONER BIGGERS:  Okay.

24  You're not required to admit your offenses or

25  discuss your offenses.  However, the Panel does

26  accept the findings of the Court to be true.  Do

27  you understand that?

13

1       INMATE MULLIN:  No, could you repeat that

2    please?

3       PRESIDING COMMISSIONER BIGGERS:  You're

4    not required to admit your offense or discuss

5    your offenses.  Okay?  There's not a requirement

6    for you to do that.  However, we -- this Panel

7    does accept the finding of the Court to be true.

8    Do you understand that?

9       INMATE MULLIN:  Yes.  Yes, I --

10      PRESIDING COMMISSIONER BIGGERS:  In other

11   words, we're not here to retry your case.

12      INMATE MULLIN:  Okay.

13      PRESIDING COMMISSIONER BIGGERS:  Okay.

14   But, you've already been found guilty of the

15   charges.  Okay?  So as far as we're concerned,

16   you're guilty of those charges.

17      INMATE MULLIN:  Right.

18      PRESIDING COMMISSIONER BIGGERS:  Okay.

19   Do you understand that now?

20      INMATE MULLIN:  Yes, I brought material

21   for you to look at --

22      PRESIDING COMMISSIONER BIGGERS:  We'll

23   get into that.

24      INMATE MULLIN:  Okay.

25      PRESIDING COMMISSIONER BIGGERS:  We'll

26   get into that.

27      INMATE MULLIN:  Right.

83.

18

1    understand.

2              INMATE MULLIN:  But could you read it one

3    more time and I'll just agree?

4              PRESIDING COMMISSIONER BIGGERS:  Well,

5    no.  I don't want you to just do that.  I'm just

6    trying to establish to you that first of all

7    we're here to determine whether or not you are

8    suitable for parole.  We're not retrying your

9    case at all, but there are certain parameters

10   that we have that we have to work off of that

11   have been spelled out in Title XV.  Now again,

12   as was explained to you by the Deputy

13   Commissioner, if you do not like for some reason

14   our decision today you have the right to appeal.

15   Okay?  As for us, I don't see where you have

16   been able to establish that we would not be

17   impartial so therefore I'm going to continue

18   with the case.  Do we have any confidential

19   information that will be -- in the files?

20             DEPUTY COMMISSIONER BLONIEN:  There is

21   confidential information in the file that we may

22   use.

23             PRESIDING COMMISSIONER BIGGERS:  Okay.

24   I'm going to provide a checklist to your

25   attorney and also to the -- both of the District

26   Attorneys for them to review to make sure that

27   we're all on the same (indiscernible) when it

A4

19

1   comes to the documents that we're going to use

2   today.  Okay?

3        ATTORNEY CHLADEK:  I have all of these

4   documents.

5        DEPUTY DISTRICT ATTORNEY SYMONS:  I have

6   these documents.  Did you need me to sign and

7   initial it --

8        PRESIDING COMMISSIONER BIGGERS:  Yeah,

9   please do.  And that was the District Attorney

10  from Santa Clara -- Santa Cruz.  And we also

11  have the District Attorney here from Santa

12  Clara, and let him check the document as well.

13       DEPUTY DISTRICT ATTORNEY RICO:  I have

14  those documents --

15       PRESIDING COMMISSIONER BIGGERS:  Okay,

16  thank you very much.  And I -- and for the

17  record, the inmate's attorney brought in a --

18  some additional information that we'll -- that

19  the Deputy Commissioner will go over with you

20  shortly.  But there was some additional

21  documents that were brought in by the inmate.

22  Do you have any objections to -- any preliminary

23  objections?

24       ATTORNEY CHLADEK:  No objections at this

25  time.

26       PRESIDING COMMISSIONER BIGGERS:  Thank

27  you.  Will the inmate be speaking to the Panel?

20

1          ATTORNEY CHLADEK:  He will be talking

2     about everything except for the crime.  He does

3     not wish to talk about that at this time.

4          PRESIDING COMMISSIONER BIGGERS:  Okay,

5     well if that's the case I need you to please

6     raise your right hand as best as you can.  Do

7     you solemnly swear or affirm that the testimony

8     you give at this hearing will be the truth and

9     nothing but the truth?

10          INMATE MULLIN:  I do.

11          PRESIDING COMMISSIONER BIGGERS:  Thank

12     you very much.  I'm going to read in to the

13     record the offensive summaries from the life

14     prisoner evaluation that was conducted on

15     September 30th of 2005.  And I'll start with the

16     -- with the offensive summary from Santa Cruz.

17               "On the morning of January 25th,

18               1973, Mr. Mullin went to the home

19               of James Gianera, G-I-A-N-E-R-A,

20               in Santa Cruz.  He shot him four

21               times with a .22 caliber pistol,

22               killing him.  He went -- then went

23               to Gianera's wife Joan and shot

24               her five times, also killing her.

25               Mr. Mullin then went to the home

26               of Cathleen Prentiss,

27               P-R-E-N-T-I-S-S.  He entered the

25

```
1          leg, described the kick as a
2          karate style kick.  The victim
3          suffered four stab wounds.  In
4          addition to the 11 murders,
5          Mullins admitted to two more
6          murders while on the witness
7          stand."
8   Is -- these statements correct Mr. Mullin?
9          INMATE MULLIN:  I would say not guilty by
10  reason of insanity.  The people that I'm accused
11  of killing I did kill, but as to the dates and
12  the facts I can't stipulate to whether those
13  facts or dates are true.
14         ATTORNEY CHLADEK:  My client was not
15  going to talk about the crime.  I think that --
16         INMATE MULLIN:  Okay, so I could just say
17  I refuse to talk about it?
18         PRESIDING COMMISSIONER BIGGERS:  Okay.
19  All right.  I understand.
20         INMATE MULLIN:  My basic first statement
21  would be not guilty by reason of insanity with
22  mitigating circumstances.
23         PRESIDING COMMISSIONER BIGGERS:  Okay.
24  Well, we'll get into that a little later on.
25  This is just a -- there's a lot of things here.
26  This is a very ugly crime that you've been
27  convicted of by reason of insanity or whatever.
```

87.

26

1   Did you know any of the victims prior to --

2          INMATE MULLIN:   I knew Jim Gianera and

3   Joan Gianera, and Cathleen Prentiss and David

4   and Damian.

5          PRESIDING COMMISSIONER BIGGERS:   Okay.

6   How did you know them?

7          INMATE MULLIN:   Jim Gianera and I went to

8   high school together, San Lorenzo Valley High,

9   1963, '64, '65.

10         PRESIDING COMMISSIONER BIGGERS:   The

11  other victims?

12         INMATE MULLIN:   His wife -- when Jim got

13  married and his wife was pregnant he approached

14  me and asked me if I wanted to smoke some

15  marijuana with him and so that's -- that was

16  when I first met her.

17         PRESIDING COMMISSIONER BIGGERS:   How

18  about the priest?

19         INMATE MULLIN:   The priest -- there's a

20  difference of opinion about the priest.   At the

21  trial I thought the priest was one of the

22  priests that occasionally was a visitor at Saint

23  John's Parish in Felton, where I was a member.

24  Saint John's Catholic Church in Felton, which is

25  in Santa Cruz, something that (indiscernible).

26  Well, the priest Henry Tomei, he used to

27  substitute there as a confessor.   I went -- I

88.

27

1    thought I had gone to him several time in

2    confession and he also gave Mass and Holy

3    Communion.

4        PRESIDING COMMISSIONER BIGGERS:  Okay, so

5    that was the only --

6        INMATE MULLIN:  They told me at the trial

7    that no, he -- that's not the same man.

8        PRESIDING COMMISSIONER BIGGERS:  So, in

9    other words, you didn't know him?

10       INMATE MULLIN:  Well, who's telling the

11   truth?

12       PRESIDING COMMISSIONER BIGGERS:  Well,

13   I'm just trying to find out how you picked this

14   priest to commit the crime.

15       INMATE MULLIN:  Pardon?

16       PRESIDING COMMISSIONER BIGGERS:  How did

17   you pick this particular individual out for the

18   crime?

19       INMATE MULLIN:  I really don't want to

20   discuss the actual --

21       PRESIDING COMMISSIONER BIGGERS:  I'm not

22   asking you to discuss what took place, I'm

23   trying to figure out how.  What I'm trying to

24   establish here Mr. Mullins is, did you know your

25   victims?  Okay.  And how did you go about, you

26   know, and your relationship with the victims.

27       INMATE MULLIN:  Okay, yes.  I guess this

89.

28

1   is the part where I have to try to explain that

2   during those five years before, the crime spree

3   -- the crime spree started on October 13th,

4   1972, and it ended on February 13th, 1973.

5   During those four or five years before the crime

6   spree I was in what they call a state of

7   undifferentiated schizophrenia.  That's what the

8   Mendocino State Mental Hospital had diagnosed me

9   as.  I couldn't keep a job for more than six

10  months.  I didn't have any girlfriends.  I

11  didn't have any friends basically.  This is

12  where I start to try to plead to the Board of

13  Parole Hearings that there's an instance of

14  mitigation that can be taken into account.  I

15  was not a thinking individual, I was a reacting

16  individual.  I didn't sit down and think about

17  what I was going to do.  I was just reacting to

18  impulses that I received from the community

19  around me.  My peer group, my family, and so

20  forth.

21       PRESIDING COMMISSIONER BIGGERS:  Sir,

22  you're going to get a chance to go into all the

23  mitigation and everything.  What I'm concerned

24  about right now -- I know you don't want to talk

25  about the crime but I'm going to ask you, did

26  you kill those people?

27       INMATE MULLIN:  Am I supposed to --

90.

29

1        ATTORNEY CHLADEK:  You don't have to

2   answer any question you don't want to, but I

3   think you --

4        INMATE MULLIN:  It's already -- okay.

5   I've already said that, yeah.  That somebody

6   started me on this while I was in a state of

7   undifferentiated schizophrenia, paranoid

8   schizophrenia.  They started me on this and I

9   had no intentions of hurting anyone --

10       PRESIDING COMMISSIONER BIGGERS:  You said

11  they.  Who is they?

12       INMATE MULLIN:  Well, it was my parents,

13  my mother and father.

14       PRESIDING COMMISSIONER BIGGERS:  We'll

15  talk about your social history a little bit

16  later on but I wanted --

17       INMATE MULLIN:  Well, those are the

18  people who started me --

19       PRESIDING COMMISSIONER BIGGERS:  How did

20  they go about doing that?

21       INMATE MULLIN:  By denying me maturity --

22       PRESIDING COMMISSIONER BIGGERS:  How did

23  they go about denying you maturity?

24       INMATE MULLIN:  By not teaching me the

25  facts of life or the idea of the pecking order

26  in society, how to deal with the life and death

27  of the ego.  How to think about heterosexuality,

/ 91

30

1    bisexuality, homosexuality, any type of

2    sexuality.  They left me in a state of

3    immaturity, naiveté, and gullibility while they

4    allowed my peer group in grammar school and high

5    school and college to mature and become strong

6    and healthy and worthwhile so-called members of

7    society.

8          PRESIDING COMMISSIONER BIGGERS:  So

9    you're telling me that the reason you went on

10    this killing spree was the fact that your

11    parents did not allow you -- didn't teach

12    anything about sexuality?

13          INMATE MULLIN:  Not just sexuality, but

14    also the pecking order.  How the life and death

15    of the ego --

16          PRESIDING COMMISSIONER BIGGERS:  When you

17    say the life and death of the ego, clue me in.

18    I don't -- I don't understand what you're

19    saying.

20          INMATE MULLIN:  Okay.  When we're in a

21    social situation and people are conversing, and

22    one person indicates that that person is the

23    alpha male so to speak, then the alpha male can

24    get everybody else to keep quiet while the alpha

25    male speaks and makes his power and influence

26    and desires known.  Okay.  I was not given any

27    of this information from my parents or my school

31

1    teachers or the Catholic priests that I went to

2    confession to, and that lack of information kept

3    me immature to the point that I become

4    undifferentiated schizophrenic.  And then, just

5    before the crime occurred my parents pushed me

6    over the line into paranoid schizophrenia and

7    the crime spree happened.

8          PRESIDING COMMISSIONER BIGGERS:  All

9    right.

10          INMATE MULLIN:  I feel that that's wrong

11    on their part and that the State should have

12    punished my parents.  At least chastised them

13    publicly in the newspapers and on the

14    televisions and in the radio.

15          PRESIDING COMMISSIONER BIGGERS:  Yeah,

16    but don't you think that the fact that you

17    committed those acts is really creating a

18    problem for your parents at this point.  They

19    didn't actually do the killing.

20          INMATE MULLIN:  Both of my parents are

21    dead now.

22          PRESIDING COMMISSIONER BIGGERS:  But, did

23    they do the killing?

24          INMATE MULLIN:  They are responsible for

25    causing me to do it.

26          PRESIDING COMMISSIONER BIGGERS:  Well,

27    because they did not take you and give you

92

32

1  certain things that you feel that you were

2  missing?

3      INMATE MULLIN:  No, they put me in a

4  situation where I became mentally insane and

5  that insanity led to the crime spree.

6      PRESIDING COMMISSIONER BIGGERS:  But you

7  did pull the trigger, and you did the stabbing?

8      INMATE MULLIN:  Well -- no comment.

9      PRESIDING COMMISSIONER BIGGERS:  All

10  right.  Let's move into your social history

11  here.  We've got (indiscernible) talk a little

12  bit about your parents.  Both deceased, and I'm

13  sorry about that.  Do you have a -- do you have

14  an older sister?

15      INMATE MULLIN:  She's five years older

16  than me, if she's still alive.  I don't know.

17      PRESIDING COMMISSIONER BIGGERS:  Oh, you

18  have no contact with her?

19      INMATE MULLIN:  I haven't had contact

20  with her since, I guess, '75, '76.

21      PRESIDING COMMISSIONER BIGGERS:  Well I

22  see in here -- one of the reports in the file

23  here, you said that you broke up with your

24  family because you felt that the relationship

25  was unhealthy as you have described to me right

26  now.

27      INMATE MULLIN:  Right.

*94.*

48

1    Global Assessment Functioning ability and such
2    is something that you can take up with the next
3    psych.  And I understand Global Assessment
4    Functioning is a subjective score.  So in terms
5    of your GAF, under Axis I he notes that you have
6    hallucinogen induced psychotic disorder,
7    polysubstance abuse by history, and a
8    personality disorder not otherwise specified
9    with antisocial features.  That you have no
10   medical disabilities under Axis III, and gave
11   you a Global Assessment Functioning score of 65
12   which is still a moderately functioning
13   individual in the institution and would be in
14   the community also.  In terms of talking about
15   the life crime he notes that you are unable to
16   offer any insight into the emotional impact and
17   that when discussing your offenses you were
18   serious but matter of fact.  That you've been a
19   well-adjusted person in prison as a prisoner.
20   That your mental illness seems to be in stable
21   remission, so that the diagnostic impressions
22   under Axis I are stabilized so that you no
23   longer show any symptomatic.  That,
24        "In short, it appears that within
25        the controlled setting and
26        structured environment of the
27        Department you can function

95.

49

| | |
|---|---|
| 1 | without presenting a danger to |
| 2 | yourself or to others.  If |
| 3 | released in the community, he is |
| 4 | not likely to receive the level of |
| 5 | support he expects from members of |
| 6 | NA.  He has no other community |
| 7 | support, having discontinued his |
| 8 | contact with family members.  He |
| 9 | appears to be somewhat dependant |
| 10 | individual, who probably requires |
| 11 | a highly structured environment in |
| 12 | order to function best.  He is not |
| 13 | likely to find it easy to re-enter |
| 14 | the work environment at then age |
| 15 | 54, with no significant employment |
| 16 | history in the community. |
| 17 | Frustration with his reception in |
| 18 | the free world is likely to |
| 19 | increase his risk for future |
| 20 | acting out.  Mr. Mullin lacks |
| 21 | insight into factors other than |
| 22 | drug abuse and his mental illness, |
| 23 | which may have been involved in |
| 24 | his lethal behavior.  He tends to |
| 25 | project some of the blame for his |
| 26 | acting out onto his relationship |
| 27 | with his father.  In this |

96.

50

1          relationship he sees himself as

2          victim.  If paroled he should be

3          closely monitored for substance

4          abuse, and provided with mental

5          health treatment and support

6          services."

7    That brings us --

8          INMATE MULLIN:  That was written in 2001.

9          DEPUTY COMMISSIONER BLONIEN:  Two

10   thousand one.  And you think that your progress

11   in certain arenas would enable you to function

12   better in the community than four years ago?

13         INMATE MULLIN:  Oh, yeah, I would give

14   myself a Global Assessment Functioning score of

15   87.

16         DEPUTY COMMISSIONER BLONIEN:

17   Eighty-seven?

18         INMATE MULLIN:  Yes, I would.

19         DEPUTY COMMISSIONER BLONIEN:  That's a

20   highly functioning individual.

21         INMATE MULLIN:  Yes --

22         DEPUTY COMMISSIONER BLONIEN:  Not many

23   people in the community have 87.

24         INMATE MULLIN:  You know that would be an

25   interesting study for me to look into some day

26   --

27         DEPUTY COMMISSIONER BLONIEN:  You should,

97

73

1    truthfully who I am.  I really present myself

2    truthfully to you, and I'm not just acting to

3    make my parole seem proper to you.  I'm acting

4    the way I truthfully am.  I think I deserve my

5    parole.  I think I've worked hard for it, and I

6    think that I'd really benefit society and show

7    that rehabilitation is very very possible, and

8    in my case, it's already happened.

9        DEPUTY DISTRICT ATTORNEY RICO:  Nothing

10   further.

11       PRESIDING COMMISSIONER BIGGERS:  Thank

12   you very much.  And, Mr. Chladek?

13       ATTORNEY CHLADEK:  Chladek.  I have no

14   questions.

15       PRESIDING COMMISSIONER BIGGERS:  Okay.  I

16   will ask Ms. Symons to close for us, please.

17   And she'll be representing Santa Cruz County.

18       DEPUTY DISTRICT ATTORNEY SYMONS:  I'm

19   surprisingly offended by his statement, I

20   deserve my parole. I would like to commend the

21   Deputy Commissioner for the amount of work she's

22   obviously spent reviewing his file,

23   acknowledging the things that he's done in

24   prison.  I was going to say something that

25   (indiscernible) community services, as Mr.

26   Mullin has made the odd choice of choosing the

27   one program in Santa Cruz where I serve on the

*98.*

74

1    Board of Directors, and I can't imagine that
2    that program would ever accept a person like Mr.
3    Mullin into the program with his absence of
4    responsibility for his crimes.  He does nothing
5    but blame other people, and he changes who he
6    chooses to blame.  The Twelve Steps start with
7    admitting responsibility.  Rehabilitation starts
8    with admitting responsibility.  He murdered 13
9    people.  Surely a horrible crime, but those
10   crimes are especially heinous atrocious and
11   cruel.  The youngest little boy he killed was
12   four.  The eldest person he killed was in his
13   90s.  He killed a friend from high school.  He
14   killed his wife because she was a witness to the
15   first murder.  He was found guilty of two
16   premeditated murders, in separate
17   (indiscernible).  The disregard for human
18   suffering is astonishing.  The magnitude of the
19   crimes that he has committed cannot be
20   overstated, so I do not care how well he has
21   behaved in prison.  I understand that the prison
22   must, and that's important to the prison.  But I
23   don't think he'll even get there because of what
24   he has done.  Prison is not merely about
25   rehabilitation.  Sometimes it does achieve that,
26   and it's to be commended for that, but prison is
27   also about retribution.  He's spent 32 years of

99

80

```
 1   prison, certainly for the last 23 years. He's

 2   been here for 32 years. He's 59 years old. My

 3   client feels that he is ready for a date. He

 4   feels that he has been rehabilitated, and he's

 5   asking for a date today. And with that, we

 6   would submit it.

 7          PRESIDING COMMISSIONER BIGGERS:  Mr.

 8   Mullin?

 9          DEPUTY COMMISSIONER BLONIEN:. Let me

10   change the tape.

11          PRESIDING COMMISSIONER BIGGERS:  Okay.

12   Before we -- before you get started.

13     [Thereupon the tape was changed to tape two.]

14          DEPUTY COMMISSIONER BLONIEN:  Okay, we're

15   back on tape.

16          PRESIDING COMMISSIONER BIGGERS:  Thank

17   you, counsel. Mr. Mullins?

18          INMATE MULLIN:  Okay. In closing, I just

19   want to reiterate that I'm extremely sorry for

20   having committed the crimes, that they took

21   place over 33 years ago, and if I could I would

22   change all that. I would go back and make sure

23   that no one got hurt, that I never committed any

24   crime whatsoever. And, if the Board gives me a

25   date, and I really believe I deserve a date,

26   I'll do the best I can to prove that

27   rehabilitation is a reality and that I am
```

/100.

81

1    rehabilitated and that I'm grateful that my mind

2    has been healed and that I've been given a

3    second chance.  And I hope that God guides and

4    protects and improves the souls of the four

5    victims, and I hope that God blesses America.

6    Thank you.

7         PRESIDING COMMISSIONER BIGGERS:  We'll

8    recess at this point, and deliberate our

9    decision.  Thank you.

10                   R E C E S S

11                    --oOo--

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

101.

# EXHIBIT  C

102.

*ADDITIONS TO THE TEXT ARE INDICATED IN UNDERLINE ("....") AND
DELETIONS IN STRIKETHROUGH ("—") FORMAT*

BARCLAYS OFFICIAL CALIFORNIA CODE OF REGULATIONS
Title 15. Crime Prevention And Corrections
Division 2. Board of Prison Terms
Chapter 3. Parole Release
Article 3. Prisoner Rights

**INMATE COPY**

§ 2253. ~~Continuance.~~ Postponements, Continuances, and Stipulations of
Unsuitability.

~~A prisoner may request a continuance in person on any ground, including that there has
been insufficient time to prepare for the hearing. A request before the hearing shall be
made in writing to department staff who shall decide whether to grant the continuance. A
request during the hearing shall be made to the hearing panel who shall decide whether to
grant the continuance. Any request and reasons for continuances shall be documented.
Requests for continuances may be granted for good cause. Continuances should not be
granted because the prisoner is challenging the proceedings in court, unless the court has
specifically restrained further proceedings.~~

(a) General. The rights and interests of all persons properly appearing before a board
hearing are best served when hearings are conducted as scheduled. Occasional
circumstances may require the postponement or continuance of a scheduled hearing. It is
the intention of the board to recognize the need and desirability to occasionally continue
or postpone a scheduled hearing and to avoid the inconvenience and cost which occurs
when hearings are continued or postponed at or near the time at which they are
scheduled.

(b) Postponements. A prisoner may request a postponement for any reason. Requests
for postponements may be granted for good cause including, but not limited to, the
prisoner having pending litigation, insufficient time to prepare, or insufficient time to
accumulate necessary documents to present to the panel. Requests for postponements
shall be in writing and shall state the reason for the request.

(1) A request for postponement should be made at the earliest possible date that the
prisoner becomes aware of the circumstances leading to the request, but no later than 10
working days prior to the scheduled hearing. Such requests shall be considered by the
department unless the board has notified the department of the boards need to consider
the request. A request timely made in conformance with the above schedule shall be
presumed to be valid unless good cause to the contrary is shown. The number and
circumstances of any past postponements, continuances, or stipulations of unsuitability
are relevant factors in considering whether to deny a request for postponement. Staff shall
reschedule the postponed case at the earliest date consistent with the request, the
availability of the hearing panel, and the need to provide appropriate notice to affected
parties.

*ADDITIONS TO THE TEXT ARE INDICATED IN UNDERLINE ("....") AND
DELETIONS IN STRIKETHROUGH ("—") FORMAT*

(2) A request submitted less than 10 working days prior to the scheduled hearing shall be
considered by the board. Such request shall be presumed to be invalid unless the reasons
given were not or reasonably could not have been known prior to 10 working days before
the scheduled hearing. In order to avoid cost and inconvenience to properly appearing
parties, the board may take the testimony of such parties at the time previously scheduled.
The prisoner making such an untimely request shall be deemed to have waived his or her
right to be present at such statement, unless said prisoner requests and the board grants
his or her request to be present. A postponed hearing shall be rescheduled at the
convenience of the board, but at a time not to exceed two years unless the prisoner's last
appearance before the board resulted in the resetting of a subsequent hearing of less than
two years, in which case the hearing shall be rescheduled at a time no greater than that
period. The prisoner and the board may agree to any other appropriate time periods.

(c) Continuance of any hearing. A prisoner may request a continuance after the
commencement of the hearing for good cause which was unknown, or reasonably could
not have been known prior to the commencement of the hearing.

(1) In considering a request for a continuance, the board shall weigh the reasons for the
request, the need for the continuance, any inconvenience to the board, department,
District Attorney's Office, or victim's next of kin, and determine what will best serve the
interests of justice. If the board grants the request for continuance, it shall attempt to
impanel the same members when the hearing is reconvened. However, in requesting a
continuance, the prisoner shall be deemed to have stipulated that the board may, in its
discretion, reconvene a new panel and commence a new hearing.

(d) Stipulations of Unsuitability. A prisoner may stipulate to being unsuitable for parole
at or before any hearing except the Initial Parole Hearing. An offer to stipulate to
unsuitability at the Initial Parole Hearing shall be deemed a request for a postponement of
that hearing.

(1) Offers to stipulate to unsuitability shall be submitted in writing, shall state the
reasons that support unsuitability and the suggested period until the next hearing. The
prisoner shall sign the offer. Offers to stipulate to unsuitability shall be submitted to and
decided by the board as early as possible.

(2) If an offer to stipulate to unsuitability is submitted within 10 days of the time of
hearing, reasonable efforts shall be made to determine if it should be accepted in
sufficient time to vacate the scheduled hearing and notify affected parties. If the hearing
cannot be vacated in sufficient time, the offer to stipulate to unsuitability shall be
considered by the board at the time of hearing. The representative of the District
Attorney's Office, and any victim or victim's next of kin present for the hearing shall be
notified of, and given an opportunity to comment on the offer to stipulate to unsuitability.

Note: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections
1170.2 and 3041.5, Penal Code.

**BOARD OF PRISON TERMS**
**LIFE PRISONER HEARING RIGHTS**

STATE OF CALIFORNIA

---

1.  Kinds of Hearings.
    *Life (Parole Consideration) hearings* decide whether you should get parole. A *progress hearing* decides whether your parole date should be moved up. A *rescission hearing* decides whether your parole date should be taken away or moved to a later date.

2.  Right to a Hearing.
    One year before your EARLIEST possible parole date, a *Parole Suitability Hearing* will be held. You will have another hearing each year after that unless the Board of Prison Terms (Board) decides that you won't be ready for parole for a longer period of time.

3.  Rights at Hearings.
    You may come to your hearing to ask and answer questions. You can decide whether to talk or not. If you do not come to the hearing, the Board will hold the hearing without you.

4.  Right to a Lawyer.
    You may have a lawyer at hearings (except *progress hearings*). Having a lawyer is up to you. If you do not have enough money to pay for a lawyer, the state will get you one free.

5.  Notice.
    You will be told the week of the hearing at least a month before it is held. The day, time, and place will be told to you as soon as possible.

6.  Witnesses.
    At *rescission hearings*, you can ask for witnesses. These are people who know you or the facts of your case. Witnesses may speak for you or against you. At parole consideration and progress hearings, you cannot have witnesses.

7.  Others who may be at hearings.
    At *parole consideration hearings*, the *District Attorney* (DA) from your trial may come or send someone in his/her place. Your trial lawyer and the judge will also be told the hearing date. The victim, their family, and their lawyer may come to the hearing to talk to the Board.

8.  Reading your C-file.
    You may read or be told about most of your C-file. If you are not allowed to see the file, you can appeal. You can write notes about things in your C-file and show these at your hearing. You can also bring your own papers. At *rescission hearings*, you may ask for others to talk or to bring papers to show to the Board.

9.  Getting help for hearings.
    You may get help to get ready for your hearing. If you have problems reading or talking at the hearing, help will be given to you.



BOARD OF PRISON TERMS                    STATE OF CALIFORNIA
LIFE PRISONER HEARING RIGHTS

---

10.   Postponing Hearings.
      *Postponing* means putting off your hearing date. You may ask the Board to postpone the hearing
      by writing or telling us. The Board will decide if you have a good reason. If the hearing has
      already started, it can be postponed if: (1) there is not enough information at the hearing, or (2)
      the Board cannot make a decision because you have new charges against you.

11.   Fairness.
      You have a right to fairness at your hearing. If you do not think someone on the Board is being
      fair, you can ask for someone else. The Board will decide if someone else should hear your case.

12.   Hearing Record.
      You may have a copy of the hearing record if you ask for one. The record will tell all the facts
      and the reasons for the decision.

13.   Appeal.
      You have 90 days to appeal the hearing decision using a BPT form 1040.

You can read the laws about your hearing. You can find the laws at California Penal Code Sections
3041 to 3043, and California Code of Regulations, Title 15 Division 2.

---

Terms:
              Hearing = meeting
              *Parole Consideration Hearing* = meeting to decide if you should get parole
              *Progress Hearing* = meeting to decide whether to move up your parole date
              *Rescission Hearing* = meeting to decide whether to cancel or change your parole date
              Board = the Board of Prison Terms or BPT
              Rights = things you are allowed
              Witnesses = people who come and tell what happened. They may be for or
                          against you.
              District Attorney = the lawyer against you (the DA) at your trial
              C-File = all the papers about your time in prison
              Postponing = putting off
              Hearing Record = written copy of what was said at the hearing

---

I have read/been told my hearing rights in a way I understand. I had a chance to ask questions about
things I did not understand.

*Received from CCI Hyland on 11/28/2005*

Signed                          CDC #                    Date

I explained these rights to the inmate/parolee. I gave him/her a chance to ask questions, and answered all
of his/her questions.

---

Signed (Staff)                  Title                    Date

NAME                            CDC#                     PRISON          DATE  /106
BPT 1002 (REV.01/02)                      2

# EXHIBIT  D

Herbert W. Mullin
# B-51410
Rm.# 8-249up
Wednesday, 2/2/2005

Dr. Vance Norum, M.D.
Chief Psychiatrist
Mule Creek State Prison

Dear Dr. Vance Norum:

I have a question for you. I am preparing for my Parole Consideration hearing with the Board of Prison Terms in December of this year, 2005. The last time I met with them was in December of 2001.

Is it possible that you might arrange for a 'one-on-one' Psychological Evaluation to take place concerning my present psychological condition ?

The last time I was involved in a one-on-one Psychological Evaluation was in 1976. The Doctor's name was Dr. Gordon Haiberg. The meetings were two hours long once each week, and we stayed at it for approximately nine months. (frome October 1975 through to July of 1976).

Scince it has been 28 years scince that experience, and scince I have been in prison for approximately 32 years, I feel justified in requesting that a one-on-one Psychological Evaluation take place at this time.

I hope that you will concider my request. Maybe you have a few ideas of your own pertaining to how this type of situation should be handeled. Your decisions and suggestions with be most welcome.

With kind regards,

*H. W. Mullin* —

Herbert W. Mullin

2/2/2005

(dated)

108

Herbert William Mullin
CDCR-# B-51410
Rm.# 8-249 up
Monday, 1/9/2006

Dr. L. Lipon, M.D.
Chief Psychiatrist
Mule Creek State Prison
Ione, California  Zip # 95640

Dear Dr. R. Lipon, M.D.:

I have some questions for you.  I am preparing for my Parole
Consideration Hearing.  It should occur within a few months.  The last
time I met with them was in December of 2001, some Four (4) years ago.

Is it possible that you might arrange for a 'one-on-one' Psych-
ological Evaluation to take place concerning my present psychological
condition ?
The last time I was involved in a 'one-on-one' Psychological Eval-
uation was in 1976 (approx.).  The Doctor's name was Dr. Gordon Naiberg,
M.D.  The meetings were two hours long, once each week, and we stayed
at it for approximately nine (9) months; (frome October of 1975 through
to July of 1976).

Scince it has been approximately 30 years scince that experi-
ence, and scince I have been in California State Prison for approximately
thirty-three (33) years, I feel justified in requesting that a 'one-on-
one' Psychological Evaluation take place at this time.

I hope that you will consider my request.  Maybe you have a
few suggestions &/or ideas of your own pertaining to how this type of
situation should be handled.  Your decisions and suggestions will be
most welcome.

With kind regards,

*H. W. Mullin*

Herbert William Mullin

1/9/2006
(dated)

Herbert William Mullin
Mule Creek State Prison
# B-51410   Rm.# 8-249 up
4001 Highway # 104
Ione, California  95640

February 9th, 2006   Thursday

Board of Parole Hearings
Department of Corrections and Rehabilitation
State of California
1515 'K' Street, Ste. # 600
Sacramento, California  95814

Dear Board of Parole Hearings:

    I was notified by my Correctional Counselor, Ms. E. Hyland,
and by the Board of Parole Hearings Desk Secretary & Records Officer
Ms. D. Chavier, that my forthcoming appearance with the Board of Parole
Hearings is scheduled (tentatively) for March 22nd, 2006, a Wednesday.

    I had written to them wondering why I had not been given a
'Parole Consideration Psychological Evaluation' in preparation for my
Board of Parole Hearings appearance. They notified me that your org-
anization had not requested one for this hearing. They further inform-
ed me that I should contact your organization and explain why I think
you should schedule a 'Parole Consideration Psychological Evaluation'.
That is why I am writing to you today.

    The last time I received a 'Psychological Evaluation' in prepara-
tion for a Parole Consideration Hearing was on July 26th, 2001.  That
was approx, 4½ years ago.  On a customary basis, the Calif. Parole
Boards require no XXXXXXXX more than three (3) years between the
Psychological Evaluations for Parole Consideration.

    I have been incarcerated for approximately thirty-three (33) years.
Now would be a very good time for the Department of Corrections and
Rehabilitation to do a very thorough and in-depth Psychological Eval-
uation in preparation for Parole.  Possibly a 'one-on-one' three month
evaluation, followed by a panel evaluation, would be warrented ?

    In order for me to present myself properly before the forthcoming
Parole Consideration Hearing tribunal I will have to have a good Psych-
ological Evaluation, one that reccommends parole in my favor.

    This is my official request to the Board of Parole Hearings,
Department of Corrections and Rehabilitation, State of California;
I request that you schedule a regular &/or special Psychological
Evaluation in preparation for Parole for me, Herbert William Mullin.

With kind regards,

*H. W. Mullin*

Herbert William Mullin

2/8/2006
(dated) HWM

110.

Herbert William Mullin
Mule Creek State Prison
# B-51410  @  Rm.# 8-249up
4001 Highway # 104
Ione, California  95640 zip

May 17th, 2006    Wednesday

Board of Parole Hearings
Department of Corrections and Rehabilitation
State of California
1515 'K' Street, Ste.# 600
Sacramento, California  95814 zip

To the Chairman of the Board of Parole Hearings
    and to the Board of Parole Hearings, en banc    :

    With this letter to you I am formaly requesting a 'CONTINUANCE'.
According to the California Code of Regulations, Title # 15, Crime and
Prevention and Corrections; Division # 2. Board of Prison Terms. ;
Chapeter # 3. Parole Release. ;  Article # 3. Prisoner Rights. ;
Subsection # 2253.  Postponements, Continuances, and Stipulations of
Unsuitability. ;  IN SUBSECTION  (c)(1) we find that the XXXIXXIX
petitioner for parole may request a continuance and that the board
"MAY, IN ITS DISCRETION, RECONVENE A NEW PANEL AND COMMENCE A NEW
HEARING", in considering a request for a continuance.

My reasons for making this request are as follows:

1).  The 'Five Year Denial' decision is not final until July 20th, 2006.
     On page # 91 of my copy of the Board of Parole Hearing Transcripts
     at Mule Creek State Prison, dated March 22nd, 2006, it states that
     Mullin will be notified promptly if, prior to that date, the
     decision is modified.

2).  Calif. Penal Code Sections #s 3041 to 3043, as well as Calif. Code
     of Regulations, Title 15, Division 2, both indicate that I have
     a 'Right to Fairness at my Hearing', and that if I do not think
     that the Board of Parole Hearings is being fair I can ask for
     someone else.  Therefore this request for a 'CONTINUANCE'.

3)   The BPT Life Prisoner Hearing Rights, (BPT-1002; REV. 01/02), was
     given to me by my Counselor on November 28th, 2005, i.e. CCl Hyland.
     # 8. of that list indicates that I have the right to bring written
     papers of my own to the hearing and discuss them with the board.
     I did this, but was not given the right to show or discus the
     matterial I had brought.  The denial decision stating on page #
     82 and extending to /through page # 91 indicates that the Board
     did not even concider or understand my written statements.  They
     did not question me about them during the hearing. That is not fair.

4)   I contend that 'Ineffective Assistance of Counsel' at & before
     the BPH Parole Concideration Hearing of 3/22/2006 added to the
     unfairness of the hearing and entitles me to a 'CONTINUANCE'.
     (Note the exhibits attached to this letter.)

5/17/2006                          H.W.Mullin
_____                        _____
(dated)                            Herbert William Mullin

                                                    | III.

page # 2                                    Herbert William Mullin
May 17th, 2006                              CDCR # B-51410

'REQUEST FOR CONTINUANCE'

Concerning the idea: "PREMEDITATED Five (5) Year Denial" .

It appears that the CDCR Board of Parole Hearings did not
ask for an 'up-to-date' Psychological Evaluation.  The one relied
upon was dated July 26th, 2001, and signed by a 'contract'psychologist
named Dee Shafer, Ph.D., Psy # 7540.

The Board of Parole Hearings new that a favorable outcome of the
Parole Consideration Hearing was impossible with the negative report
written by Dee Shafer five (5) years prior to the Parole Consideration
Hearing.

A 'REQUEST FOR CONTINUANCE' at this time is warrented.
Truth, Justice, and Honesty, as 'Principles' and as 'attitudes' within
the California Department of Corrections and Rehabilitation should
dictate that an 'up-to-date' Psychological Evaluation be scheduled
for Herbert William Mullin, CDCR # B-51410, as soon as possible,
in preparation for his 'CONTINUANCE- Board of Parole Hearings Parole
Consideration Hearing' with a new un-biased panel & a new hearing.
(Calif. Code of Regulations.  Title 15.  Division 2.  Chapter 3.
Article 3.  Subsection # 2253, re: (c)(1).)

The Board of Parole Hearings knew before the Parole Consideration
Hearing took place that the 5 year old negative Psychological Evalua-
tion would cause another 5 year denial to take place.  That is
Prejudicial Misconduct on the Board of Parole Hearings part.  It
trully justifies the issuance of a 'CONTINUANCE' at this time.


_H. W. Mullin —_

Herbert William Mullin

_5/17/2006_
(dated)


$\sqrt{112.}$

CONCERNING MENTAL HEALTH EVALUATIONS
CDCR BOARD OF PAROLE HEARINGS
RE: Herbert William Mullin
CDCR # B-51410
Tentative Hearing Date: March 22, 2006 ; Wednesday


I read the section in the Diagnostical Statistics Manual-IV, (DSM-IV), pertaining to "Global Assessment of Functioning (GAF). The rating of overall psychological functioning on a scale of ' 0-100 ' was opperationalized by Dr. Luborsky in the Health-Sickness Rating Scale, (HSRS), in the year 1962. Dr. Spitzer and his colleagues developed a revision of the HSRS called the Global Assessment Scale (GAS). A modified version of the GAS was included in the DSM-III-R, and was known as the GAF Scale, our present Global Assessment of Functioning Scale.

I have read all the material in the pertinent sections pertaining to the Global Assessment of Functioning. Based on what I know about myself and the world I live in, I trully believe that I now deserve a GAF of '87'.
I quote the book: "If symptoms are present, they are transient and expectable reactions to the psychosocial stressors; no more than slight impairment in social, occupational, or school functioning."

I believe I am efficient and effective as a worker. I have proved this in my work performance record.
I believe I am conscientious and dependable as a member of my Alcoholics Anonymous Group. I am also becoming involved in the possibility of joining an Al-Anon Family Group. I am currently studying their 'Big Book'.
As soon as I am paroled I will no doubt become a weekly speaker at the Alcoholics Anonymous Group meetings, as well as the Al-Anon Family Group weekly meetings. I am a 'positive-thinking' type of speaker that enjoys bringing the ideas of hope & rehabilitation into the weekly discussions.

I am not a danger to society. I have learned the lessons that life has had to teach me while being incarcerated in the California Department of Corrections and Rehabilitation. I have proved beyond a shaddow of a doubt that I am capable of living a law abiding life in the free society of Santa Cruz County, California. I would be a worthwhile citizen, teaching others that breaking the law is wrong, and obeying the law is right. I would get involved in whatever programs are availeable so that I could help others stay away from a life of crime-prison, &/or drug-alcohol abuse. I am possitive that I could make a living, one that would show that I am an educated and culturaly sensitive person.

Lastly, I want to appollogise for my part in the commission of the crime-spree. I trully am sorrowful and remorseful every day. I hope that the God of America will guide, protect, and improve the victims perfectly. I hope that I can be forgiven and that I can be paroled (RHAPP) immediately as a rehabilitated, worthwhile citizen.

Yours very trully,

3/10/2006

HERBERT W. MULLIN

DATED

Board of Parole Hearings
March 22nd, 2006, Wednesday

Herbert William Mullin
C.D.C.R. # B-51410

"Insight into the causative factors of the crime" .....

First of all I want to express true sorrow & true remorse for my part in the commission of the crime spree.  I trully am sorrowful and remorsefull in my daily prayer life.  I trully wish that I had not committed the crimes, and I hope that the God of America will guide & protect & improve the souls of the victims as best he can. God Bless America.

Secondly I will address the issue of 'insight'.
1)  I needed to belong to an organization such as Alcoholics Anony-
    nous &/or Al-Anon Family Groups.

2)  I needed to avoid associating with my former family & former friends.

3)  I needed to find sponsors &/or a sponsor whom I could trust.
    A.A. & Al-Anon could have supplied that support.

4)  I needed to find & maintain employment .....
    a)  with a good income I could have provided for good housing
    b)  also good medical & dental care
    c)  also good financial planing for the future
    d)  also a good social life

5)  I needed to develope self-reliance, self-confidence, and a
    sence of self-dignity & normal pride.  I needed to develope a
    personal sence of self-fullfillment.

6)  Now, with my membership in A.A., Alcoholics Anonymous, and also
    in Al-Anon Family Groups, I can & could develope a good social
    network, a good daily living structure, a network of good friend-
    ships, some good aditional-income activities, good employment,
    and posibly work towards owning my own home.

In closing I want to say that I trully believe that during my 33+ years in the California Department of Correction & Rehabilita-tion, I have trully rehabilitated & re-educated myself.  I am a very responsible & efficient person who is certainly deserving of his release from prison after all these years.  I would become a hard working, tax paying, citizen; someone that would benefit society by my good example & effective workmanship.
        I trully hope that the Board of Prison Hearings will grant a RUAPP- Release Upon Approval of Parole Plans, to me, this 59 year old California Born, United States of America citizen.

Thank You for your concideration in this matter.

                                    _H. W. Mullin_____
_3/21/2006_ —                        Herbert William Mullin
    (dated)

                    GOD BLESS AMERICA

MITIGATING CIRCUMSTANCES
Title 15  -  # 2202- (a), (2), (3).

#1.)  The inmate participated in the crime under partially excusable
      circumstances which do not amount to a legal defense.

#2.)  The inmate had no apparent predisposition to commit the crime
      but was induced by others to participate in its commission.

#3.)  The inmate has a minimal history of criminal behavior.

#4.)  The crime was committed during an unusual situation that is
      unlikely to recur.

#5.)  The crime was committed during a brief period of extreme mental
      &/or emotional stress and trauma.

        I believe that these Mitigating Circumstances pertain to
my case.  I believe I deserve a parole.

                            With Kind Regards,

                            H.W.Mullin —
                            Herbert William Mullin

"Determination of Suitability"
   Title 15 - Article 5
    # 2281 - Determination of Suitability
     (d) - Circumstances Tending to Show Suitability

1)  No Juvenile Record - The prisoner does not have a record of assaulting others as a juvenile, or of committing crimes with a potential of personal harm to victims .

3)  Signs of Remorse - In my prayers every day, several times each day, I show signs of true & honest scrrow and remorse.

4)  Motivation for the Crime -
    The prisoner committed his crimes as the result of significant stress in his life ; especially because the stress had built over a long period of time .

6)  Age - The prisoners present age reduces the probability of recidivisim . 25 years old at the time of the crime, yet now the prisoner is 59 years old.

7)  Understanding & Plans for the Future -
    The prisoner has made realistic plans for release.
    I have developed marketable skills that can be put to use upon release.

8)  Institutional Behavior -
    My work records, Alcoholics Anonymous attendance reports, STOP* Stay Out of Prison Program reports, and Arts In Corrections Reccord, all indicate an enhanced ability to function normaly and naturaly within the Law upon release from prison.

    For the past 32½ years I have worked with the California Department of Corrections (& Rehabilitation) to rehabilitate and to re-educate myself socialy, psychologicaly, and culturaly. I know beyond a shadow of a doubt that I am OK.

    I truly deserve a PAROLE/ RUAPP. Release Upon Approval of Parole Plans.

             With Kind Regards,

             H. W. Mullin —

             Herbert William Mullin

*[handwritten annotations:]* RE: Parole Consideration Hearing on 3/22/2006 Wednesday 10:30 AM · Received on 2/15/06 Wednesday afternoon from CCI E. Hyland

```
┌─────────────────────────────────────────────┐
│          MULE CREEK STATE PRISON             │
│              Ione, California                │
└─────────────────────────────────────────────┘
```

## BOARD OF PRISON TERMS
## LIFE-TERM MENTAL HEALTH EVALUATION
Revised 1998
### FOR THE CALENDAR YEAR OF 2001

## PSYCHOSOCIAL ASSESSMENT

### IDENTIFYING INFORMATION

| | |
|---|---|
| Name: | MULLIN, Herbert |
| CDC No.: | B-51410 |
| DOB: | 4/18/47 |
| Race: | Caucasian |
| Sex: | Male |
| Marital: | Single |
| DOE: | 7/26/01 |
| Offense Date: | 11/72-2/73 |
| Arrest Date: | 2/13/73 |
| Sentencing Date: | 9/18/73 |
| Crime: | Murder, First, 2 Counts |
| | Murder, Second, 9 Counts |
| Sentence: | 5 Years to Life |

*INMATE COPY*

Mr. Mullin is a 54-year-old Caucasian male serving five years to life for eleven separate murders. He is a slight man, appearing older than his stated age. He is soft-spoken and missing some front teeth. The inmate was cooperative with the evaluator.

### SOURCES OF INFORMATION
The inmate's Central and Medical Files were reviewed, and he was interviewed on 7/26/01.

### DEVELOPMENTAL HISTORY
Mr. Mullin did not report any unusual early childhood events or traumatic experiences. However, he indicated that he had had a difficult relationship with his father who he stated bullied him. He believed it was significant that his father had served as a drill sergeant in the Marines.

### EDUCATION
According to Mr. Mullin, he has an associates degree from Cabrillo Community College. However, he subsequently attended classes at San Jose State University, but did not graduate. He reported that while in CDC he has completed courses on vocational baking, vocational landscaping and gardening and vocational mill and cabinet making.

*[handwritten:]* 117.

*FAMILY HISTORY*

The inmate comes from an intact family. Both parents are now deceased, but he has a surviving older sister. He reports that he has had no contact with his sister since 1976. According to the inmate he broke off all contact with his sister and his parents in 1976 because he believed his family relationships were unhealthy for him. He said he did this with the support of his therapist. He stated that he still did not wish to have contact with his sister. The inmate denied any problems with substance abuse, sexual abuse, or violence in the home when he was growing up. He stated that he had no family criminal history. He said his father was hospitalized after World War II with shell shock, but that there was no other family history of psychiatric problems or treatment.

*PSYCHOSEXUAL DEVELOPMENT & SEXUAL ORIENTATION*

Mr. Mullin said he is heterosexual. He indicated that he had his first heterosexual intercourse at age 20 and thereafter had occasional, one-time encounters, but no significant relationships. He acknowledged a period of homosexual behavior over approximately one year when he was age 21. He said he had sexual contact with three or four different partners during that time. He indicated that these contacts occurred once or twice per month.

He initially denied any subsequent homosexual activity. When confronted with the fact that his records contain a disciplinary report for homosexual behavior, he acknowledged this activity, but denied any homosexual urges or interest. He simply said that he foolishly agreed to the sexual contact when the other inmate solicited his participation.

*MARITAL HISTORY*

The inmate has not been married and does not have any children.

*MILITARY HISTORY*

Mr. Mullin has not served in the military. As a young man, he applied for and received conscientious objector status, which he said was a source of considerable conflict with his father. He changed his mind, and later attempted to enlist during the period of time when he was committing his offenses.

*EMPLOYMENT/INCOME HISTORY*

The inmate has a history of several different employment situations in the community; however, all were at a substantially lower level than would be expected from his education. He said he believed he was naïve and immature when living in the community, and that his lack of a stable job history was related to this immaturity and the use of LSD and marijuana. The inmate reported that his longest employment was as a truck driver at Goodwill Industries between 1970-71.

*SUBSTANCE ABUSE HISTORY*

According to the inmate, he first used alcohol at the age of 15 and continued thereafter on an occasional basis. He said he began using marijuana when he was in college and used it on weekends with friends. He indicated that he used marijuana only occasionally after the age of

MULLIN, Herbert                        B51410                              7/26/01
                        BOARD OF PRISON TERMS EVALUATION

21. He initially said he had taken LSD approximately three times a year between 1967 and 1972. When asked about his earlier reports that he had purchased and used 50 doses of marijuana during the period when he committed his offenses, he acknowledged the purchase and consumption of these drugs, but said that the LSD was of poor quality. He denied using any other drugs.

### PSYCHIATRIC & MEDICAL HISTORY

According to Mr. Mullin, he was first hospitalized at Mendocino State Hospital in 1969 when he was 21. He said he was also treated on an outpatient basis at Santa Cruz County Mental Health from 1969 to 1971 and hospitalized for approximately three weeks in San Luis Obispo sometime in 1969 or 1970. He could not provide any information as to the cause of the symptoms he was experiencing which precipitated this treatment, except he recalled that his first hospitalization at Mendocino State Hospital was precipitated by the onset of echolalia when he was having dinner with his family. He said he began repeating the words and actions of family members and that his family had him hospitalized.

Mr. Mullin was a participant in CCCMS from 11/4/96 until 3/23/98. He was typically seen only once every three months. His CDC records indicate that he was placed on CCCMS to prevent decompensation. No symptoms were reported or treated. He was not prescribed psychotropic medication.

He is not currently in treatment and is not taking any medication. His mental health records indicate that his psychiatric status was considered stable prior to his discharge from CCCMS.

On his own initiative he has participated regularly in Narcotics Anonymous and also in the Stay Out of Prison Program at Mule Creek State Prison. The latter is a self-help program.

### PLANS IF GRANTED RELEASE

Mr. Mullin reported that he has approximately $18,000 in savings and investments as a result of an inheritance from his father. He stated that in addition to these funds, if paroled, he will go to an employment agency and find a job. He did not expect to have any difficulty despite his many years' absence from the job market. He cited his good work record in CDC as justification for this confidence. He also believed that the Narcotics Anonymous organization would provide him with assistance in obtaining housing and job placement as well as a high level of emotional and logistic support in coping with day-to-day problems. He does not plan to establish contact with his sister. He stated that he did not have any friends outside of prison.

## CLINICAL ASSESSMENT

### CURRENT MENTAL STATUS/TREATMENT NEEDS

The inmate was oriented and alert. Affect was appropriate. He denied any current psychological symptoms. He acknowledged that he experienced auditory hallucinations during the period of his offenses and visual hallucinations while under the influence of LSD. He said the auditory hallucinations included communications from his victims telling him to kill them and also communication from his father telling him to kill others.

MULLIN, Herbert                          B51410                          7/26/01
BOARD OF PRISON TERMS EVALUATION

1119.

4

He denied any experience of depression, either while incarcerated or previously. He stated he had never attempted to commit suicide. He said he did not have any difficulty with anxiety symptoms.

Mr. Mullin denied any aggressive behavior or impulses. He stated that he had learned to manage his anger by accepting his life situation. He said in addition, he had learned to count to ten and use affirmations to manage anger. He also said he kept in mind "who I'm dealing with" (i.e.) the fact that he is at a level three prison.

He stated that he had suffered from undifferentiated Schizophrenia in the past, but believed he had healed himself from that disorder. He said he enjoyed his day-to-day life and received gratification from conversations with other inmates.

### DIAGNOSTIC IMPRESSIONS (DSM IV)

| Axis   | I    | 292.12 | Hallucinogen-Induced Psychotic Disorder |
|--------|------|--------|------------------------------------------|
|        |      | 305.90 | Polysubstance Abuse by History |
| Axis   | II   | 301.9  | Personality Disorder NOS with Antisocial Features |
| Axis   | III  |        | None known |
| Axis   | IV   |        | Incarceration |
| Axis   | V    |        | Global Assessment of Functioning (GAF) = 65 |

### REVIEW OF LIFE CRIME

Mr. Mullin's version of his offenses was consistent with that given in the CDC records. He stated that he was remorseful for his offenses. However, he also said that they took place as a result of delusional beliefs, i.e., he believed that he had to kill some of the victims to prevent a terrible earthquake from devastating San Francisco. He said about three to four months after he was arrested, he realized that those ideas were delusional. He was unable to offer any insight into the emotional impact of this realization. When discussing his offenses, he was serious, but matter-of-fact. Although he stated he was remorseful, there was no affective response as he talked about his history.

### ASSESSMENT OF DANGEROUSNESS

Within the Department of Corrections, Mr. Mullin has been a well-adjusted prisoner. He has no disciplinary reports for violent or aggressive behavior. In fact, there are only two disciplinary reports in his chart, both from early in his incarceration. One of these occurred in 1986 and involved the possession of exacto knives and needles which he told this evaluator he used in craft projects. He stated that he used the bird parts which were found in his possession at the same time for religious ceremonies. His only other disciplinary report was in 1983. This was for what was apparently a mutually consenting sexual contact with another inmate.

The inmate's mental illness seems to be in stable remission and has been for a significant period of time without treatment. There is no indication in his CDC records that he has abused substances during his incarceration. In short, it appears that within the controlled and structured environment of CDC, he can function without presenting a danger to himself or others.

MULLIN, Herbert                    B51410                          7/26/01
                    BOARD OF PRISON TERMS EVALUATION

1.20

If released to the community, he is not likely to receive the level of support he expects from members of Narcotics Anonymous. He has no other community support, having discontinued his contact with family members. He appears to be a somewhat dependant individual who probably requires a highly structured environment in order to function best. He is not likely to find it easy to reenter the work environment at the age of 54 with no significant employment history in the community. Frustration with his reception in the free world is likely to increase his risk for future acting out. Mr. Mullin lacks insight into factors other than drug abuse and his mental illness which may have been involved in his lethal behavior. He tends to project some of the blame for his acting out onto his relationship with his father. In this relationship he sees himself as a victim.

### CLINICAL OBSERVATIONS/COMMENTS/RECOMMENDATIONS

If paroled he should be closely monitored for substance abuse and provided with mental health treatment and support services.

Respectfully Submitted,

Dee Shafer, Ph.D.
Contract Psychologist
Psy 7540

DS:vk

Orig:  C-File
cc:   Med. File
      C & PR
      BPT
      CC I
      Inmate

MULLIN, Herbert                    B51410                    7/26/01
BOARD OF PRISON TERMS EVALUATION

# EXHIBIT  E

122

Herbert William Mullin
Mule Creek State Prison
4001 Highway # 104
# B-51410  Rm.# 3-249up
IONE, CALIFORNIA  95640

December 2nd, 2005    Friday


PAROLE PLANS
_____

#1.)   Contact the Santa Cruz County Parole Unit
Address:  8030 Soquel Avenue, # 102
          Santa Cruz, California  94103

#2.)   Contact the 'NEW LIFE COMMUNITY SERVICES' organization
Address:  707 Fair Avenue
          Santa Cruz, California  95060
    (This organization provides food, shelter, and clothing for parolees;
    they also provide employment counseling & referal, i.e., job place-
    ment.)

#3.)   Contact the Santa Cruz County 'One Stop Center', re: Employment.
Address:  1040 Emiline Street
          Santa Cruz, California  95060
    (This is in addition to &/or IEXXIXM in lieu of my hoped for associa-
    tion with the 'NEW LIFE COMMUNITY SERVICES' organization.

#4.)   I am a graduate of San Lorenzo Valley High School, Class of 1965.
    Upon receiving my RUMP I would get in touch with the Boulder Creek,
    Ben Lomond, and Felton Alcoholics Anonymous Groups to apply for
    admission to their weekly meeting schedules.  Boulder Creek, Ben
    Lomond, and Felton are the three major towns in the San Lorenzo
    Valley.  During the first few months of my parole, these organiza-
    tions would be affording me a great deal of social and moral support.

#5.)   My Parole Agent would no doubt have many suggestions pertaining to
    how I might improve my status in the Santa Cruz County community.
    I will honestly work diligently to satisfy the Parole requirements
    as well as the expected suggestions.


        I am an honest, hard-working individual.  I believe in the
American Way of Life.  I believe in Capitalism & the Democratic Republican
Form of Government.  I Pledge Alligance to the Republic of the United
States of America.  I promise to be a hard-working, tax paying, worthwhile
citizen.  I will obey the Laws of the United States of America, the State
of California, and Santa Cruz County.  I hope that I can be 'Paroled' &/or
'Released' from Prison as soon as is possible.  I look forward to living
my life as a free & respectable citizen in my old home town of Boulder
Creek, the Gateway to Big Basin Redwood State Park, in northen Santa Cruz
County.

                              With Kind Regards,

12/2/2005                     H. W. Mullin ___
_____             _____
   (dated)                    Herbert William Mullin

                                              /123

# New Life Community Services, Inc. ♿

**Programs for Families and Individuals In Need**
**Addiction Treatment, Shelter and Transitional Programs for the Homeless**
**707 Fair Avenue, Santa Cruz, California  95060  (831) 427-1007**
**717 Fair Avenue, Santa Cruz, California  95060  (831) 458-1668**


Dear,  Mr. Mullin


Thank you for your interest in our drug and alcohol treatment program.  Enclosed is a brochure containing information about our program.

The next step would be to contact your probation officer, parole agent or attorney and have them contact our intake department to set you up with an appointment for an interview. Your other option is to call us when you are released and set up an appointment for an interview.

Sincerely,

Sandy M. Boewer
Administrative Assistant

124

l

.CS serves as
from local,



irely by
me

le, starting
ty for room,
treatment,
ement,
y cost

imunity
· life.
tion to:



**New Life Community Services**
**707 Fair Avenue**
**Santa Cruz, CA 95060**
**(831) 427-1007**
**Fax: (831) 454-0545**
**E-mail: newlifehope@hotmail.com**

### Directions:

NLCS is located on the west side of Santa Cruz. From Highway
1 (Mission Street) northbound, turn left on Fair Avenue and
proceed to the corner of Fair and Delaware Street.



*Addiction Treatment Center*
*and Homeless Shelter*

# New Life
## Community Services

125

**ervices provides over 12,000 days worth of**
**d over 26,000 meals each year**

*cean, New Life Community Services offers hope in place of*
*rtive environment where broken lives are put back together.*



**er and**

### Residential Program

*fit program*
*need of emer-*
*served addicted*
*making NLCS*
*a Cruz County*

*nd reentry for*
*childen.*

*twelve-step*
*ment of*
*certified drug*

*dults.*

- Assessment for chemical dependency, psychosocial and other life-impacting problems
- Individual treatment and service plans
- Individual, group, and peer counseling as requested
- On-site twelve-step meetings
- Time management and living skills curriculum
- Bilingual/multi-cultural services
- Recreational therapy
- Family substance abuse education
- Toxicology screening/monitoring
- Transitional housing services
- Drug/alcohol reentry education seminars and counseling
- Residents supported in seeking employment
- Sliding scale fees
- Aftercare support and alumni association

### Outpatient Program

- Individually structured programs
- Flexible programming
- Able participants required to seek and/or hold outside jobs
- Relapse prevention classes
- Group, individual, and crisis counseling
- Couples and family counseling
- Bilingual/multi-cultural services
- Services covered by some insurance policies
- Criminal justice referrals accepted



126

Herbert William Mullin
Mule Creek State Prison
4001 Highway # 104
CDCR # B-51410  Rm.# 3-249
IONE, California  zip # 95640
November 18th, 2005    Friday

New Life Community Services
707 Fair Avenue
Santa Cruz, California  95060

Dear Sandy M. Boewar

      I received your November 4th, 2005 letter.  Thank You for responding to my letter of inquiry.

      I was scheduled to meet with the California Department of Corrections and Rehabilitation's Board of Parole Hearings in December of 2005.  Due to their exorbitant work load, my Parole Consideration Hearing will not take place until the early spring of 2006.

      Your New Life Community Services brochure, which you had included with your letter, indicated that you provide food, shelter, and clothing, as well as employment counseling & referal.  That sounds really very good.  I am definately looking forward to being interviewed by your Intake Department.

      I have been in the California Prison System for the past $32\frac{1}{2}$ years, approximately.  I am 58 years old.  I have been actively involved in our prison's Narcotic's Anonymous, and their Alcoholic's Anonymous Groups for the past 10 years.  I am an active member and I get good participation credits and do my fair share of talking at the meetings.

      I will be asking my Parole Board to parole me to Santa Cruz within what they call 'the RUAPP system'.  That means 'Release Upon Approval of Parole Plans'.  If they agree to parole me in their RUAPP system, I will contact you to determine how we can proceed with the interview at your Intake Department, and my submission of my initial registration fee.

      Thank You again for your response letter & brochure.  I will write to you again once the Board of Prison Hearings determines wether or not I fulfill their requirements for RUAPP.

      Please feel free to contact me and ask any questions you might have.

With Kind Regards,

11/18/2005

(dated)

_HERB Mullin_

Herbert William Mullin

127

# ON THE DAY YOU PAROLE

Your building staff will be contacted to send you to Receiving and Release (R&R) sometime between 0630 and 0800 hours.

It is your responsibility to bring all your non-expendable personal property with you to R&R on the day you parole. If you're not in possession of all your property, you will be returned to the building to retrieve it. Being unprepared in this area will cause unnecessary delays on your parole date (Title 15, Section 3191)

If you are going to have people pick you up at the institution when you parole, have them arrive by 0800. Have them wait OUTSIDE the main gate. Parking is available on the right side, prior to passing through the gate. Providing there are no unforeseen obstacles on the day you parole you will be released between 0800 and 1000 hours. It may be earlier or later depending on the processing time and what is happening at the institution. However, be advised, the official time for your parole is "PRIOR TO MIDNIGHT".

Have your parole clothing sent in no more than 30 days prior to your parole. You must have "PAROLE CLOTHES" written on the outside of the package and there must be a return address, or the package will be returned to sender. When you clothes arrive, you will receive a package ducat, your clothing will be inventoried by the package officer, and the clothes will be held until you leave.

You will pay for state issued clothing out of your gate money if you have not made prior arrangements for parole clothing.

If you do not have someone to pick you up on your parole date, you will be transported to the Greyhound Bus Station in Stockton.

Due to unforeseen circumstances beyond our control, release time cannot be guaranteed. If you elect to have a transportation ticket sent, do not have it sent in prior to 30 days before your parole date. Have the ticket sent in certified mail with "TRAVEL TICKET" written on the outside of the envelope. It is your responsibility to have the required ID for travel. Have your family check with the airlines, train or bus to see what ID is required.

R&R staff expect you will adhere to all institutional rules and regulations during the entire parole process.

You are not paroled until you are released from the custody of the transporting officer.

At the discretion of the transporting officer, the transportation vehicle can return to the institution at any time, and the parole process will be aborted until further notice.

There is no smoking in R&R.

When discarding your state clothing in R&R to change into your parole clothing - you are expected to tie your state shoes together by the laces and place discarded clothing and shoes in the proper containers.

While waiting in the holding tank do not put your feet on the walls or benches. Anyone found scratching, carving or writing on the benches, walls, floors, etc. will be subject to disciplinary action.

1128

| SERVICE | AGENCY | ADDRESS | CITY | ZIP | PHONE |
|---|---|---|---|---|---|
| ASSISTANCE | SANTA CRUZ COUNTY HUMAN RESOURCES | 1000 EMELINE AVE | SANTA CRUZ | 95060 | 831-425-2291 |
| ASSISTANCE | FRIENDS OUTSIDE | | | | 831-427-5070 |
| DOMESTIC VIOLENCE | WOMEN'S CRISIS SUPPORT SERVICES | 1025 CENTER ST | SANTA CRUZ | 95060 | 831-425-5525 |
| EMPLOYMENT | SANTA CRUZ COUNTY ONE STOP CENTER | 1040 EMELINE ST | SANTA CRUZ | 95060 | 831-454-4090 |
| EMPLOYMENT | WORKFORCE SANTA CRUZ/ONE STOP CEN | 18 WEST BEACH ST | WATSONVILLE | 95076 | 831-463-8700 |
| FAMILY | PARENTS CENTER | 530 SOQUEL AVE | SANTA CRUZ | 95062 | 831-426-7322 |
| FOOD | SANTA CRUZ FOOD BANK | 15 ERRINGTON RD | WATSONVILLE | 95076 | 831-722-7110 |
| JOB TRAINING | SANTA CRUZ REGIONAL OCC. PROG (ROP) | 809 H BAY AVE | CAPITOLA | 95010 | 831-479-5335 |
| LEGAL | FAMILY SUPPORT DIVISION | 420 MAY AVE | SANTA CRUZ | 94103 | 831-454-3700 |
| PAROLE | SANTA CRUZ UNIT | | SANTA CRUZ | 94103 | 831-479-5915 |
| RAPE ISSUES | WOMENS CRISIS SUPPORT SERVICES | 1025 CENTER ST | SANTA CRUZ | 95060 | 831-425-5525 |
| RESIDENTIAL PROGRAM | JANUS OF SANTA CRUZ | 200 7TH AVENUE | SANTA CRUZ | 95062 | 831-462-1060 |
| RESIDENTIAL PROGRAM | JANUS PROGRAM | 1314 OCEAN ST | SANTA CRUZ | 95060 | 831-423-0015 |
| RESIDENTIAL PROGRAM | NEW LIFE COMMUNITY SERVICES INC | 707 FAIR AVE | SANTA CRUZ | 95060 | 831-427-1007 |
| RESIDENTIAL PROGRAM | SUNFLOWER HOUSE (WOMEN) | 125 RIGG ST | SANTA CRUZ | 95060 | 831-423-3890 |
| RESIDENTIAL PROGRAM | SOBRIETY WORKS | 1051 41ST AVE | SANTA CRUZ | 95062 | 831-476-1747 |
| RESIDENTIAL PROGRAM | CAMP RECOVERY CENTERS | 3192 GLEN CANYON RD | SCOTTS VALLEY | 95066 | 831-438-1868 |
| RESIDENTIAL PROGRAM | FENIX SVCI HERMANAS REC. HOUSE | 640 RODRIQUEZ ST | WATSONVILLE | 95076 | 831-722-2471 |
| RESIDENTIAL PROGRAM | NARCONON OF N. CA. | 262 GAFFEY RD | WATSONVILLE | 95076 | 831-768-7190 |
| RESIDENTIAL PROGRAM | PALOMA HOUSE | 321 E. BEACH ST | WATSONVILLE | 95076 | 831-722-6599 |
| RESIDENTIAL PROGRAM | SANTA CRUZ COMMUNITY COUNSELING CEN | 161 MILES LN | WATSONVILLE | 95076 | 831-761-5422 |
| SUBSTANCE ABUSE | ACACIA ASSOCIATES | 9055 SOQUEL DR STE E | APTOS | 95003 | 831-476-4656 |
| SUBSTANCE ABUSE | COMMUNITY SUPPORT SERVICES | 290 PIONEER ST | SANTA CRUZ | 95060 | 831-439-0444 |
| SUBSTANCE ABUSE | SANTA CRUZ COMMUNITY COUNSELING CEN | 271 WATER ST | SANTA CRUZ | 95060 | 831-423-2003 |
| SUBSTANCE ABUSE | TRIAD COMMUNITY SERVICES | 1000 -A EMELINE AVE | SANTA CRUZ | 95060 | 831-425-0112 |
| SUBSTANCE ABUSE | WOMEN'S CRISIS CENTER | 1658 SEQUEL DR  STE A | SANTA CRUZ | 95065 | 831-477-4244 |
| SUBSTANCE ABUSE | TRIAD COMMUNITY SERVICES | 5271 SCOTTS VALLEY DR  #200 | SCOTTS VALLEY | 95066 | 831-438-3521 |
| SUBSTANCE ABUSE | FENIX SERVICES | 10 ALEXANDER ST | WATSONVILLE | 95076 | 831-722-5914 |
| SUBSTANCE ABUSE | SANTA CRUZ COMMUNITY COUNSELING CEN. | 11 D ALEXANDER ST | WATSONVILLE | 95076 | 831-728-2233 |
| SUBSTANCE ABUSE | WATSONVILLE COMMUNITY HSOPITAL | 75 NIELSON ST | WATSONVILLE | 95076 | 831-761-5667 |

122

SANTA CRUZ COUNTY

2/22/2002

# EXHIBIT  F

130.

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PRISON TERMS

In the matter of the Life )
Term Parole Consideration )        CDC Number  B-51410
Hearing of: )
 )
HERBERT MULLIN )
_____ )

COPY

INMATE

MULE CREEK STATE PRISON

IONE, CALIFORNIA

DECEMBER 27, 2001

12:30 P.M.

PANEL PRESENT:

JONES MOORE, Presiding Commissioner
ERNEST COLDREN, Deputy Commissioner

OTHERS PRESENT:

HERBERT MULLIN, Inmate
RHONDA SKIPPER-DOTTA, Attorney for Inmate
ARIADNE SYMONS, Assistant District Attorney
ROD BRAUGHTON, Deputy District Attorney
RENE LENTZ, Records, Observer
DAVID BECK, San Jose Mercury News, Observer
SHAWN MCCRAY, Acting Public Information Officer,
Observer

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____ ✓  No
_____    Yes         See Errata Sheet

Debbie Owens, Capitol Electronic Reporting

10

1   crimes I believe it was a hallucination I was

2   hearing but I was hallucinating and I thought that I

3   had heard him directing me to do that.

4           PRESIDING COMMISSIONER MOORE:  Excuse me.

5   But let me ask this and make sure there's no

6   quandary here.  You did kill all these people.  Is

7   that accurate?

8           INMATE MULLIN:  Yes, Sir.

9           PRESIDING COMMISSIONER MOORE:  And you don't

10  deny that?

11          INMATE MULLIN:  No.

12          PRESIDING COMMISSIONER MOORE:  Some you did

13  with a gun, some you did with a gun and a knife.

14  It's been some time.  How do you feel about this

15  today?  Where are you with this today?

16          INMATE MULLIN:  Today I realize that it was

17  an insane act of mine.  I feel mostly remorse and

18  sorrow when I think about this.  During my busy day

19  and I come across this problem in my life I think

20  well, the sorrow and the remorse that I'm feeling

21  now when I get up in the morning or when I go to

22  sleep at night or when I come across these thoughts

23  during the day that sorrow and remorse is my way of

24  expressing the idea that I need to apologize.  I

25  also ask several times a day that God guide, protect

26  and improve these victims so that they can enjoy the

27  benefits of life, liberty and the pursuit of

1132

11

1    happiness. I believe in life after death. I was

2    taught ever since I was baptized that there is an

3    after life and so I pray that God will guide,

4    protect and reimburse the victims so that they can

5    feel that they've been reimbursed.

6         PRESIDING COMMISSIONER MOORE: All right,

7    sir, so you believe that all the victims are in an

8    afterlife at this point. Is that what I heard you

9    tell me?

10         INMATE MULLIN: Yes.

11         PRESIDING COMMISSIONER MOORE: Okay.

12         INMATE MULLIN: I'm sure I don't know

13    exactly what's happening. I don't think any human

14    being knows exactly what's happening but statistics

15    say that over 80 percent of Americans believe in God

16    and over 80 percent of Americans are Christian.

17    We've all been taught that there is life after death

18    and we will live again and I hope that means that

19    those people will enjoy the beauty of Santa Cruz

20    County. I mean, if they're going to grow up again I

21    think they should graduate from the University of

22    California at Santa Cruz. I think wow, that would

23    be a great experience for them.

24         PRESIDING COMMISSIONER MOORE: What about

25    all their loved ones that are left behind that never

26    got a chance to enjoy their presence, the young ones

27    and the old ones, you know, all the lives that you

133

12

1  changed?

2      INMATE MULLIN:  Well, I apologize to them

3  for my part in the tragedy but also that they would

4  become more efficient in criticizing the people who

5  caused me to commit the crimes.  Definitely --

6      PRESIDING COMMISSIONER MOORE:  More

7  efficient?  I'm sorry, I didn't understand you.

8  More efficient how?

9      INMATE MULLIN:  Okay, this is an important

10  part.  Those family members and the friends of the

11  people that were killed, those people I hope realize

12  that I apologize to them every single day.  I wish

13  that they would get the trial testimony that I made,

14  my written documents, and my verbal testimony at the

15  trial would explain to each and every one of them

16  that there are other people who caused me to commit

17  those crimes.  My family and friends knew I was

18  committing those crimes and they did not stop me nor

19  did they notify the police force and for the family

20  members --

21      PRESIDING COMMISSIONER MOORE:  So what I

22  hear you say is that they're as culpable as you?

23      INMATE MULLIN:  I think they're even more

24  culpable.  You see there's a problem in modern day

25  America.  The psychological institutions do not

26  consider killjoy sadism to be a mental illness.  If

27  you study the diagnostic statistical manual that was

134.

13

1   used in the evaluation, my psychological evaluation,

2   it indicates that they're not quite certain whether

3   it's insane for people to be killjoy sadistic.

4   Well, I think I'm a living example that it's insane,

5   that it causes me to go insane and it causes other

6   people to suffer quite a lot and what can I say?

7   I'm still very very sorry for what I've done and I

8   really hope that the victims and their families

9   receive God's blessings.

10      **PRESIDING COMMISSIONER MOORE:**  All right,

11   sir.  Let's look at your prior criminal convictions

12   and arrests.  April 21st, '68 you were arrested for

13   possession of marijuana.  May 16th you pled guilty

14   and the complaint was amended.  You were visiting a

15   place where narcotics were being used.  You were

16   given a suspended sentence of 90 days in jail and

17   placed on one year summary probation.  And on July

18   the 30th of '70, let's see, again in Santa Cruz the

19   police department arrested you for being under the

20   influence of drugs.  You were placed in a

21   psychiatric ward of the county hospital by order of

22   the municipal court.  The charges were dropped in

23   August of '70.  What types of drugs were you using?

24      **INMATE MULLIN:**  I started out with alcohol

25   in high school and then in college I moved to

26   marijuana and then LSD.  I was an infrequent user of

27   LSD.  I didn't use it regularly but marijuana, I

135

THIS is THE lAST pAge of THIS PETITION FOR WRIT of HAbEAS CORpus, +/or, PETITION FOR WRIT of MANDAMUS, REQUESTING THAT THE COURT OVERTURN, +/or VACATE, THE "5-YEAR DENIAL of pARole issued By THE CDCR BoARd of pAROle HEARINGs, on MARCH 22nd, 2006, AT MulE CREEK STATE pRison, iN IONE, CALIF-ORNIA, AmAdoR County; which 5-YEAR DENIAl BECAmE FINAl And Binding oN July 20th, 2006 ____ .

FuRTHERMORE, I Am REQUESTING THAT A NEW, up-To-DATE, psychological EVALUATION BE ADMINISTERED, AND THEN A NEW pARole CoNcidERA-TioN HEARing BE CONVENEd ____ .

8/30/2006
DATED

H.W. Mullin ____
HERBERT WilliAm MulliN ____

RE: HERBERT WilliAm MulliN ____
    # B-51410  Rm# 8-249
    MulE CREEK STATE pRison
    4001 HighwAy # 104
    IONE, CAliforniA 95640 ____

tis is the last page)          pAge # 136 of 136

H. W. Mullin —
# B-51410
Rm.# 10-112 W
P.O. Box # 409070
IONE, CALIF.
95640 —

To the Clerk of the United States
District Court for the Northern
District of California —
450 Golden Gate Avenue
P.O. Box # 36060
San Francisco, California —
94102 —



H. W. Mullin —
# B- 51410
Rm. # 10 - 1124
P.O. Box # 409040
IONE, CALiF.
95640 —

To the clerk of the United States
District Court for the Northern
District of California —
450 Golden Gate Avenue —
P.O. Box # 36060
SAN FRANCISCO, California —
94102 —

Gold



R. W. Mullin
Mule Creek State Prison
# B-57410  Rm. # 10-1124
P.o. Box # 409040
IONE, California
95640 ——

To the Clerk of the United States
District Court for the Northern
District of California ——
450 Golden Gate Avenue
Box # 36060
SAN Francisco, California ——
94102 ——